# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MISSOURI

## EASTERN DIVISION

| | |
|---|---|
| **THOMAS L. SANDERSON,**<br>**an individual,** )<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**ANDREW BAILEY, in his official** )<br>**capacity as Attorney General of the State** )<br>**of Missouri; and JAMES HUDANICK,** )<br>**in his official capacity as Chief of Police** )<br>**of the city of Hazelwood, Missouri** )<br>)<br>**Defendants.** )<br>)<br>)<br>)<br>) | **Civil Action:**<br><br>**Case No.  4:23-cv-01242-SPM** |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF</u>

## <u>MOTION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER</u>

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ..................................................................................iii

**MEMORANDUM OF POINTS AND AUTHORITIES**.................................. 1

**I.     INTRODUCTION**................................................................................ 1

**II.    BACKGROUND** ................................................................................. 2

    A.    Plaintiff is Twice Notified that the Statute Does Not Apply to Him, and Receives No Notice of Its Application to Him Until His Arrest 15 Years Later ................................................ 3

    B.    Defendants Arbitrarily Enforce the Statute Against Plaintiff in 2022 ......................................................................... 4

**III.   ARGUMENT** ....................................................................................... 5

    A.    The Infringement of First Amendment Rights is Irreparable Injury *Per Se* .................................................... 5

    B.    The Balance of Equites Favors a TRO Because the Injury to Plaintiff is Significant While the Public Benefit of Halloween Signs is Nil........................................................ 5

    C.    Plaintiff's Probability of Success on the Merits of this "Classic" Compelled Speech Claim is High.......................... 7

        1.    *The Compelled Speech Doctrine Preserves "The Right to Refrain From Speaking"*.................................................. 7

        2.    *Every Court to Consider A Halloween Sign Posting Mandate for Registrants Has Declared it Unconstitutional* ........................................... 8

        3.    *Additional First Amendment Precedent from the Eighth Circuit and Elsewhere Supports an Injunction* .................................. 10

        4.    *Plaintiff Need Not Prove an Association Between the Signs and Sex Offender Registration Because They Object to All Aspects of the Sign*.... 12

        5.    *The Signs Fail Strict Scrutiny Because They Neither Serve the Interest in Protecting Children Nor are They Narrowly Tailored*........... 13

    D.    A TRO Serves the Public Interest ................................................. 14

**IV.    NO BOND SHOULD BE REQUIRED BECAUSE THE GOVERNMENT WILL SUFFER NO DAMAGES FROM AN INJUNCTION AGAINST THE STATUTE** ........................................................................................ **14**

**V.    A STATEWIDE INJUNCTION IS WARRANTED**.................................... **15**

**VI.    CONCLUSION** ............................................................................................ **15**

///

///

///

///

///

///

///

///

///

ii

## **TABLE OF AUTHORITIES**

Cases

Axson-Flynn v. Johnson, 356 F.3d 1277 (10th Cir. 2004) ............................................... 8

Brooks v. Francis Howell Sch. Dist., 599 F.Supp. 3d 795 (E.D.Mo. 2022)................................. 14

Cressman v. Thompson, 798 F.3d 938 (10th Cir. 2015)................................................. 7

Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109 (8th Cir. 1981) ........................................... 5

Doe v. City of Simi Valley, 2012 WL 12507598 (C.D. Cal. Oct. 29, 2012)................. 2, 9, 13, 14

Elrod v. Burns, 427 U.S. 347 (1976) ............................................... 5

Gralike v. Cook, 191 F.3d 911 (8th Cir. 1999)................................................. 1, 10, 11

Johnson v. Minn. Park and Recreation Bd., 729 F.3d 1094 (8th Cir. 2013)................................. 5

McClendon v. Long, 22 F.4th 1330 (11th Cir. 2022) ........................................... passim

Nat'l Assn. of Mfrs. v. SEC, 800 F.3d 518 (D.C. Cir. 2015) ...................................... 11

R.A.V. v. City of St. Paul, 505 U.S. 377 (1992)........................................... 13

R.J. Reynolds Tobacco Co. v. FDA, 696 F.3d 1205 (D.C. Cir. 2012) ........................................ 11

Richland/Wilkin JPA v. U.S. Army Corps of Eng'rs, 826 F.3d 1030 (8th Cir. 2016)................. 14

Riley v. Nat'l Fed'n for the Blind, 487 U.S. 781 (1988) .................................................. 8, 11, 13

Roberts v. Davis, 2011 WL 6217937 (E.D. Mo. Dec. 14, 2011)................................................. 5

Rodgers v. Bryant, 942 F.3d 451 (8th Cir. 2019) ........................................................ 15

Stuart v. Camnitz, 774 F.3d 238 (4th Cir. 2014) ......................................... 11

United States v. Playboy Entm't Group. Inc., 529 U.S. 803 (2000)............................................. 13

Walker v. Texas Sons of Confederate Veterans, 576 U.S. 200 (2015).......................................... 7

Wooley v. Maynard, 430 U.S. 705, 714 (1977)........................................................... 8

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In each of the 50 states, persons listed on sex offender registries ("**Registrants**") face myriad restrictions on many aspects of their lives, including where they may live, the jobs they may hold, and the activities they may pursue.  Nevertheless, with the sole apparent exception of the state of Missouri, <u>no</u> state or local jurisdiction requires Registrants to post, or otherwise endure, conspicuous signage warning the public away from their homes on Halloween.  The uniform opinion of jurisdictions throughout the country therefore seems to be that Halloween signs of this type are not warranted.  That opinion is validated by the "classic" First Amendment problems that such signs create, (see <u>McClendon v. Long</u>, 22 F.4th 1330, 1337 (11th Cir. 2022)), because the First Amendment protects all persons, including Registrants, from being forced to "denunciat[e]" themselves through compelled speech.  <u>Gralike v. Cook</u>, 191 F.3d 911, 918-19 (8th Cir. 1999), aff'd on other grounds <u>Cook v. Gralike</u>, 531 U.S. 510 (2001).

Indeed, it appears that even Missouri's commitment to enforcing its Halloween restrictions are half-hearted and arbitrary.  Effective August 28, 2008, Missouri enacted Section 589.426 of the Missouri Code which, among other obligations, requires all Registrants in the state to "Post a sign at his or her residence stating, 'No candy or treats at this residence.'"  MO Rev. Stat. § 589.426(1)(3) (2022) (hereinafter, "**the Statute**").  However, Plaintiff Thomas Sanderson twice received verbal confirmation from local law enforcement that the Statute did not apply to him because he was convicted of a registrable offense prior to the effective date of the Statute.  Compl. ¶¶25-26.  Accordingly, the Sandersons continued decorating for Halloween without incident for the next 15 years.  Suddenly, in 2022, the Hazelwood Police Department arrested plaintiff, and he was subsequently convicted of violating the Statute.  Compl. ¶¶27-29.

Two reported cases address the constitutionality of Halloween signs, and in each case the court declared that they unconstitutionally compelled speech.  Last year, the Eleventh Circuit ruled that similar Halloween signs placed by a sheriffs' department "impermissibly burden [the] First Amendment right to be free from being forced to host a government message on [one's own] private property."  McClendon, 22 F.4th at 1337, 1340.  In 2012, the United States District Court for the Central District of California issued a temporary restraining order enjoining a sign posting ordinance virtually identical to Missouri's on the ground that it

> poses a danger to sex offenders, their families and their property. . . . . [I]ts function and effe ct is likely to approximate that of Hawthorne's Scarlet Letter – . . . potentially subjecting them to dangerous mischief common on Halloween night and to community harassment in the weeks and months following[.]

Doe v. City of Simi Valley, 2012 WL 12507598, at *7-9 (C.D. Cal. Oct. 29, 2012).

Plaintiff Sanderson respectfully requests that this Court likewise prevent him and his family from being forced to bear a "scarlet letter" on their home, by enjoining the sign posting mandate of Missouri Rev. Stat. § 589.426(1)(3) before October 31, 2023.

## II.  **BACKGROUND**

Beginning in 2000, Plaintiff Sanderson maintained popular Halloween displays at his home and on his large property in Hazelwood.  Compl. ¶21.  The displays included stationary and animated or animatronic figures and creatures, lights, music, fog machines, and other Halloween décor.  Compl. ¶21.  Over time, Plaintiff's displays came to include a large bonfire. Compl. ¶21.  As the bonfires roared, Local firefighters stopped firetrucks in front of the Sanderson property and handed out candy.  Compl. ¶21.  Plaintiff's display has been a neighborhood tradition for many years, with over 300 people visiting each Halloween.  Compl. ¶21.

**A. Plaintiff is Twice Notified that the Statute Does Not Apply to Him, and Receives No Notice of Its Application to Him Until his Arrest 15 Years Later**

In 2006, Plaintiff Sanderson was convicted of an offense requiring registration as a sex offender under Missouri law.  Compl. ¶22.[1]  Effective August 28, 2008, the State of Missouri enacted Missouri Revised Statute section 589.426, which imposes certain restrictions and affirmative obligations upon Registrants each Halloween.  The only provision relevant to this Motion is Section 589.426, subd. (1)(3), which obligates Registrants to "Post a sign at his or her residence stating, 'No candy or treats at this residence.'"  MO Rev. Stat. § 589.426(1)(3).

Prior to October 31, 2008, Plaintiff visited the St. Louis County Police Department, the agency at which he must register, and asked whether the Statute applied to him.  Compl. ¶25.  The registration official confirmed that the Statute did not apply to Plaintiff because he was convicted prior to its effective date.  Compl. ¶25.  Accordingly, Plaintiff Sanderson continued to decorate his residence and to participate in Halloween festivities.  Compl. ¶25.

Four years later, in or about October 2012, Hazelwood Police Officers appeared at Plaintiff Sanderson's residence to inquire about his Halloween decorations, alleging him to be in violation of the Statute.  Compl. ¶26.  Plaintiff Sanderson advised Hazelwood Police Officers that the St. Louis County Police Department told him four years earlier, in 2008, that he need not comply with the Statute.  Compl. ¶26.  Soon thereafter, a representative of the Hazelwood Police

---

[1] Plaintiff Sanderson's conviction for a sex offense did not involve Halloween or any related subject.  In or about 2000, shortly after moving to Hazelwood, law enforcement interviewed Plaintiff Sanderson regarding allegations of inappropriate sexual touching made by a 16-year-old friend of the family.  Plaintiff Sanderson thoroughly denied the allegations.  No action was taken for six years, until the year 2006, when Plaintiff Sanderson was arrested and prosecuted based upon those allegations. Plaintiff Sanderson continues to deny the allegations.

3

Department called Plaintiff Sanderson to apologize, and again confirmed that he was not subject to the Statute.  Compl. ¶26.

For the next 10 years, Plaintiff Sanderson continued to decorate his residence and participate in Halloween festivities there.  Compl. ¶27.  Plaintiff Sanderson never received, at any time between 2008 and 2022, written or verbal notice that the Statute or any aspect of it applied to him.  Compl. ¶27.

### B. Defendants Arbitrarily Enforce the Statute Against Plaintiff in 2022

Suddenly, on or about October 31, 2022, while his residence was decorated as it had been for the past 22 Halloweens, six marked vehicles from the Hazelwood Police Department descended upon the Sanderson residence with sirens blaring.  Compl. ¶28.  At least 10 Hazelwood Police officers entered Plaintiff Sanderson's property from all sides, including through his neighbor's yard.  Compl. ¶28.  Officers told Plaintiff Sanderson he was in violation of the Statute that he had twice before been told did not apply to him.  Compl. ¶28.

Plaintiff Sanderson was charged with one misdemeanor count of violating the Statute (i.e., "Fail To Comply With Halloween Related Restrictions For Sex Offenders - { Misdemeanor A RSMo: 589.426 }") in State v. Sanderson, St. Louis Co. Court Case No. 22SL-CR07753. Compl. ¶29.  On April 13, 2023, the St. Louis County Court convicted Plaintiff Sanderson of violating the Statute and sentenced him to 12 months of unsupervised probation.  Compl. ¶29. Plaintiff is currently on probation and will remain on probation through April 12, 2024.  Compl. ¶29.  At no time has Plaintiff Sanderson been convicted of, investigated for, or otherwise accused of an offense against any person on or related to Halloween.  Compl. ¶30.  Plaintiff Sanderson and his family are gravely concerned that posting a sign as required by the Statute on October 31 of this year will invite, at best, negative attention, or at worse, harm to his family or property.

III.   **ARGUMENT**

The Eighth Circuit's "Dataphase" factors apply to motions for both temporary restraining orders (TRO) and preliminary injunctions.  Roberts v. Davis, 2011 WL 6217937, at *1 (E.D. Mo. Dec. 14, 2011).  "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant, (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant, (3) the probability that movant will succeed on the merits, and (4) the public interest."  Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).  None of the four factors "is determinative," and each must be examined "in the context of the relative injuries to the parties and the public."  Id. "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  Id. Each Dataphase factor is addressed below.

### A.   The Infringement of First Amendment Rights is Irreparable Injury *Per Se*

It is well-established that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  E.g., Elrod v. Burns, 427 U.S. 347, 373 (1976).  See also Johnson v. Minn. Park and Recreation Bd., 729 F.3d 1094, 1101-02 (8th Cir. 2013) ("[L]oss of First Amendment freedoms" "satisfies the requirement of irreparable harm" under Dataphase).  Accordingly, this factor is satisfied.

### B.   The Balance of Equites Favors a TRO Because the Injury to Plaintiff is Significant While the Public Benefit of Halloween Signs is Nil

The balance of equities tips sharply in Plaintiff's favor because the Statute's Halloween signs will achieve minimal, if any, increased protection of the public, while placing Plaintiff and his family at significant risk to their safety, security, and constitutional rights.  The inefficacy of

5

Halloween signs as a public safety measure is not only argument; it is also a fact asserted by the most prestigious association of treatment professional association seeking to reduce the incidents of sexual offending, the Association for the Treatment of Sexual Abusers (ATSA).

In 2019, ATSA published a statement entitled The Mythical "Halloween Effect" expressly concluding that "Jurisdictions that ban individuals on sex offender registries from participating in any Halloween activities, require registrants to post signs in their yards during Halloween, or round up registrants for the duration of trick-or-treating <u>do not make children</u> <u>safer</u>."  Compl. ¶17 & Exh. B.  ATSA laments that "due to the myths regarding child sexual abuse that focus on 'stranger danger,' communities and lawmakers often endorse policies that do little to prevent sexual abuse and instead unnecessarily stretch limited law enforcement resources."  Compl. ¶17 & Exh. B.  The entire ATSA Statement is quoted in the complaint and attached thereto as Exhibit B.  Additional empirical studies showing the inefficacy of Halloween signs are likewise cited in the Complaint.  Compl. ¶¶18-19.

Separately, the government cannot seriously contend that the equities favor enforcement of the Statute, since state and local government throughout Missouri often declines to enforce it. For example, the Statute was not enforced against Plaintiff between 2008 and 2021, during which time he hosted popular neighborhood Halloween parties without incident, and without posting a sign.

It should also be noted that the Statute imposes inequitable hardships on innocent parties, namely the families of Registrants and others who reside with them.  For example, Plaintiff Sanderson's family has no criminal record; yet, they too are unlawfully compelled to speak because the Statute's sign posting mandate applies to their residence.

Finally, while the Statute's mandates apply only on October 31, the damage to Plaintiff and others may last forever.  Indeed, this very lawsuit attracted media attention within hours of being filed, increasing the threat to the safety of Plaintiff and other affected Registrants.[2] Accordingly, the balance of equities favors a TRO.

**C.   Plaintiff's Probability of Success on the Merits of this "Classic" Compelled Speech Claim is High**

Plaintiff's probability of success on the merits is high because, as the Eleventh Circuit held, Halloween signs are "a classic example of compelled speech" that cannot withstand strict scrutiny under the First Amendment.  McClendon v. Long, 22 F.4th 1330, 1337 (11th Cir. 2022).

**1.   *The Compelled Speech Doctrine Preserves "The Right to Refrain From Speaking"***

"In order to make out a valid compelled-speech claim, a party must establish (1) speech; (2) to which he objects; that is (3) compelled by some government action."  Cressman v. Thompson, 798 F.3d 938, 951 (10th Cir. 2015).  It does not matter whether the speech at issue originated from a government actor (so-called "government speech"), because the government cannot require a private person to communicate a government message.  E.g., Walker v. Texas Sons of Confederate Veterans, 576 U.S. 200, 208 (2015) ("[T]he Free Speech Clause itself may constrain the government's speech if, for example, the government seeks to compel private persons to convey the government's speech.").  Accord McClendon, 22 F.4th at 1337.

---

[2] Katie Kull, "Hazelwood man's Halloween displays were lavish. A sex offender law forced him to quit."  St. Louis Post-Dispatch (Oct. 9, 2023), at https://www.stltoday.com/news/local/crime-courts/hazelwood-mans-halloween-displays-were-lavish-a-sex-offender-law-forced-him-to-quit/article_270f6566-6391-11ee-9b83-d372dd2a6a5c.html

In this matter, it is uncontestable that a sign posted on the front door of a person's residence is "speech" and, in this case, speech to which the person objects.  McClendon, 22 F.4th at 1337 ("[Y]ard signs at one's own residence are a distinct and traditionally important medium of expression." (internal quotations omitted)).  Therefore, the only dispute is whether the signs compel Registrants to speak.

The answer is "yes."  In the seminal case of Wooley v. Maynard, the Supreme Court ruled that the First Amendment protects not only "the right to speak," but also "the right to refrain from speaking at all."  430 U.S. 705, 714 (1977).  Therefore, the plaintiff could not be compelled to display the New Hampshire State motto "Live Free or Die" on his vehicle license plate, because a state cannot "constitutionally require an individual to participate in the dissemination of an ideological message by displaying it on his private property in a manner and for the express purpose that it be observed and read by the public."  Id. at 713.  Said another way, New Hampshire could not "in effect require[] that appellees use their private property as a 'mobile billboard' for the State's ideological message or suffer a penalty."  Id. at 715.

Later rulings clarify that this negative "right to refrain from speaking at all" encompasses both "compelled statements of opinion" and "compelled statements of 'fact'" because "either form of compulsion burdens protected speech."  Riley v. Nat'l Fed'n for the Blind, 487 U.S. 781, 797-98 (1988).  Accord Axson-Flynn v. Johnson, 356 F.3d 1277, 1284 & n.4 (10th Cir. 2004) (citing cases).

### 2.  *Every Court to Consider A Halloween Sign Posting Mandate for Registrants Has Declared it Unconstitutional*

Relying upon Wooley, two courts have directly addressed sign posting mandates and ruled that they unconstitutionally compel speech.  In McClendon v. Long, a local Sheriff's

department placed signs on the front lawns of Registrants' homes that said "Stop – Warning!

NO TRICK-OR-TREAT AT THIS ADDRESS!  A COMMUNITY SAFETY MESSAGE FROM

BUTTS COUNTY SHERIFF GARY LONG."  McClendon v. Long, 22 F.4th 1330, 1333 (11th

Cir. 2022).  The Eleventh Circuit held that "this case is materially similar to Wooley" because

the Sheriff's policy "required the use of private property as a stationary billboard for [the

Sheriff's] own ideological message, 'for the express purpose that it be observed and read by the

public.'"  Id. at 1137, quoting Wooley, 430 U.S. at 713.

Likewise, in Doe v. City of Simi Valley, the United States District Court for the Central

District of California issued a temporary restraining order enjoining an ordinance that, like the

instant Statute, required Registrants to post a sign on their front doors declaring "No candy or

treats at this residence."  2012 WL 12507598, at *1 (C.D. Cal. Oct. 29, 2012).  The District

Court reasoned,

> Plaintiffs have made a clear showing that they are likely to succeed on the merits
> of their claim that the sign requirement—a form of compelled speech—runs afoul
> of the free speech guarantee of the First Amendment. . . .
>
> Furthermore, the sign requirement, heavily publicized in the Simi Valley
> area, poses a danger to sex offenders, their families and their property. Although
> the sign employs innocuous language, its function and effect is likely to
> approximate that of Hawthorne's Scarlet Letter—drawing immediate public
> attention to Plaintiffs and potentially subjecting them to the dangerous mischief
> common on Halloween night and to community harassment in the weeks and
> months following . . . .

Id. at *8-9.

Here, the sign posting mandate of the Statute should be enjoined for the same reason.

Indeed, the Statute threatens all of the harms that the compelled speech doctrine exists to

prevent, by compelling Plaintiff to communicate "at his residence," the following:

1. speech that identifies him as a Registrant, when he would rather remain silent (notably, in the case of the non-Registrants residing with Plaintiff, the assertion is patently false);

2. speech that is otherwise false ("no candy or treats at this residence");

3. speech with which Plaintiff disagrees, and which forces him to take a position that he does not wish to take, that is, his non-participation in Halloween festivities;

4. speech that is against his interest;

5. speech that falsely implies that he and his residence threaten public safety; and

6. speech that invites a risk of harm to himself, his family, and his property.

Since Plaintiff and his family do not wish to communicate these messages "at their residence," as the Statute requires, the Statute's sign posting mandate violates the First Amendment.

### 3. *Additional First Amendment Precedent from the Eighth Circuit and Elsewhere Supports an Injunction*

Additional precedent in the Eighth Circuit and elsewhere supports a similar ruling in this case.  In Gralike v. Cook, a Missouri law directed that the label "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" appear on ballots next to the names of candidates who did not adopt a particular position regarding term limits.  *Gralike v. Cook*, 191 F.3d 911, 914 (8th Cir. 1999), *aff'd on other grounds Cook v. Gralike*, 531 U.S. 510 (2001).  The Eighth Circuit ruled that this ballot label impermissibly compelled the candidates' speech by "forc[ing] candidates to speak in favor of term limits," even though the speech was government speech appearing on a government document.  *Id*. at 917-18.  Specifically, the Eighth Circuit ruled that the ballot label violated the First Amendment because it "did not allow candidates to remain

silent on the issue, which is precisely the type of state-compelled speech which violates the First Amendment right not to speak."  *Gralike*, 191 F.3d at 917-18.

In addition, the Eighth Circuit ruled that ballot labels in *Gralike* violated the First Amendment's proscription on compelling "factual" speech that impliedly advocates a government message or objective.  That is, even if the candidates had, in fact, "disregarded voters' instruction on term limits," the ballot labels communicated "a negative impression" of the candidate and "impli[ed] that the candidate cannot be trusted to carry out the people's bidding, which in turn casts doubt on his or her suitability to serve in Congress."  *Id*. at 918.  In affirming this Eighth Circuit's ruling on other grounds, the Supreme Court agreed that the Missouri ballot label was a "Scarlet Letter."  *Cook v. Gralike*, 531 U.S. at 525.

Other courts have agreed that forcing private parties to adopt, carry, or be associated with speech harmful to their interests is unconstitutional compelled speech.  E.g., R.J. Reynolds Tobacco Co. v. FDA, 696 F.3d 1205, 2016-17 (D.C. Cir. 2012) *overruled on other grounds by* Am. Meat Inst. v. USDA, 760 F.3d 18, 22-23 (D.C. Cir. 2014) (Forcing cigarette makers to post graphic warning labels on packaging "cannot rationally be viewed as pure attempts to convey information to consumers.  They are unabashed attempts to evoke emotion . . . and to browbeat consumers into quitting."); Nat'l Assn. of Mfrs. v. SEC, 800 F.3d 518, 530 (D.C. Cir. 2015) (requiring manufacturers to disclose that their products include controversial "conflict minerals" was compelled speech in part because it was intended by the government to influence consumer choices); *Riley*, 487 U.S. at 797-98 (state could not compel charities to disclose proportion of donated funds diverted to operations in order to "dispel misperceptions" among donors about use of funds); Stuart v. Camnitz, 774 F.3d 238, 246 (4th Cir. 2014) (affirming issuance of

preliminary injunction where purpose and effect of law compelling physicians to display ultrasound images before abortions was to advance state's pro-life objectives).

Likewise, in this matter, the purpose of the signs is to communicate to the public a "negative impression" about the occupants of the residence.  That "impression" includes the factually false message that Registrants pose a special threat to children on Halloween.  As in *Gralike*, the Statute accomplishes this purpose by forcing Registrants to "denunciate themselves" with a sign, on their own property.

### 4. *Plaintiff Need Not Prove an Association Between the Signs and Sex Offender Registration Because They Object to All Aspects of the Sign*

In response, the government may argue that the signs are innocuous because they do not mention the sex offender registry, convictions, or public safety.  This argument would be disingenuous given the widespread publicity that the Statute receives through the media and by law enforcement in Missouri equating its requirements with the sex offender registry and the supposed risk posed by Registrants to children.  For example, last year, the Sheriff of St. Charles County issued a press release touting its enforcement of the Statute against over 160 Registrants, which received wide media coverage.[3]

Regardless, Plaintiff's compelled speech claim does not turn on establishing an adverse association between the signs and registration in the public mind.  As in *Gralike*, the compelled speech doctrine prevents the compelled disclosure of even "factual" information simply because,

---

[3] See Elyse Schoeing, "Police: Dozens of sex offender violations in St. Charles County on Halloween night:  More than 100 registered sex offenders were checked Monday night throughout St. Charles County," Nov. 1, 2022, at https://www.ksdk.com/article/news/local/sex-offender-violations-st-charles-county-halloween-night/63-16b325e9-25c8-4d2a-86a0-f18cfa2d00be

as here, the plaintiff does not wish to assert it.   *Gralike v. Cook*, 191 F.3d at 918.   *Accord Riley v. Nat'l Fed'n for the Blind*, 487 U.S. 781, 797-98 (1988) (The constitutional right to refrain from speaking protects individuals from both "compelled statements of opinion" and "compelled statements of 'fact'," because "either form of compulsion burdens protected speech.").

**5.   *The Signs Fail Strict Scrutiny Because They Neither Serve the Interest in Protecting Children Nor are They Narrowly Tailored***

Under strict scrutiny, content-based infringements of the freedom of speech such as the Statute are "presumptively invalid." R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992).  The government "bears the burden of rebutting the presumption of invalidity," and "[i]t is rare that a regulation restricting [or compelling] speech because of its content will ever be permissible." Doe v. City of Simi Valley, 2012 WL 12507598, at *8 (C.D. Cal. Oct. 29, 2012) (citing cases) The government must show that the statute is "narrowly tailored to promote a compelling Government interest," such that the ordinance is the "least restrictive alternative" to serve the government's purpose.  United States v. Playboy Entm't Group. Inc., 529 U.S. 803, 813 (2000).

Here, there is no doubt that protecting children is a compelling government interest. However, the Statute neither directly serves that interest, nor is it narrowly tailored.  As in McClendon, the Statute applies indiscriminately to all Registrants (even those whose conviction involved an adult victim), without considering whether any "are likely to recidivate." McClendon, 22 F.4th at 1338.  Nor could the government demonstrate that signs "prevent the sexual abuse of children," much less that they are the "least restrictive means" to that end, because the phenomenon of Registrants posing a special danger to children on Halloween is "mythical" and non-existent.  See Compl. ¶¶16-18 & Exh. B (ATSA Declaration).  See also McClendon, 22 F.4th at 1338 (assertion that "yard signs alerting people to the residences of

registered sex offenders on Halloween would prevent the sexual abuse of children . . . is not supported by any evidence in the record").  In addition, any concerned person is free to check the state's Megan's Law Website for this purpose, see McClendon, 22 F.4th at 1339, and all of the state's other means of protecting children are in place.  This includes the remaining provisions of the Statute, which prevent Registrants from decorating their houses or opening the door to trick-or-treaters.  Accordingly, the sign posting mandate of the Statute fails strict scrutiny, and therefore violates the First Amendment.

### D.  A TRO Serves the Public Interest

As determined by the District Court in Doe v. City of Simi Valley when enjoining a virtually identical sign posting mandate:  "[t]he public interest is not served – indeed, it is undermined – by enforcement of an unconstitutional law singling out a discrete, outcast group to speak in such a way that their persons, property, and loved ones may be endangered."  Doe v. City of Simi Valley, 2012 WL 12507598, at *9 (C.D. Cal. Oct. 29, 2012).

## IV.   NO BOND SHOULD BE REQUIRED BECAUSE THE GOVERNMENT WILL SUFFER NO DAMAGES FROM AN INJUNCTION AGAINST THE STATUTE

"While the express language of Federal Rule of Civil Procedure 65(c) requires a bond, the 'amount of the bond rests within the sound discretion of the trial court,' and the Eighth Circuit has approved the issuance of preliminary injunctions without bond in certain circumstances, including where the party to be enjoined has not shown that it would suffer damages.  See Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Engineers, 826 F.3d 1030, 1043 (8th Cir. 2016)[.]"  Brooks v. Francis Howell Sch. Dist., 599 F.Supp. 3d 795, 806 (E.D.Mo. 2022) (granting injunction without bond "[b]ased on the Court's evaluation of the public interest, the potential chilling effect of requiring a bond, and the fact that Defendants have

14

not shown that the wrongful issuance of an injunction would result in damages.").  Here, the public interest in the proposed TRO is high.  The chilling effect of requiring a bond is likewise high.  Finally, Defendants are law enforcement agencies who would suffer no damages if prevented from enforcing the sign posting mandate.  There are no potential damages to secure with a bond, a TRO should issue without security.

## V.   A STATEWIDE INJUNCTION IS WARRANTED

A state-wide injunction is warranted because the challenged aspect of the Statute is "plainly unconstitutional," the state's "public interest is best served by preventing governmental intrusions into the rights protected under the Federal Constitution," and the injunction "would cause no injury."  Rodgers v. Bryant, 942 F.3d 451, 458-59 (8th Cir. 2019).

## VI.   CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Court issue a temporary restraining order against enforcement of MO Rev. Stat. § 589.426(1)(3) on October 31, 2023.


Dated:  October 11, 2023                    /s/  *Janice M. Bellucci*
                                            Janice Madelyn Bellucci #108911 (CA)
                                            *Admitted Pro Hac Vice*
                                            Law Office of Janice M. Bellucci
                                            2110 K Street
                                            Sacramento, CA 95816
                                            Telephone: (805) 896-7854
                                            Email: jmbellucci@aol.com


Dated:  October 11, 2023                    /s/  *Matthew David Fry*
                                            Matthew David Fry #57845 (MO)
                                            Attorney for Plaintiff
                                            Rosenblum, Schwartz, Fry & Johnson
                                            120 S. Central Ave., Ste. 130
                                            St. Louis, Missouri 63105
                                            Telephone: (314) 862-4332
                                            Email: mfry@rsfjlaw.com