UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

| | |
|---|---|
| THOMAS L. SANDERSON,<br>an individual,<br><br>      Plaintiff,<br><br>vs.<br><br>ANDREW BAILEY, in his official<br>capacity as Attorney General of the State<br>of Missouri; and JAMES HUDANICK,<br>in his official capacity as Chief of Police<br>of the city of Hazelwood, Missouri<br><br>      Defendants. | Civil Action:<br><br>Case No.  4:23-cv-01242-SPM |

## [PROPOSED] TEMPORARY RESTRAINING ORDER

Plaintiff Thomas L. Sanderson is a resident of Hazelwood, Missouri.  Defendants are Andrew Bailey, Attorney General of the State of Missouri, and James Hudanick, Chief of Police of the City of Hazelwood, Missouri.  Plaintiff has filed a Motion for Issuance of Temporary Restraining Order (Doc. # 7) seeking to enjoin Defendants from enforcing Section 589.426(1)(3) of the Revised Statutes of Missouri, which obligates persons required to register as a sexual offender under sections MO Rev. Stat. §§ 589.400 to 589.425 ("**Registrants**") to "Post a sign at his or her residence stating, 'No candy or treats at this residence.'"  MO Rev. Stat. § 589.426(1)(3) (2022) (hereinafter, "**the Statute**").  For the reasons stated herein, and pursuant to Federal Rule of Civil Procedure 65, the Motion is GRANTED.

1

I.  **BACKGROUND**

Effective August 28, 2008, the State of Missouri enacted Missouri Revised Statute section 589.426, which imposes certain restrictions and affirmative obligations upon Registrants each October 31st (Halloween).  The Statute provides, in full, as follows:

> **589.426. Halloween, restrictions on conduct — violations, penalty. —**
>
> 1. Any person required to register as a sexual offender under sections 589.400 to 589.425 shall be required on October thirty-first of each year to:
>
> > (1) Avoid all Halloween-related contact with children;
> >
> > (2) Remain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies;
> >
> > (3) Post a sign at his or her residence stating, "No candy or treats at this residence"; and
> >
> > (4) Leave all outside residential lighting off during the evening hours after 5 p.m.
>
> 2. Any person required to register as a sexual offender under sections 589.400 to 589.425 who violates the provisions of subsection 1 of this section shall be guilty of a class A misdemeanor.

MO Rev. Stat. § 589.426 (2022).

The instant Motion concerns only the sign posting mandate of Section 589.426, subd. (1)(3). Plaintiff Sanderson is a Registrant who objects to the sign posting mandate of the Statute. Plaintiff's Complaint alleges that, by requiring him to post a sign, the Statute compels him to speak in violation of the First Amendment to the United States Constitution.  Plaintiff has moved for issuance of a Temporary Restraining Order preventing Defendants from enforcing the sign posting mandate of the Statute against any person.

II.  **REQUIREMENTS FOR TEMPORARY RESTRAINING ORDER**

The standards for issuance of a temporary restraining order are the same as those for preliminary injunctions articulated in Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d

109, 113 (8th Cir. 1981). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant, (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant, (3) the probability that movant will succeed on the merits, and (4) the public interest." Dataphase, 640 F.2d 109 at 113. None of the four factors "is determinative," and each must be examined "in the context of the relative injuries to the parties and the public." Id. "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id.

### A. Irreparable Injury

It is well-established that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." E.g., Elrod v. Burns, 427 U.S. 347, 373 (1976). See also Johnson v. Minn. Park and Recreation Bd., 729 F.3d 1094, 1101-02 (8th Cir. 2013) ("[L]oss of First Amendment freedoms" "satisfies the requirement of irreparable harm" under Dataphase). Accordingly, irreparable injury is present.

### B. Balance of Equities

The balance of equities tips sharply in Plaintiff's favor because Defendants have not shown that the Statute's sign posting mandate has or will increase public safety, especially when weighed against the infringement of the safety, security, and First Amendment rights of Plaintiff and other Registrants. In addition, Plaintiff alleges, and Defendants do not dispute, that no aspect of the Statute has been enforced against Plaintiff between 2008 and 2021, during which time Plaintiff hosted large and conspicuous Halloween festivities on his property, without incident. The sign posting mandate of the Statute also imposes inequitable hardships on innocent

parties, namely the families of Registrants and others who reside with them, by effectively compelling their speech as well. Accordingly, this factor is satisfied.

### C. Probability of Success on the Merits

Plaintiff's probability of success on the merits of his compelled speech claim is high. "In order to make out a valid compelled-speech claim, a party must establish (1) speech; (2) to which he objects; that is (3) compelled by some government action." Cressman v. Thompson, 798 F.3d 938, 951 (10th Cir. 2015). It is uncontested that the written sign that the Statute requires all Registrants to place "at their residence" is speech to which Plaintiff objects. Therefore, the sole issue is whether the Statute thereby compels Registrants to speak.

#### 1. *The Sign Posting Mandate of MO Rev. Stat. § 589.426(1)(3) Compels Speech*

Two courts have addressed Halloween sign posting mandates for Registrants, and both have ruled that they unconstitutionally compel speech because the First Amendment protects not only "the right to speak," but also "the right to refrain from speaking at all." Wooley v. Maynard, 430 U.S. 705, 714 (1977) (state could not require plaintiff to display state motto "Live Free or Die" on vehicle license plate because statute "in effect requires . . . [the] use [of] private property as a 'mobile billboard' for the State's ideological message or suffer a penalty").

In McClendon v. Long, a local sheriff's department placed signs on the front lawns of Registrants' homes that said "Stop – Warning! NO TRICK-OR-TREAT AT THIS ADDRESS! A COMMUNITY SAFETY MESSAGE FROM BUTTS COUNTY SHERIFF GARY LONG." McClendon v. Long, 22 F.4th 1330, 1333 (11th Cir. 2022). Relying in part upon Wooley v. Maynard, the Eleventh Circuit ruled that the signs are "a classic example of compelled speech" because they "required the use of private property as a stationary billboard for [the Sheriff's]

4

own ideological message, 'for the express purpose that it be observed and read by the public.'" Id. at 1137, quoting Wooley, 430 U.S. at 713.

In Doe v. City of Simi Valley, the United States District Court for the Central District of California issued a temporary restraining order enjoining an ordinance that, like the Missouri Statute, required Registrants to post a sign on their front doors declaring "No candy or treats at this residence." 2012 WL 12507598, at *1 (C.D. Cal. Oct. 29, 2012). The District Court reasoned,

> Plaintiffs have made a clear showing that they are likely to succeed on the merits of their claim that the sign requirement—a form of compelled speech—runs afoul of the free speech guarantee of the First Amendment. . . .
>
> Furthermore, the sign requirement, heavily publicized in the Simi Valley area, poses a danger to sex offenders, their families and their property. Although the sign employs innocuous language, its function and effect is likely to approximate that of Hawthorne's Scarlet Letter—drawing immediate public attention to Plaintiffs and potentially subjecting them to the dangerous mischief common on Halloween night and to community harassment in the weeks and months following . . . .

Id. at *8-9.

The Court finds that the sign posting mandate of MO REV. STAT. § 589.426(1)(3) compels Plaintiff and other Registrants to speak. The purpose of the signs is to communicate to the public a negative impression about the occupants of the residence. That impression includes the message that Registrants pose a special threat to children on Halloween. The Statute accomplishes this purpose by forcing Registrants to "denunciate themselves" with a sign, on their own property. *Gralike v. Cook*, 191 F.3d 911, 914, 918-19 (8th Cir. 1999), *aff'd on other grounds Cook v. Gralike*, 531 U.S. 510 (2001).

However, Plaintiff's compelled speech claim does not require Plaintiff to establish an adverse association between the signs and registration in the public mind. The compelled speech doctrine prevents the compelled disclosure of even "factual" information simply because, as

5

here, the plaintiff prefers "to remain silent on the issue, which is precisely the type of state-compelled speech which violates the First Amendment right not to speak." *Gralike*, 191 F.3d at 918. *Accord* <u>Riley v. Nat'l Fed'n for the Blind</u>, 487 U.S. 781, 797-98 (1988) (The constitutional right to refrain from speaking protects individuals from both "compelled statements of opinion" and "compelled statements of 'fact'," because "either form of compulsion burdens protected speech.").

Thus, the Statute threatens all of the harms that the compelled speech doctrine exists to prevent, by compelling Plaintiff to communicate "at his residence," the following (1) speech that identifies him as a Registrant, when he would rather remain silent (notably, in the case of the non-Registrants residing with Plaintiff, the assertion is patently false); (2) speech that is otherwise false ("no candy or treats at this residence"); (3) speech with which Plaintiff disagrees, and which forces him to take a position that he does not wish to take, that is, his non-participation in Halloween festivities; (4) speech that is against his interest; (5) speech that falsely implies that he and his residence threaten public safety; and (6) speech that invites a risk of harm to himself, his family, and his property. Since Plaintiff and his family do not wish to communicate these messages "at their residence," as the Statute requires, the Statute's sign posting mandate violates the First Amendment.

> **2.  *The Sign Posting Mandate of MO Rev. Stat. § 589.426(1)(3) Compels Speech Fails Strict Scrutiny***

Under strict scrutiny, content-based infringements of the freedom of speech such as the Statute are "presumptively invalid." <u>R.A.V. v. City of St. Paul</u>, 505 U.S. 377, 382 (1992). The government "bears the burden of rebutting the presumption of invalidity," and "[i]t is rare that a regulation restricting [or compelling] speech because of its content will ever be permissible."

Doe v. City of Simi Valley, 2012 WL 12507598, at *8 (C.D. Cal. Oct. 29, 2012) (citing cases). The government must show that the statute is "narrowly tailored to promote a compelling Government interest," such that the ordinance is the "least restrictive alternative" to serve the government's purpose.  United States v. Playboy Entm't Group. Inc., 529 U.S. 803, 813 (2000).

Here, there is no doubt that protecting children is a compelling government interest. However, the Statute neither directly serves that interest, nor is it narrowly tailored.  As in McClendon, the Statute applies indiscriminately to all Registrants (even those whose conviction involved an adult victim), without considering whether any "are likely to recidivate." McClendon, 22 F.4th at 1338.  Nor has the government demonstrated that signs "prevent the sexual abuse of children," much less that they are the "least restrictive means" to that end.  See McClendon, 22 F.4th at 1338 (assertion that "yard signs alerting people to the residences of registered sex offenders on Halloween would prevent the sexual abuse of children . . . is not supported by any evidence in the record").  In addition, any concerned person is free to check the state's Megan's Law Website for this purpose, see McClendon, 22 F.4th at 1339, and all of the state's other means of protecting children are in place.  This includes the remaining provisions of the Statute, which prevent Registrants from decorating their houses or opening the door to trick-or-treaters.  Accordingly, the sign posting mandate of the Statute fails strict scrutiny, and therefore violates the First Amendment.

### D. A TRO Serves the Public Interest

As determined by the District Court in Doe v. City of Simi Valley when enjoining a virtually identical sign posting mandate:  "[t]he public interest is not served – indeed, it is undermined – by enforcement of an unconstitutional law singling out a discrete, outcast group to

speak in such a way that their persons, property, and loved ones may be endangered." Doe v. City of Simi Valley, 2012 WL 12507598, at *9 (C.D. Cal. Oct. 29, 2012).

### III. PLAINTIFF IS NOT REQUIRED TO POST A BOND

The proposed TRO seeks only to enjoin the enforcement of a statute by agencies of law enforcement. Because Defendants will suffer no damages in complying with the TRO, no bond is required. Brooks v. Francis Howell Sch. Dist., 599 F.Supp. 3d 795, 806 (E.D.Mo. 2022). Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Engineers, 826 F.3d 1030, 1043 (8th Cir. 2016).

### IV. SCOPE OF INJUNCTION

A state-wide injunction is appropriate where the challenged law is "plainly unconstitutional," the state's "public interest is best served by preventing governmental intrusions into the rights protected under the Federal Constitution," and the injunction "would cause no injury." Rodgers v. Bryant, 942 F.3d 451, 458-59 (8th Cir. 2019).

### V. TRO LANGUAGE

Federal Rule of Civil Procedure 65(d) requires that "[e]very order granting an injunction and every restraining order must . . . [1] state the reasons why it issued; [2] state its terms specifically; and [3] describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Hence, the Court must clearly state the specific terms of the TRO in order to "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." Schmidr v. Lessard, 414 U.S. 473, 476 (1974)). The Court finds the following language satisfactorily complies with the requirements of Rule 65(d):

8

**Defendants Andrew Bailey, Attorney General of the Statute of Missouri, as well as his officers, agents, servants, employees, and attorneys; and James Hudanick, Chief of Police of Hazelwood, Missouri, as well as his officers, agents, servants, employees, and attorneys are hereby ENJOINED from enforcing or otherwise giving effect to MO Rev. Stat. § 589.426(1)(3) during October 31, 2023 as to any person.**

Plaintiff shall not be required to post a bond in connection with this order. Because the Statute applies only on October 31 of each year, a TRO is sufficient to provide the requested relief, and no hearing on a preliminary injunction need be held.

IT IS SO ORDERED.

Dated:  October ____, 2023

                                                                                               Hon. Shirley Padmore Mensah
                                                                                               Chief United States Magistrate Judge