# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS L. SANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23CV1242 JAR |
| | ) | |
| ANDREW BAILEY, | ) | |
| *in his official capacity as Attorney General* | ) | |
| *of the State of Missouri, et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order [ECF No. 7]. Defendants have filed their responses in opposition to the Motion. The parties have not requested a hearing, and the Court finds it unnecessary to hold one. The Court has thoroughly reviewed the pleadings, exhibits, and memoranda of law submitted by the respective parties, and concludes Plaintiff's Motion is well-taken. For the reasons set forth below, the Court will grant Plaintiff's Motion.

### **Background**

On October 3, 2023, Plaintiff Thomas L. Sanderson brought this action for declaratory and injunctive relief against Defendants Andrew Bailey, Attorney General of the State of Missouri, and James Hudanick, Chief of Police of the City of Hazelwood, Missouri,[1] alleging that Missouri Revised Statute Section 589.426.1(3), which requires any person required to register as a sexual offender under Sections 589.400 to 589.425 to post a sign at his or her

---

[1] The allegations against the individual defendants are brought in their respective official capacity.

residence on October thirty-first of each year stating, "No candy or treats at this residence," compels him to speak in violation of the First Amendment to the United States Constitution.

### Facts[2]

In 2006, Plaintiff was convicted of an offense requiring his registration as a sex offender with the chief law enforcement official in his county of residence under Missouri law. *See* Mo. Rev. Stat. § 589.400.2. Plaintiff is a resident of the City of Hazelwood, Missouri, which is located in St. Louis County, Missouri.

Effective August 28, 2008, the State of Missouri enacted Missouri Revised Statute Section 589.426 (the "Halloween Statute"), which imposes the following restrictions on conduct for any person required to register as a sexual offender under sections 589.400 to 589.425 on October thirty-first (Halloween) of each year:

(1) Avoid all Halloween-related contact with children;

(2) Remain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies;

(3) Post a sign at his or her residence stating, "No candy or treats at this residence"; and

(4) Leave all outside residential lighting off during the evening hours after 5 p.m.

Mo. Rev. Stat. § 589.426.1.

The criminal penalty imposed for a violation of any of the Statute's provisions is a class A misdemeanor. *Id.* § 589.426.2.

---

[2] The Court draws the facts in this section from Plaintiff's Complaint, Plaintiff's Memorandum in support of the instant motion, and Defendants' Response in opposition. The merits of the events described between 2006 and 2022 are not at issue here and are summarized for background purposes only.

2

For background purposes only, at some time prior to October 31, 2008, Plaintiff alleges that he asked a registration official at the St. Louis County Police Department if the Halloween Statute applied to him. The registration official confirmed that the Statute did not apply to Plaintiff because he was convicted prior to its effective date. Plaintiff continued to participate in Halloween traditions, such as handing out candy to children outside, decorating his residence and keeping his lights on. In October 2012, Hazelwood Department Police Officers talked to Plaintiff at his residence about violating the Halloween Statute. Plaintiff told the officers that he confirmed the restrictions pursuant to the Halloween Statute did not apply to him, and he continued to participate in Halloween traditions without any law enforcement resistance until October 2022. On October 31, 2022, after receiving complaints about Plaintiff's residence,[3] Hazelwood Department Police Officers informed Plaintiff that he was in violation of the Halloween Statute for failing to comply with its restrictions for sex offenders. Plaintiff was later charged and pleaded guilty to violating the Halloween Statute.

On October 11, 2023, Plaintiff moved for a Temporary Restraining Order, pursuant to Federal Rule of Civil Procedure 65, to prevent Defendants from enforcing Section 589.426.1(3) of the Halloween Statute that requires him to post a sign at his residence stating, "No candy or treats at this residence." The Court will refer to this as the "sign posting requirement." Plaintiff requests this relief not just for himself, but for all sex offenders that the sign posting requirement applies to in Missouri. Plaintiff does not challenge the other restrictions in the Halloween Statute or request the Court to determine if the Halloween Statute should be retroactively applied to him because he was convicted prior to its effective date. For purposes of this Order, the Court

---

[3] It is unclear if Plaintiff owns this residence or just resides there. However, that is not at issue here.

assumes the Halloween Statute applies retroactively to Plaintiff since the parties have not raised that issue. Further, it is important to note that Plaintiff cannot collaterally attack his state conviction for violating the Halloween Statute in this Court.

Thus, the only issue for this Court to determine is if a temporary restraining order is appropriate based on if the sign posting requirement under Section 589.426.1(3) of the Halloween Statute[4] that requires applicable sex offenders, like Plaintiff, to post a sign at their residence on October thirty-first of each year stating, "No candy or treats at this residence," compels them to speak in violation of the First Amendment to the United States Constitution.

## Legal Standard

In deciding whether to grant or deny a motion for preliminary injunction, the Court must consider four factors: (1) the likelihood the moving party will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). The moving party bears the burden of establishing the need for a preliminary injunction. *Chlorine Institute, Inc. v. Soo Line R.R.,* 792 F.3d 903, 914 (8th Cir. 2015). The same factors govern a request for a temporary restraining order. *See Roberts v. Davis,* 2011 WL 6217937, at *1 (E.D. Mo. Dec. 14, 2011). "No one factor is dispositive of a request for injunction; the Court considers all the factors and decides whether 'on balance, they weigh towards granting the injunction.'" *Braun v. Earls*, 2012 WL 4058073, at *1 (E.D. Mo. Sept. 14, 2012) (quoting *Baker Elec. Co-Op, Inc. v. Chaske*, 28 F.3d 1466, 1472

---

[4] The Court finds that the Halloween Statute comprises multiple, alternative versions of the crime, and is therefore "divisible." *Descamps v. United States,* 570 U.S. 254, 262 (2013). The consideration of Section 589.426.1(3) does not affect the validity of other sections of the statute.

4

(8th Cir. 1994)). While "no single factor is determinative," *Dataphase,* 640 F.2d at 113, "the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted). "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase,* 640 F.2d at 113.

## Discussion

Likelihood of Success on the Merits

The Court will begin its analysis by addressing Plaintiff's likelihood of success on the merits of his compelled speech challenge.

*Compelled Speech*

Defendants argue that Plaintiff is not likely to prevail on the merits because the Halloween Statute's sign posting requirement is not compelled speech since it is not related to a political or ideological message, is required to preserve an orderly society, and is speech incidental to conduct of being a sex offender. Plaintiff contends that the sign posting requirement compels him speak a viewpoint in written words directed to the public that he does not adhere to in violation of the First Amendment.

First Amendment protection "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard,* 430 U.S. 705, 714 (1977); *see also, Hurley v. Irish–American Gay, Lesbian, & Bisexual Grp.,* 515 U.S. 557, 573 (1995) ("[O]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide

5

what not to say") (internal quotation marks omitted). "The right to speak and the right to refrain from speaking are complementary components of the broader concept of individual freedom of mind." *Wooley*, 430 U.S. at 714 (internal quotation marks omitted); *see also, W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."). The compelled speech doctrine applies to ideological speech and purely factual, non-commercial speech. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 797–98 (1988); *Nat'l Inst. of Family and Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372–73 (2018). Because "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech," laws that compel speech are normally considered "content-based regulation[s] of speech" and therefore are subject to strict scrutiny. *Riley,* 487 U.S. at 795.

Two courts in other circuits have addressed similar Halloween sign posting issues for sex offenders, and both have ruled that the signs unconstitutionally compel speech in violation of the First Amendment. A district court in California issued a temporary restraining order enjoining an ordinance that, like the Halloween Statute here, required sex offenders to post a sign on their front doors declaring "No candy or treats at this residence." *Doe v. City of Simi Valley*, 2012 WL 12507598, at *1 (C.D. Cal. Oct. 29, 2012). The District Court in *Doe* found Plaintiffs clearly showed that they were likely to succeed on the merits of their claim that "the sign requirement—a form of compelled speech—runs afoul of the free speech guarantee of the First Amendment." *Id.* at *8.

The Eleventh Circuit held in *McClendon v. Long*, that a local sheriff's department signs that law enforcement placed in the front of registered sex offenders' homes that said "Stop –

6

Warning! NO TRICK-OR-TREAT AT THIS ADDRESS! A COMMUNITY SAFETY MESSAGE FROM BUTTS COUNTY SHERIFF GARY LONG" were a "classic example of compelled speech." 22 F.4th 1330, 1337 (11th Cir. 2022). The *McClendon* Court, like Plaintiff does in this case, relied on the Supreme Court's holding in *Wooley*, where the Court invalidated the conviction of a New Hampshire couple who covered the state motto "Live Free or Die" on their license plate, concluding that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." 430 U.S. at 714. "Since *Wooley,* the Supreme Court has reaffirmed the prohibition on compelled speech and refined it to apply to cases in which the government orders certain types of speech or speech about certain topics." *Gralike v. Cook*, 191 F.3d 911, 917 (8th Cir. 1999), *aff'd*, 531 U.S. 510 (2001). *See, e.g., Riley,* 487 U.S. at 797–98 (invalidating a requirement that professional fund-raisers disclose to potential donors the percentage of charitable contributions collected during the previous 12 months that were actually turned over to the charity); *Hurley,* 515 U.S. at 573 (the "general rule[ ] that the speaker has the right to tailor the speech[ ] applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact"); *Pacific Gas & Elec. Co. v. Public Utils. Comm'n,* 475 U.S. 1, 14–16 (1986) ("[T]he State is not free either to restrict appellant's speech to certain topics or views or to force appellant to respond to views that others may hold. . . . [T]he choice to speak includes within it the choice of what not to say.").

The Halloween Statute's sign posting requirement, like the State motto on the New Hampshire license plate in *Wooley*, is government speech. Defendants require the use of private property to reflect their own message "for the express purpose that it be observed and read by the public," restricting sex offenders of their freedom to speak in their own words, or choice to not

7

speak at all. *Wooley*, 430 U.S. at 713. The Court finds that the sign posting requirement of the Halloween Statute mandating that sex offenders post a sign that says "No candy or treats at this residence" on Halloween is compelled speech.

*Application of Strict Scrutiny*

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015). As a content-based restriction, the Halloween Statute's sign posting requirement must satisfy strict scrutiny. *See id*. "Content-based [speech] regulations are presumptively invalid." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992). Defendants thus bear the burden of rebutting the presumption of invalidity. *United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 817 (2000). Indeed, "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Id.* at 818. Defendants can, nonetheless, rebut the presumption if it is able to show that the ordinance is "narrowly tailored to promote a compelling Government interest," such that the ordinance is the "least restrictive alternative" to serve the government's purpose. *Id.* at 813; *see also, Ashcroft v. ACLU,* 542 U.S. 656, 666 (2004). If the restriction is not narrowly tailored to achieve a compelling interest, it is an "unconstitutional restraint[ ] on free speech." *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1409 (8th Cir. 1995).

Defendants claim that they can satisfy this strict scrutiny standard, arguing that the sign posting requirement of the Halloween Statute is narrowly tailored to achieve a compelling government interest because it is part of Missouri's broader statutory scheme to protect children and other vulnerable victims from the recidivist predilections of sexual offenders.

It has been recognized that "[s]ex offenders are a serious threat in this Nation." *McKune v. Lile,* 536 U.S. 24, 32 (2002). Statistics show that when "convicted sex offenders reenter

8

society they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault." *Id.* at 32–33. "[E]very. . .State, has responded to these facts by enacting a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders." *Connecticut Dept. of Public Safety v. Doe,* 538 U.S. 1, 4 (2003).

There is no doubt that protecting children is a compelling government interest. That is undisputed by the parties here. It is also undisputed that on Halloween evening, there is a well-known tradition in this country that children of all ages dress up in costumes going house-to-house saying "trick-or-treat" in the hopes of receiving candy from strangers. It is an equally well-known tradition that if a house does not have its exterior lights on, that means the owners are not handing out candy for the children trick-or-treating. Although Defendants do not provide any evidence that sexual offenders are more likely to be re-arrested for a sexual offense on Halloween, "it is common sense, however, that young 'trick-or-treaters' are indeed vulnerable to child predators on Halloween." *Doe*, 2012 WL 12507598, at *8. Because of these reasons, the Court fully recognizes that Defendants have a compelling interest in restricting *certain* conduct of sexual offenders on Halloween that satisfies the strict scrutiny standard.

However, Defendants proffered interests as it relates solely to the Halloween Statute's sign posting requirement cannot withstand strict scrutiny because it is not narrowly drawn to accomplish those ends. Defendants do not cite any evidence that the sign posting requirement furthers its stated interests nor do they show it is the least restrictive alternative to serve those interests. *See Johnson v. Minneapolis Park & Recreation Bd.,* 729 F.3d 1094, 1100 (8th Cir. 2013) (reversing denial of motion for preliminary injunction because plaintiff was likely to succeed on the merits of his First Amendment claim because restriction not narrowly tailored and government "presented little evidence" that the restriction furthered stated interests); *Whitton*, 54

9

F.3d at 1408 (restriction not narrowly tailored because government "has not presented sufficient evidence" that the Ordinance is the least restrictive means to further stated interests and "no evidence that enforcement of these existing provisions is insufficient").

First, a sign saying "No candy or treats at this residence" does not clarify the "danger" that the statute serves to mitigate. Defendants even admit this in their response, stating the sign is less likely to cause suspicion compared to the sign in *McClendon* because it does not make clear why the house does not have any candy. More significantly, the other restrictions mandated in the Halloween Statute serve to substantially further the aims of Defendants' stated interests. The first section of the restricted conduct under the Halloween Statute is that sex offenders must "[a]void all Halloween-related contact with children." Mo. Rev. Stat. § 589.426.1(1). The Halloween Statute goes on to require that sex offenders must "[r]emain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies." *Id.* § 589.426.1(2). If both of these restrictions are followed by sex offenders, it would be nearly impossible for them to have contact with children trick-or-treating outside, thus very effectively serving the stated government interest to protect those children. The Halloween Statute's restrictions do not end there. Sex offenders must also "[l]eave all outside residential lighting off during the evening hours after 5 p.m." *Id.* § 589.426.1(4). As mentioned above, it is well-known that when a residence does not have its lights on, that is a signal to children and other Halloween participants that the residents are not handing out candy. These three provisions of the Halloween Statute are powerful tools to not only prevent sex offenders from being in contact with children outside trick-or-treating, but also from the children going on the properties of sex offenders. Additionally, sexual offenders subject to this statute are required to register their status to law

enforcement, which is readily available to the public. If a citizen was concerned about which residences may have a sexual offender residing there, that information is readily available to the public.

Defendants raise concerning behaviors of this particular Plaintiff, but that is not at issue here. If Plaintiff continues that referenced conduct, he can be charged and prosecuted. The sign posting requirement adds nothing. The Court also does not discount the importance of Defendants' proffered purpose for protecting children from sex offenders, but again, is unconvinced that the sign posting requirement is narrowly tailored to achieve Defendants' compelling interest *in the least restrictive manner*. "To this end, the government, even with the purest of motives, may not substitute its judgment as to how best to speak for that of speakers and listener." *Riley,* 487 U.S. at 2675.

Because the sign posting requirement of the Halloween Statute is not narrowly tailored to achieve a compelling government interest, and there are other highly effective alternatives to achieve Defendants' interest in protecting children from sex offenders on Halloween, the Court finds it fails strict scrutiny. *See Reed*, 576 U.S. at 173 (invalidating law because Government "has not met its burden to prove that its Sign Code is narrowly tailored to further a compelling government interest").

Threat of Irreparable Harm

In cases implicating the First Amendment, courts normally assume irreparable injury because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713, 91 (1971)). The Eighth Circuit has adopted this approach. *See Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999).

11

Defendants argue that Plaintiff has unreasonably delayed in bringing this suit, which cuts against a threat of irreparable harm to him, and such delay is grounds enough for the Court to deny the instant Motion. Although it is true that Plaintiff is filing his request nearly a year since his arrest, the threat of the irreparable harm has not occurred since then and will not be at risk to happen until this Halloween.

As discussed above, Plaintiff has made a clear showing that he is likely to succeed on the merits of his claim that the sign posting requirement, a form of compelled speech, runs afoul of the free speech guarantee of the First Amendment. Therefore, the Court finds Plaintiff, and other individuals similarly situated to him, are likely to suffer irreparable harm this year on Halloween absent the issuance of a temporary restraining order.

Balance of Harm and Public Interest

Plaintiff must also establish that the threatened injury to him outweighs the harm a preliminary injunction may cause to Defendants, and that the public interest would be served by the injunction. *NTD I, LLC v. Alliant Asset Mgmt. Co., LLC*, 337 F. Supp. 3d 877, 889-90 (E.D. Mo. 2018); *Noodles Dev., LP v. Ninth St. Partners, LLP*, 507 F. Supp. 2d 1030, 1038 (E.D. Mo. 2007).

Indeed, as stated above, sex offenders, like Plaintiff, will be compelled to speak in violation of the First Amendment on Halloween and have demonstrated irreparable harm. Furthermore, Defendants have not shown that the Halloween Statute's sign posting requirement has or will increase public safety. The balance of harm weighs in favor of Plaintiff. Defendants' interest in ensuring safety for children and protecting them from contact with sex offenders on Halloween is satisfied by the remaining restrictions in the Halloween Statute that disallows sex offenders from leaving their residences on Halloween evening, turning their outside lights on,

and prohibiting all Halloween conduct with children. Thus, the Court finds the considerations of balance between harm and injury and of the public interests favors Plaintiff such that the Court must intervene to preserve the status quo until it can determine the merits. *See Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (finding that "it is always in the public interest to protect constitutional rights" and "[t]he balance of equities . . . generally favors the constitutionally-protected freedom of expression").

Bond

Plaintiff requests that no should be required because Defendants will not suffer any damages from the issues of a temporary restraining order. Defendants do not respond to the issue of bond in their response.

When issuing a preliminary injunction, the Court must require the moving party to provide a bond or security. Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction ... only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."). A district court has "much discretion" in establishing a bond but must not "abuse[ ] that discretion due to some improper purpose," must "require an adequate bond," and must "make the necessary findings in support of its determinations." *Hill v. Xyquad,* Inc., 939 F.2d 627, 632 (8th Cir. 1991). "Courts in this circuit have almost always required a bond before issuing a preliminary injunction, but exceptions have been made where the defendant has not objected to the failure to require a bond or where the damages resulting from a wrongful issuance of an injunction have not been shown." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Engineers*, 826 F.3d 1030, 1043 (8th Cir. 2016).

The Court will waive the bond requirement here because Defendants have not objected to Plaintiff's request that no bond is required based on the circumstances here, and Defendants as law enforcement agencies will suffer no monetary damages in complying with this Order based on the public interest in preserving guarantee under the First Amendment to the United States Constitution. *See id.*; *see also, Brooks v. Francis Howell School District,* 599 F.Supp.3d 795, 806 (E.D. Mo. April 21, 2022) ("Based on the Court's evaluation of the public interest, the potential chilling effect of requiring a bond, and the fact that Defendants have not shown that the wrongful issuance of an injunction would result in damages, the Court waives the bond requirement."); *ARC of Iowa v. Reynolds,* 559 F.Supp.3d 861, 881 (S.D. Iowa, Sept. 13, 2021) (waiving bond requirement under Rule 65(c) because no monetary harm to the defendant).

**Conclusion**

For these reasons, the Court concludes that Plaintiff has met his burden of establishing that a Temporary Restraining Order is warranted. Further, because the Court has found a likelihood of success on the merits that Missouri Revised Statute Section 589.426.1(3) is unconstitutional, this Order applies to any person affected, not just Plaintiff, and such relief will not impose any additional burden on Defendants. *See, e.g., Ashcroft,* 542 U.S. at 671 (finding broad preliminary relief is often appropriate under current law where, as here, a Plaintiff brings a First Amendment challenge).

Lastly, the Court will set a preliminary injunction hearing because this temporary restraining order is effective for fourteen days after this Order's time of entry pursuant to Federal Rule of Civil Procedure 65(b)(2). The temporary restraining order may resolve the issue for this Halloween, but does not for those thereafter.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Thomas L. Sanderson's Motion for Temporary Restraining Order [ECF No. 7] is **GRANTED**, and the State of Missouri, by and through, Defendant Andrew Bailey, Attorney General of the State of Missouri, and James Hudanick, Chief of Police of the City of Hazelwood, Missouri, as well as their officers, agents, employees, and attorneys, are temporarily enjoined from enforcing Missouri Revised Statute Section 589.426.1(3), requiring any person required to register as a sexual offender under sections 589.400 to 589.425 to post a sign at his or her residence stating, "No candy or treats at this residence" on October thirty-first of this year. <u>This Temporary Restraining Order only relates to the enforcement of Section 589.426.1(3) of the Halloween Statute and does not affect the validity of its other sections.</u>

**IT IS FURTHER ORDERED** that a telephone status conference is set for **November 3, 2023, at 11:00 A.M.** Counsel are directed to call the conference line toll free at **1-877-810-9415**. The access code to enter the telephone conference is: **7519116**.

**IT IS FURTHER ORDERED** that a preliminary injunction hearing is set for **November 9, 2023, at 10:30 A.M. in Courtroom 12N.**

Dated this 27th day of October, 2023.

_____<br>
**JOHN A. ROSS**<br>
**UNITED STATES DISTRICT JUDGE**