## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| THOMAS L. SANDERSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-CV-01242-JAR |
| | ) | |
| ANDREW BAILEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## Motion to Dismiss for Failure to State a Claim Under Federal Rules of Civil Procedure ("F.R.C.P") 12(b)(1) and 12(b)(6) and Suggestions in Support

### Introduction

Thomas Sanderson, a sex offender convicted of Second-Degree Statutory Sodomy, filed a complaint under 42 U.S.C. § 1983, alleging that the Hazelwood Police Department and Missouri Attorney General will violate his First Amendment rights by enforcing a Missouri law that requires all registered sex offenders to post a sign on Halloween that states "No candy or treats at this residence." Because Sanderson fails to state a claim upon which relief can be granted, this Court should dismiss his complaint.

### Standard for Motions to Dismiss

Standing is a jurisdictional prerequisite that must be resolved before reaching the merits of the plaintiff's suit. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). Standing presents a threshold inquiry for

the court that "eschews evaluation on the merits." *Id.* (quoting *McCarney v. Ford. Mtr. Co.*, 657 F.2d 230, 233 (8th Cir. 1981)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)). If the plaintiff lacks standing, the Court should dismiss the case under F.R.C.P. 12(b)(1).

A motion brought under F.R.C.P. 12(b)(6) asserts that the pleadings are not enough to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). A plaintiff's claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, in reviewing a complaint under this standard, a "court accepts as true all factual allegations, but is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *Iqbal*, 584 F.3d at 678).[1] Finally, "Threadbare recitals of the elements of a

---

[1] Put another way, "courts do not have to accept legal conclusions as facts." *Hobley v. Kansas City S. Ry. Co.*, No. CV 18-1307, 2019 WL 13218921, at *1 (W.D. La. June 7, 2019) *citing Iqbal* 556 U.S. at 678.

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Sanderson's complaint states that the Missouri law requiring registered sex offenders to post a sign that states "No candy or treats at this residence" violates his First Amendment rights because it is a "classic example of compelled speech." Doc. 1 at 1. Sanderson is wrong for at least four reasons. *First*, Sanderson lacks standing in this pre-enforcement complaint because Sanderson has failed to plead that he will refuse to post the "No candy or treats at this residence" sign. *Second*, the required sign does not qualify as "compelled speech" under binding Eighth Circuit Precedent. *Third*, the sign-posting requirement is merely speech incidental to conduct, which means it is not a First Amendment violation. And *fourth*, even if it were compelled speech, the requirement survives both strict scrutiny and a history-and-tradition test.

## I.    The complaint should be dismissed because Sanderson lacks standing.

The Supreme Court has held that a plaintiff shows injury-in-fact when, in a pre-enforcement challenge, the plaintiff alleges *both* that he intends to "engage in a course of conduct arguably affected with a constitutional interest" *and* that his "intended future conduct is also 'arguably . . . proscribed by [the] statute' they wish to challenge." *Susan B. Anthony List v. Driehaus*, 573 U.S.

149, 161–62 (2004) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)). Sanderson has not pleaded sufficient facts to satisfy the injury-in-fact requirement.

To be sure, Sanderson has pleaded that he has a credible belief that the State will enforce § 589.426 against non-compliant registered sex offenders. *See, e.g.,* Doc. 1 at 8, ¶20. But Sanderson never alleged in his complaint that he will refuse to post the required sign. Doc. 1. Although Sanderson has not chosen to challenge the Halloween-related contact provision, the external lighting provision, or the stay-at-home provision of § 589.426, his complaint is silent on whether he will follow any of those requirements, or even if he will follow the sign-posting requirement of § 589.426. Doc. 1. Elsewhere, Sanderson suggests that he may, after all, follow at least some portions of § 589.426. *See, e.g.,* Doc. 22 at 18. These non-specific statements are not enough to establish injury-in-fact under *Driehaus* because they are not a clear allegation of Sanderson's intent to take or not take any particular action. They are also insufficient because they are not contained in Sanderson's initial pleadings, where factual allegations must reside for standing purposes. *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570, ("'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). *See also, Owner-Operator Independent Drivers Association v. United States Dept. of Trans.,* 878 F.3d

1099, 1102 (8th Cir. 2018) ("The elements of standing cannot be inferred argumentatively from averments in the pleadings") (cleaned up); and, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) ("Where, as here, a case is at the pleading stage, the plaintiff must clearly...allege facts demonstrating each element.") (internal quotations omitted).

II.   **This Court should dismiss his complaint because Sanderson fails to state a claim for which relief can be granted.**

A.   **Missouri's "No candy or treats at this residence" sign is not compelled speech under Eighth Circuit precedent.**

Requirements that sex offenders "speak" commonly fall outside the compelled-speech doctrine. That doctrine "has been found only in the context of governmental compulsion to disseminate a particular political or ideological message." *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995). "There is no right to refrain from speaking when 'essential operations of government may require it for the preservation of an orderly society,—as in the case of compulsion to give evidence in court.'" *Id.* at 878, (quoting concurrence in *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 645 (1943)).  That is why requiring sex offenders to register as sex offenders is not compelled speech. *United States v. Arnold*, 740 F.3d 1032, 1035 (5th Cir. 2014). Although registering one's address might literally be described as "speech," "[w]hen the

government, to protect the public, requires sex offenders to register their residence, it conducts an 'essential operation of the government . . . .'" *Id*. (alterations omitted).

Requiring a "no candy" sign is no different. If ensuring that the public is aware of the addresses of sex offenders is part of the "essential operations of government," then so too is taking modest measures to ensure that unaccompanied children do not find themselves on the literal doorsteps of sex offenders. A simple "no candy" sign is minimally intrusive and is incidental to "essential operations of government [] for the preservation of an orderly society." *Sindel*, 53 F.3d at 878.

Unable to distinguish these cases from his own situation, Sanderson argues that *Sindel* and *Arnold* were wrongly decided. Doc. 22 at 4. To make that argument, Sanderson relies on *Riley v. Nat'l Fed'n for the Blind*, 487 U.S. 781 (1988). But *Sindel* was decided years after *Riley*, and in *Sindel* the Eighth Circuit expressly held that the "compelled speech" doctrine "has been found only in the context of governmental compulsion to disseminate a particular political or ideological message." *Sindel*, 53 F.3d at 878. *Sindel* is binding unless and until overruled by the Eighth Circuit en banc. Next, Sanderson argues that *Arnold* is inapplicable because the speech at issue in that case was, according to Sanderson, private and made to the government, not the public. Doc. 22 at 18. Sanderson offers no reason why this alleged distinction is

6

important. It is not.

Sanderson's final argument rests on non-binding, out of circuit precedents addressing factually distinct sign mandates. Doc. 1 at 1–2; Doc. 22 at 9–10. Sanderson's first case, *Doe v. City of Simi Valley*, 2:12-CV-8377-PA-VBK, 2012 WL 12507598 (C.D. Cal.), is an unreported district court case where the district court issued an apparently *ex parte* temporary restraining order. *Id*. at *1. The docket sheet reveals that the case was later dismissed with prejudice. Doc. 43, *Doe v. City of Simi Valley*, 2:12-CV-8377-PA-VBK (C.D. Cal. Jan. 31, 2013).

Sanderson's second case, *McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022), includes facts nowhere near the minimally intrusive sign required here. In *McLendon*, "the signs expressly bore the imprimatur of government, stating that they were 'a community safety message from Butts County Sheriff Gary Long.'" *McClendon*, 22 F.4th at 1136. Likewise, the signs were placed by government agents, and could only be removed by government agents. *Id*.

Missouri's sign requirement contains no such language—an important consideration even under the logic of *McClendon*, which had relied on *Mech v. Sch. Bd.,* 806 F.3d 1070, 1075 (11th Cir. 2015). In *Mech*, the Eleventh Circuit held that banners on school property were compelled speech because the banners bore: "the imprimatur of the schools and the schools exercise substantial control over the messages that they convey." *Mech*, 806 F.3d at

1075. And, unlike in the signs in *McClendon*, Missouri's signs are placed by sex offenders, bear no "imprimatur of government", and may be removed by the offenders immediately after Halloween. § 589.426.

The differences become even more stark when the Court considers the appearance of the signs at issue. Below is a picture of the *McLendon* sign, the size of a typical political advocacy yard sign:



*McClendon*, 22 F.4th at 1133. In contrast, the following seven words on an 8" x 11" inch piece of paper or even a "post-it" note would satisfy Missouri's requirement:

# No candy or treats at this residence

Missouri's statute imposes *no* requirements on the sign's design, origin, purpose or even format; this allows registered sex offenders to post signs that do *not* bear "the imprimatur of government." *McClendon*, 22 F.4th at 1136.

Missouri's law, unlike the challenged signs in *McClendon*, also provides substantial control to the registered sex offender over all aspects of the sign—including whether to add additional text. Missouri law requires only that the sign be posted and that it contain the language "No candy or treats at this residence." § 589.426.1(3). In fact, the above sign would be no different from signs which might be posted by thousands of Missourians who do not wish to participate in Halloween for a variety of unrelated reasons, including that they have run out of candy. Given these substantial differences, there are significant factual distinctions from the non-binding *McClendon* holding. And critically, Sanderson has expressly chosen *not* to challenge the constitutionality of any of the other provisions of § 589.426. Doc.1 at 3, ¶8; Doc. 7 at 7 ("The only provision relevant to this Motion is Section 589.426, subd. (1)(3) . . . ."). He does not challenge the requirements of the same statute preventing his contact with children on Halloween night, to include the requirement to turn off external lights, which would otherwise attract children to the residence for candy under the typical conventions for Halloween night.[2] He only challenges the requirement to post seven words on his door to effectuate the same lack of contact which children which he knows is required.

---

[2] "On Halloween, the unspoken rule of conduct is to turn on your porch light (or driveway light) if you do welcome trick-or-treaters — and turn it off if you're out of candy or don't want costumed kids knocking on your door." https://www.apartmenttherapy.com/the-halloween-porch-light-code-130687, updated Oct 16, 2023, accessed October 27, 2023.

**B.** **The First Amendment allows regulation of this speech which is merely incidental to conduct.**

Sanderson's complaint also fails to state a claim since Missouri's sign-posting requirement is part of a statutory scheme that regulates conduct: preventing "Halloween-related contact with children" § 589.426.1(1) (by requiring them to keep their lights off, not engage in festivities, etc.). The sign-posting requirement is incidental to this required conduct. When a statute is designed to regulate conduct and that conduct "was in part initiated, evidenced, or carried out by means of language," then the impact on speech is incidental, and not a violation of the First Amendment. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 62 (2006) (quoting *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502 (1949)). In *Rumsfeld*, the Court remarked that Congress can prohibit employers from discriminating on the basis of race, and therefore, Congress can incidentally regulate the words posted by an employer, prohibiting posting of a sign that reads "White Applicants Only." *Id.* (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 389 (1992)). Missouri's Supreme Court has adopted the same rule when reviewing Missouri statutes requiring an affirmative duty to warn. *See, e.g., State v. S.F.*, 483 S.W.3d 385, 387–88 (Mo. 2016). In *S.F.*, a defendant challenged Missouri's statute that criminalized the failure of an HIV positive person to disclose that

10

status before engaging in sexual contact. *Id*. at 386. Following *Rumsfeld* and *Sorrell*, the Missouri Supreme Court found that the statute at issue governed conduct, not speech, and that any speech involved was incidental to the regulated conduct. *Id*. at 387–88.

These rationales apply to § 589.426's requirements. The statute prohibits "Halloween-related contact with children." § 589.426.1(1). To prevent contact with children, the statute *also* prohibits activities that would encourage children to approach a sex offender's residence. These prohibitions include allowing sex offenders to be outside their residence between 5 and 10:30 p.m., and requiring all outside residential lighting to be turned off after 5:00 p.m. *Id*. at (2), (4). In order to further effectuate the statute's regulation of sex offender conduct, it also requires sex offenders to post a sign indicating there are "no treats or candy at this residence" on Halloween. *Id*. at (3). The purpose of the sign-posting requirement is to prohibit "Halloween-related contact" between sex offenders and children. In this way, the statue is governing conduct with only incidental impact on speech. Sanderson all but concedes as much given that he does not challenge the constitutionality of *any* of the other provisions of § 589.426.

Elsewhere, Sanderson has argued that *Rumsfeld* and *Sorrell* do not apply. *See, e.g.,* Doc. 22 at 9–10. For instance, Sanderson asserts that Defendant Bailey relies on Supreme Court dicta in *Rumsfeld*. Doc. 22 at 10.

11

Even assuming it is dicta, the Eighth Circuit has expressly held that Supreme Court dicta all but binds district courts except in the rare and extraordinary case. *See In re Pre-Filled Propane Tank Antitrust Litigation*, 860 F.3d 1059, 1064 (8th Cir. 2017) (en banc) ("Appellate courts should afford deference and respect to Supreme Court dicta, particularly where, as here, it is consistent with longstanding Supreme Court precedent.").

Sanderson then attempts to wave *Rumsfield* away by suggesting that its holding depends on whether the government has *required* a statement to be posted (such as "Live Free or Die") or whether the government has *prevented* a statement from being posted (such as "White Applicants Only"). Doc. 22 at 9. Sanderson has missed the point. The Supreme Court's early compelled speech cases Sanderson has relied upon, such as *Barnette* and *Wooley*, concern a particular *type* of speech: government-forced creeds. *See, e.g., Wooley v. Maynard*, 430 U.S. 705, 715 (1977). In *Wooley*, the Court described the motto requirement, which was posted on all state license plates at the time, as "a state measure which forces an individual, as part of his daily life indeed constantly while his automobile is in public view to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." *Id*. Missouri's sign-posting requirement is far different from "an instrument for fostering public adherence to an ideological point of view. . . ." *Id*. After all, all Missouri law requires is the posting of a sign that says "no

treats or candy at this residence." § 589.426.1(3). The seven-word sign requirement at issue here is far more akin to the Sex Offender Registration requirements which have been found not to violate the first amendment than a motto on a license plate. In fact, the Fifth Circuit has specifically pointed out that the First Amendment "interests at stake" in the Sex Offender Registration context are "not of the same order" as the first amendment interests discussed in *Wooley* and *Barnette*. *United States v. Arnold*, 740 F.3d 1032, 1034 (5th Cir. 2014), Moreover, Sanderson also ignores that the Supreme Court has upheld Sex Offender Registration schemes since their inception. *See*, *e.g.*, *Smith v. Doe*, 538 U.S. 84, 99 (2003) (holding Alaska's sex offender registration law not to violate the *Ex post facto* clause of the constitution stating: "The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme."). Elsewhere, Sanderson concedes that it is not a First Amendment violation to prevent speech that advertises unlawful conduct. Doc. 22 at 9. It is equally true that the First Amendment is not violated by incidentally requiring a few words that prevent unlawful conduct, in this case, Halloween-related contact with children.

Despite Sanderson's protestations, Missouri's sign-positing requirement is merely incidental to the conduct based requirements of § 589.426, ensuring

13

no Halloween related contact between sex offenders and children.[3]

### C. Missouri's sign posting requirement survives both strict scrutiny and a history-and-tradition analysis.

Sanderson's failure to plead sufficient facts to show a First Amendment violation means his complaint should be dismissed. Even assuming, *arguendo*, that § 589.426's sign-posting requirement is compelled speech, the Missouri statute survives both strict scrutiny and a history-and-tradition analysis.[4]

### i. Missouri's statute survives strict scrutiny.

Under the Supreme Court's strict scrutiny test, a State must "show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" *Burson v. Freeman*, 504 U.S. 191, 198 (1992).

Sanderson has already conceded that the State has a compelling interest in protecting children. Doc 7-1 at 17. The Missouri Supreme Court has reached similar conclusions. *See, e.g., Kirk v. State*, 520 S.W.3d 443, 450 (Mo. 2017) (recognizing that protecting the public from crime is a compelling state interest). The State also has compelling Sovereign interests in maintaining our

---

[3] Sanderson has also complained that the message is "false." *See, e.g.,* Doc. 1 at 3. The message conveyed by the sign is clear: there are no treats or candy at the residence for children on Halloween. While that was certainly false on October 31, 2022 (Doc. 18–1), it was and remains unlawful for Sanderson to have Halloween related contact with children. That includes Sanderson giving candy or treats to children on Halloween. § 589.426.1(1).

[4] Because the litigation is at the motion-to-dismiss stage, Attorney General Bailey analyzes the statute under strict scrutiny. But Attorney General Bailey does not concede that strict scrutiny must govern if the Court does not dismiss the complaint.

federalist system of government, and "the independent power of a State to articulate societal norms through criminal law. . . ." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).

That interest is especially weighty on Halloween where hundreds of unaccompanied children might approach a residence on a single night. With a child already on a sex offender's literal doorstep, it would not be difficult to force or entice the child inside. Many parents, such as a neighbor depicted in the footage from Sanderson's interaction with police last Halloween, would be shocked to discover their child visited the house of a convicted sex offender. Doc. 18-14 (Defendant's Exhibit 14) at 12:58–13:08 (Neighbor: "I've got daughters, my daughters are out right now, I live right around the corner. I just want to make sure everything's ok because I know I done sent my daughters over here." Police Officer: ". . . He's a registered sex offender." Neighbor: "Oh, hell!").

Missouri's sign-posting requirement is a minimally intrusive means to the end of separating sex offenders from children, and it along with the other provisions of § 589.426 are narrowly tailored to achieve that end. After all, Missouri law only requires seven words to be displayed for a few hours, and the statue gives considerable discretion to the sex offender to choose how the sign appears and is displayed. In fact, the sign does not even identify the resident as a convicted sex offender. Indeed, the required language on the

sign—"no treats or candy at this residence"—is no different than language posted by millions of Americans who do not participate in Halloween activities, and who do not wish to be disturbed on October 31st.

The sign-posting requirement is part of Missouri's broader regulatory scheme governing the conduct of registered sex offenders. *See* § 589.400–§ 589.426; *see also* § 566.147 (governing how close certain sex offenders may live to schools, etc.). That statutory regime includes a mechanism by which offenders are categorized by tier and then obligated to adhere to registration conditions. § 589.400; § 589.404; § 589.407; § 589.414; § 589.425. The law establishes a felony criminal offense for an offender's failure to register in accordance with statutory provisions and a misdemeanor criminal offense for an offender's failure to adhere to the specific provisions of § 589.426.1. This broader statutory scheme allows for sexual offenders to petition to be removed from the sexual offender registry and to therefore no longer be subject to, among other things, the Halloween-related restrictions contained in § 589.426.1. *See* § 589.426.2; *see also* § 589.401.17.

### ii. Missouri's statute survives a history-and-tradition analysis.

In *Bruen*, the Supreme Court formalized its use of history and tradition when reviewing a statute challenged under the Second Amendment. *New York State Pistol & Rifle v. Bruen*, 142 S. Ct. 2111, 2130 (2022). If the court were to

16

extend such an analysis to the First Amendment context here, Missouri's statute similarly survives Sanderson's challenge. Sanderson cannot argue that the history and tradition of the framing era lacked a concept of a duty to warn, particularly when it comes to children. Traditionally, our nation has recognized that children are unable to make decisions for themselves and often require additional supervision to avoid dangerous circumstances or potentially life-altering decisions. To that end, our tradition recognizes a greater duty of care when children are involved. [5]

Moreover, the Missouri statute at issue—§ 589.426—establishes a criminal act and sets forth a criminal penalty as part of a comprehensive scheme designed to protect children from contact with sex offenders.[6] Although Sanderson only challenges the sign-posting requirement, the text and structure of Missouri's statute must be considered as a whole. *See, e.g., Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77, 97 (1981) ("The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully

---

[5] Briefed more fully in the earlier filed suggestions in opposition to Sanderson's request for a temporary restraining order, Doc. 17 at 22–27.

[6] The statute prohibits sex offenders from having "Halloween-related contact with children." § 589.426.1(1). It requires sex offenders to remain inside his or her residence between 5:00 p.m. and 10:30 p.m. on Halloween. *Id*. at (2). It requires sex offenders "to post a sign at his or her residence stating, 'No candy or treats at this residence.'" *Id*. at (3). And it requires sex offenders to leave "all outside residential lighting off during the evening hours after 5:00 p.m." *Id*. at (4).

considered legislative programs.").

In light of our nation's long-standing recognition of affirmative duties to speak or warn which are not antithetical to the First Amendment, Missouri's statute survives the history-and-tradition test.

### III.  Sanderson's facial challenge and request for a global injunction also doom his challenge under Rule 12(b)(6) and 12(b)(1).

Sanderson's complaint should be dismissed for two additional reasons: his facial challenge and request for a global injunction mean that he has failed to state a claim upon which relief can be granted.

As the Supreme Court has explained, "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances* exists under which the Act would be valid.*" United States. v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added). Sanderson faces an even steeper challenge because he has brought a facial challenge under the First Amendment.  "'Facial challenges are disfavored' because they 'often rest on speculation....[and] raise the risk of "premature interpretation of statutes on the basis of factually barebones records."'" *Phelps-Roper v. City of Manchester, Mo*., 697 F.3d 678, 687 (8th Cir. 2012) (quoting *Wash. State Grange v. Wash. State Republican Party et al.,* 552 U.S. 442, 450 (2008)). Sanderson's facial challenge fails under *Salerno* and *Phelps-Roper*. As stated before, Sanderson has not pleaded that he will refuse

18

to post a sign, and his petition, despite bringing a facial challenge, relates only to himself and his conduct. *See, e.g.,* Doc. 1 at 2–3, ¶5–7, & 8–11, ¶20–30.

Finally, by requesting a statewide injunction, Sanderson has sought a type of relief that he cannot be entitled to under the facts of his complaint. As an initial matter, there is a serious concern that Sanderson is really attempting to assert the rights of third parties—including other registered sex offenders and the other occupants of his residence. The general rule is that a plaintiff generally must assert his own legal rights and interests and cannot base a claim for relief on the legal rights of third parties. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2427–28 (Thomas, J., concurring) (saying third-party standing rules prohibit universal injunctions); *Arizona v. Biden*, 40 F.4th 375, 395–96 (6th Cir. 2022) (Sutton, C.J., concurring) (making the same point). In other words, it is doctrinally improper for Sanderson to assert the rights of other registered sex offenders and the other occupants of his residence.

## Conclusion

This Court should dismiss Sanderson's petition.

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

/s/ *Gregory M. Goodwin*
GREGORY M. GOODWIN
Assistant Attorney General
Missouri Bar #65929
P.O. Box 899
Jefferson City, MO 65102
(573) 751-7017
(573) 751-2096 Fax
gregory.goodwin@ago.mo.gov

Attorneys for Attorney General Bailey

REICHARDT NOCE, AND YOUNG LLC
By: */s/ Timothy J. Reichardt*
Timothy J. Reichardt #57684 MO
tjr@reichardtnoce.com
12444 Powerscourt Drive, Suite 160
St. Louis, MO 63131
314/789-1199
314/754-9795–Facsimile

*Counsel for Appellant Hudanick*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, and any attachment, was electronically filed using the CM/ECF system on October 27, 2023. All counsel of record will receive service by operation of the CM/ECF system.

*/s/ Gregory M. Goodwin*
GREGORY M. GOODWIN
Assistant Attorney General