# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MISSOURI

## EASTERN DIVISION

THOMAS L. SANDERSON,
an individual,

                Plaintiff,

     vs.

ANDREW BAILEY, in his official
capacity as Attorney General of the State
of Missouri; and JAMES HUDANICK,
in his official capacity as Chief of Police
of the city of Hazelwood, Missouri

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action:

Case No.  4:23-cv-01242-SPM

## PLAINTIFF THOMAS SANDERSON'S OPPOSITION TO

## DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

OPPOSITION MEMORANDUM ............................................................................. 1

I.   INTRODUCTION .......................................................................................... 1

II.  PLAINTIFF'S COMPLAINT ....................................................................... 2

III. ARGUMENT ................................................................................................. 3

IV. OPPOSITION TO GROUNDS FOR DISMISSAL ...................................... 3

      A.   PLAINTIFF HAS STANDING BECAUSE HIS PRIOR PROSECUTION UNDER
           THE STATUTE ESTABLISHES A CREDIBLE THREAT OF FUTURE ENFORCEMENT ........ 4

      B.   POSTING SIGNAGE "AT A RESIDENCE" IS "CLASSIC" COMPELLED SPEECH.............. 6

      C.   A SIGN-POSTING REQUIREMENT IS NOT A MERE REGULATION OF CONDUCT
           BECAUSE THE REGULATED "CONDUCT" IS PRECISELY TO ENGAGE IN SPEECH ........ 9

      D.   THIS COURT IS CORRECT THAT THE SIGN POSTING MANDATE FAILS
           STRICT SCRUTINY ............................................................................. 11

      E.   DEFENDANTS' "HISTORY AND TRADITION ANALYSIS" MERELY SEEKS TO
           AVOID THE EFFECTS OF STRICT SCRUTINY ........................................... 13

      F.   A FACIAL CHALLENGE IS PLAUSIBLY ASSERTED IN THIS FIRST AMENDMENT
           CASE BECAUSE THE STATUTE IMPACTS ALL REGISTRANTS EQUALLY ................... 13

V.  CONCLUSION............................................................................................. 15

///
///
///

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 3

*Bordell v. General Elec. Co.*, 922 F.2d 1057 (2d Cir. 1991) .......................................... 4

*Cressman v. Thompson*, 798 F.3d 938 (10th Cir. 2015) ................................................. 2

*Doe v. City of Simi Valley*, 2012 WL 12507598 (C.D. Cal. Oct. 29, 2012) ............................. 3, 9

*Gralike v. Cook*, 996 F.Supp. 889 (W.D. Mo. 1998) ...................................................... 3, 9

*Keller v. City of Fremont*, 719 F.3d 931 (8th Cir. 2013) .............................................. 4

*McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022) ............................................. 3, 8, 11, 12

*Missouri Broad. Assn. v. Lacy*, 846 F.3d 295 (8th Cir. 2017) ........................................ 14

*Nat'l Assn. of Mfrs. v. SEC*, 800 F.3d 518 (D.C. Cir. 2015) .......................................... 7

*R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012) ................................. 7

*Riley v. Nat'l Fed'n for the Blind*, 487 U.S. 781 (1988) .......................................... 6, 7, 9

*Rumsfeld v. Forum for Academic and Institutional Rights*, 547 U.S. 47 (2006) .................. 10, 11

*State v. S.F.* 483 S.W.3d 385 (Mo. 2016) ................................................................. 10

*Stock v. Gray*, 2023 WL 2601218 (W.D. Mo. March 22, 2023) ................................... 14

*Stuart v. Camnitz*, 774 F.3d 238 (4th Cir. 2014) ........................................................ 7

*Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785 (8th Cir. 2015) ...... 12

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2004) ............................................. 4, 5

*United States v. Arnold*, 740 F.3d 1032 (5th Cir. 2014) .............................................. 8

*United States v. Sindel*, 53 F.3d 874 (8th Cir. 1995) ................................................. 6, 7

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988) .......................................... 13, 14

///

<u>**OPPOSITION MEMORANDUM**</u>

Plaintiff Thomas L. Sanderson respectfully submits this Opposition to Defendants'

Motion to Dismiss his Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6),

and related "Suggestions in Support," filed on October 27, 2023 (MTD).  ECF No. 27 (MTD by

Defendant Bailey); ECF No. 28, at 1 (joinder in same by Defendant Hudanick).

## I.  <u>INTRODUCTION</u>

Plaintiff's Complaint pleads a straightforward First Amendment compelled speech claim

against Missouri Revised Statute section 589.426(1)(3) (the "Statute").  The Statute requires

Plaintiff and all other persons required to register as a sex offender in Missouri to post

government-prescribed signs "at their residence" on Halloween.

On October 27, 2023, this Court issued a Temporary Restraining Order (TRO) enjoining

enforcement of the Statute, finding that "Plaintiff has made a clear showing that he is likely to

succeed on the merits of his claim that the sign posting requirement, a form of compelled speech,

runs afoul of the free speech guarantee of the First Amendment."  ECF No. 23, at 12.

Defendants thereafter filed an Emergency Motion to Stay the TRO in the Eighth Circuit Court of

Appeals, arguing that the narrow tailing analysis underlying the TRO was "preposterous."  Exh.

A,  at 40.  The Eighth Circuit apparently disagreed, and declined to stay the TRO.  See ECF No.

34.

As explained below, Defendants present no reason to contradict this Court's finding that

Plaintiff is likely to succeed on the merits of his compelled speech claim, and therefore presents

no basis to find that Plaintiff's Complaint fails to state a "plausible" First Amendment claim.

Nearly all of Defendants' arguments in the MTD were previously asserted in their unsuccessful

opposition to the TRO, as well as their extensive briefing in the Eighth Circuit.  See ECF No. 17,

Exh. A.  Indeed, as in their TRO briefing, Defendants continue to rely upon case law that is inapposite to, or easily distinguishable from, this case, or upon case law that simply does not reflect Defendants' characterizations of it.  Accordingly, the MTD should be denied.

## II.   PLAINTIFF'S COMPLAINT

The elements of a compelled speech claim are:  "(1) speech; (2) to which [the plaintiff] objects; that is (3) compelled by some government action."  *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015).  Plaintiff's Complaint adequately pleads these elements.

First, Plaintiff alleges that the Statute requires Plaintiff to speak.  That is, the Statute requires him and all other Registrants in the state of Missouri to display, each Halloween, "a sign at his or her residence stating 'No candy or treats at this residence.'"  ECF 1, Compl. at 5.  Plaintiff further alleges that the purpose and effect of the signs is to "to communicate to the public," that is, to speak.  ECF No. 1, at 13.

Second, Plaintiff alleges that he objects to this speech for several reasons, among them that the Statute "forc[es] Plaintiff Sanderson to 'denunciate' himself, and by forcing Plaintiff Sanderson to utter speech that is false, political in nature, and that he does not wish to make." ECF 1, at 3.

Third, Plaintiff alleges that the speech is compelled by some government action, namely the threat of criminal prosecution under the Statute.  ECF No. 1, at 3, 5.  Indeed, Plaintiff is unique among plaintiffs in First Amendment cases because he does not seek pre-enforcement review of the Statute.  Instead, Plaintiff was prosecuted in 2022 for failing to comply with the Statute's sign posting mandate, and remains under continued threat of prosecution.  ECF No. 1, at 3.

///

III.   <u>**ARGUMENT**</u>

"A Complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no facts that would entitle plaintiff to relief." *Gralike v. Cook*, 996 F.Supp. 889, 894 (W.D. Mo. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*.

Plaintiff's First Amendment compelled speech claim is "plausible" because the Eleventh Circuit has held that similar Halloween signs are "classic examples of compelled government speech" in violation of the First Amendment. *McClendon v. Long*, 22 F.4th 1330, 1337 (11th Cir. 2022). *Accord Doe v. City of Simi Valley*, 2012 WL 12507598, at *7-9 (C.D. Cal. Oct. 29, 2012) (enjoining sign-posting requirement identical to Missouri's on grounds that it "compels sex offenders to speak," and "pose[s] a danger to sex offenders, their families and their property. . . . . [I]ts function and effect is likely to approximate that of Hawthorne's Scarlet Letter . . . .").

Notably, Defendants' MTD in large part simply contests the merits of Plaintiff's compelled speech claim, rather than the adequacy of Plaintiff's pleading.  Notwithstanding their premature assertions on the merits, Defendants do not and cannot demonstrate that Plaintiff's claims are "implausible" or otherwise fail as a matter of law.

IV.   <u>**OPPOSITION TO GROUNDS FOR DISMISSAL**</u>

Plaintiff responds to the arguments in Defendants' MTD as follows:

///

///

3

**A.** **Plaintiff Has Standing Because His Prior Prosecution Under the Statute**

**Establishes a Credible Threat of Future Enforcement**

Defendants first move for dismissal under Rule 12(b)(1), alleging that Plaintiff lacks

standing because he cannot plead the necessary injury-in-fact to justify "pre-enforcement

review" of the Statute.  MTD at 3.  This argument is frivolous because Plaintiff does not seek

"pre-enforcement review" of the Statute.  That is because the Statute was enforced against

Plaintiff last year and Plaintiff remains on probation for his conviction for violating the same.

ECF No. 1, at 10-11.  Logically, a person who "had [] been prosecuted or otherwise punished for

conduct that was proscribed by the [challenged law] [] would have suffered a cognizable injury

that would be sufficient to confer standing."  *Bordell v. General Elec. Co.*, 922 F.2d 1057, 1060

(2d Cir. 1991).  Plaintiff's standing is therefore uncontestable.

Even if Plaintiff had not recently been prosecuted for violating the Statute, and had

instead relied upon the availability of "pre-enforcement review," he would still suffer injury-in-

fact.  The Eighth Circuit summaries the injury-in-fact requirement as follows:

> "[a] party facing prospective injury has standing to sue where the threatened
> injury is real, immediate, and direct."  [Citation.]  When a state or local law
> imposes compliance burdens on those it regulates or controls, and 'compliance is
> coerced by the threat of enforcement ... the controversy is both immediate and
> real.'  [Citation.]  Therefore, '[p]laintiffs have standing to challenge the facial
> validity of a regulation notwithstanding the pre-enforcement nature of a lawsuit,
> where the impact of the regulation is direct and immediate and they allege an
> actual, well-founded fear that the law will be enforced against them.'  [Citation.]

*Keller v. City of Fremont*, 719 F.3d 931, 947 (8th Cir. 2013).

Notably, the Supreme Court opinion cited by Defendant, *Susan B. Anthony List v.*

*Driehaus*, supports Plaintiff , not Defendants, by confirming that "the threat of future

enforcement" of a statute for standing purposes is "substantial" where, as here, "there is a history

of past enforcement."  *Driehaus*, 573 U.S. 149, 164 (2004).  Defendants cite to the statement in

*Driehaus* that standing exists when the plaintiff pleads "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159.  Defendants argue that Plaintiff has not satisfied this requirement because Plaintiff "never alleged in his complaint that he will refuse to post the required sign."  MTD at 3.

This assertion is incorrect for two reasons.  First, Plaintiff Sanderson did in fact plead that the sign compels him to make speech "that he does not wish to make."  ECF 1, Compl., at 3. Second, the above-quoted formulation of the injury-in-fact requirement from *Driehaus* is not applicable to this case, because the Statute at issue in this case does not "proscribe conduct," such that a plaintiff is only injured by engaging in the proscribed conduct.  Instead, the Statute at issue in this case compels speech regardless of the "course of conduct" in which Plaintiff "intends to engage."  That is because the Statute's "compliance burdens" are automatic and unavoidable, regardless of whatever action Missouri Registrants take or do not take.  Plaintiff is therefore not required to allege that he "will refuse to post a sign," because the Statute's sign posting mandate applies to Plaintiff regardless of his intent.  Further, as *Driehaus* confirms, the Supreme Court "do[es] not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."  *Driehaus*, 573 U.S. at 161-62, quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–129 (2007).

In sum, Plaintiff has alleged a "well-founded fear" that the Statute "will be enforced against [him]" because it already has been enforced against him.  Even if Plaintiff had not recently been prosecuted for violating the Statute, Plaintiff has established injury-in-fact because the Statute unavoidably requires him to post a sign regardless of whether he desires or intends to post that sign.  Accordingly, Plaintiff has adequately pleaded standing.

5

### B.  Posting Signage "At a Residence" is "Classic" Compelled Speech

Defendants next attempt to argue that forcing persons to post government-prescribed warning signs on their private residences is not speech.  This cannot be a serious argument, because it ignores voluminous precedent, and misrepresents the few cases on which it relies.  Furthermore, Defendants' argument, if adopted, would greatly restrict the First Amendment, particularly if employed as a basis to dismiss a compelled speech claim at the pleading stage.

Citing *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995), Defendants argue that the compelled speech doctrine is limited to "the context of government compulsion to disseminate a particular political or ideological message."  MTD at 5.  However, Plaintiff contends that the signs do embody the government's political and ideological message about Registrants' risk to the public on Halloween.  ECF No. 1, at 13 ("This sign effectively forces Registrants to communicate to the public the government's view that they and the other occupants of their residences are immediate threats to public safety, despite the complete absence of any evidence for this assertion.")

Even if the signs did not embody a "political or ideological message," the quoted statement from *Sindel* does not purport to be a comprehensive summary of the compelled speech doctrine, nor could it be.  That is because "cases cannot be distinguished simply because they involved compelled statements of opinion while here we deal with compelled statements of 'fact': either form of compulsion burdens protected speech."  *Riley v. Nat'l Fed'n for the Blind*, 487 U.S. 781, 797-98 (1988).  As this Court recognized, "because '[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech,' laws that compel

6

speech are normally considered 'content-based regulation[s] of speech' and therefore are subject to strict scrutiny.' TRO, ECF No. 23, at 6, quoting *Riley*, 487 U.S. at 794."[1]

Second, the case law relied upon by Defendants is inapposite because it upheld mandates requiring individuals to disclose information ***privately to the Government***.  In contrast, Plaintiff here challenges a mandate that he personally disclose information ***to the public***.  Although Defendants assert that "this alleged distinction is not important," because the two scenarios are "no different" (MTD at 6-7), the two scenarios are entirely different in an essential way because compelled disclosure to the public is precisely what the compelled speech doctrine exists to prevent.

In fact, *Sindel* itself acknowledges this difference.  Specifically, *Sindel* involved an attorney's challenge to an IRS summons that required him "to provide *the government* with information which his clients have given him voluntarily." 53 F.3d at 878.  *Sindel* held that the summons did not compel speech because the summons did "not [compel the attorney to]

---

[1] Contrary to Defendants' assertion, Plaintiff does not argue that *Sindel* was "wrongly decided."  *Sindel's* analysis of the plaintiff's compelled speech claim, which runs approximately one page, is simply not representative of the entire body of relevant case law, and does not purport to limit the compelled speech doctrine in the manner Defendants suggest.  Nor could it, given the numerous cases finding that "nonideological" speech was unlawfully compelled.  See. e.g., *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 2016-17 (D.C. Cir. 2012) *overruled on other grounds by Am. Meat Inst. v. USDA*, 760 F.3d 18, 22-23 (D.C. Cir. 2014) (Forcing cigarette makers to post graphic warning labels on packaging "cannot rationally be viewed as pure attempts to convey information to consumers.  They are unabashed attempts to evoke emotion . . . and to browbeat consumers into quitting."); *Nat'l Assn. of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015) (requiring manufacturers to disclose that their products include controversial "conflict minerals" was compelled speech in part because it was intended by the government to influence consumer choices); *Riley*, 487 U.S. at 797-98 (state could not compel charities to disclose proportion of donated funds diverted to operations in order to "dispel misperceptions" among donors about use of funds); *Stuart v. Camnitz*, 774 F.3d 238, 246 (4th Cir. 2014) (finding likelihood of success against law compelling physicians to display ultrasound images before abortions was to advance state's pro-life objectives).

*disseminate publicly* a message with which he disagrees." 53 F.3d at 878.  Thus, *Sindel* supports Plaintiff because Plaintiff is being forced to "disseminate publicly a message with which he disagrees."

Next, citing the Fifth Circuit's decision in *United States v. Arnold*, 740 F.3d 1032, 1035 (5th Cir. 2014), Defendants note that the compelled speech doctrine does not apply to sex offender registration requirements, which involve public disclosure by the government.  MTD at 5.  Defendants then suggest that the sign posting mandate is akin to registration requirements. Assuming this comparison is accurate (the Statute contains only "restrictions on conduct" related to Halloween, not registration obligations), Defendants' argument again compares two things that are different, not the same.  *Arnold* held that a requirement to report information *to the government* is not compelled speech because it is part of "essential operations *of government*." Yet, Plaintiff does not assert claims against any disclosure *by government*, or any requirement to report *to the government*.  Rather, Plaintiff asserts a narrow claim against having to personally display a government mandated sign *to the public* on his residence, which is "a classic example of compelled speech."  *McClendon*, 22 F.4th at 1337.

Finally, Defendants attempt to distinguish *McClendon v. Long* miss the heart of the "classic" First Amendment problems that sign posting mandates create.  That is, Defendants argue that its signs are, in the state's view, "minimally intrusive" and otherwise different in appearance from the sign in *McClendon*, do not state the reason for the sign, and are not "placed by government agents."  MTD at 7.  But these debatable distinctions do not render Plaintiff's pleading "implausible," because they do not obviate the constitutional problem, which is that *Plaintiff does not wish to post any sign*.  Moreover, "degree of intrusiveness" is not a factor in the compelled speech analysis (see cases cited in Footnote 1, *supra*), and it would be a

8

frightening precedent if the government could force a person to carry its preferred message on the grounds that *the government* did not consider the message to be false, "minimally intrusive," or otherwise objectionable.

Second, Defendants argue that the Halloween signs "do not bear the imprimatur of government," but this statement is false.  MTD at 7.  The verbiage of the signs is drafted by and mandated by government, and its association with the registry has been widely publicized since its enactment in 2008.  Regardless, the compelled speech doctrine is not limited to speech that "bears the imprimatur of government."  *See, e.g.*, *Riley*, 487 U.S. at 797-98 (state could not compel charities to disclose proportion of donated funds diverted to operations in order to "dispel misperceptions" among donors about use of funds).

In sum, Defendants' attempt to characterize the Statute's sign posting mandate as constitutionally innocuous are, to say the least, debatable.  At the pleading stage, Defendants cannot establish "beyond a doubt that the plaintiff can prove no facts that would entitle plaintiff to relief."  *Gralike v. Cook*, 996 F.Supp. 889, 894 (W.D. Mo. 1998).

## C.  A Sign-posting Requirement is Not a Mere Regulation of Conduct Because the Regulated "Conduct" is Precisely to Engage in Speech

Defendants next argue that the sign posting mandate only "incidentally" burdens speech because "Missouri's sign-posting requirement is part of a statutory scheme that regulates conduct: preventing 'Halloween-related contact with children.'"  MTD at 10.  This legerdemain effectively negates the First Amendment.  A requirement to post a sign does not "incidentally" burden speech – its entire purpose and effect is to "compel[] sex offenders to speak" through the sign.  *Simi Valley*, 2012 WL 12507598, at \*7.  Further, there is no authority for the proposition

that the government may compel speech by simply burying the operative mandate within a larger statutory scheme that regulates conduct.

*State v. S.F.* 483 S.W.3d 385 (Mo. 2016) does not support Defendants, and Defendants misrepresent the holding of that case. Contrary to Defendants' representation, the statute at issue in *S.F.* did not impose "an affirmative duty to warn." MTD at 10. Instead, the statute in *S.F.* criminalized "exposing another person to HIV without the knowledge and consent of that person to be exposed to HIV." 483 S.W.3d, at 387. Thus, the statute's "purpose [] is not to compel disclosure," but instead to "regulate[] conduct—specifically, conduct that exposes unknowing or nonconsenting individuals to HIV." *Ibid.* In contrast, in this case, the only "conduct" regulated by the Statute is the mandate to post a sign, which is quintessentially speech. Unlike the statute in *S.F.*, the Missouri Statute's application is not conditioned upon the Registrant first engaging in some non-expressive conduct. Accordingly, the Statute does not regulate conduct; its sole purpose and effect is to "compel disclosure."

Likewise, *Rumsfeld v. Forum for Academic and Institutional Rights*, 547 U.S. 47 (2006) does not support sign posting mandates. *Rumsfeld* addresses occasions on which speech can be *prohibited* incident to the lawful regulation of conduct. In fact, *Rumsfeld* supports Plaintiff, not Defendants, by distinguishing such prohibition from true compelled speech. Defendants are correct that, in *Rumsfeld*, "the Court remarked that Congress can prohibit employers from discriminating on the basis of race, and therefore, Congress can *prohibit* employers from displaying a sign that reads 'White Applicants Only,'" because this burden on speech is incidental to a regulation of unlawful discriminatory conduct. MTD at 10, citing *Ibid.* Yet, in the next sentence, the Supreme Court clarified that this authority

> *is simply not the same* as forcing a student to pledge allegiance, or forcing a
> Jehovah's Witness to display the motto 'Live Free or Die, and it trivializes the
> freedom protected in *Barnette* and <u>*Wooley*</u> to suggest that it is.

*Rumsfeld*, 547 U.S. at 62.  In other words, the government's authority to prevent speech that

advertises unlawful conduct "*is not the same*" as forcing a private person to speak against his or

her will.

Here, Missouri is not *preventing* Registrants from speaking, or otherwise *preventing*

speech that is incidental to a lawful regulation of conduct.  Instead, Missouri is *forcing*

Registrants to speak against their will, which the Eleventh Circuit found is akin to "forcing a

Jehovah's Witness to display the motto 'Live Free or Die.'"  *McClendon*, 22 F.4th at 1333, citing

*Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  Thus, Missouri's posting mandate unequivocally

compels speech.

**D.  <u>This Court is Correct that the Sign Posting Mandate Fails Strict Scrutiny</u>**

Finally, Plaintiff "plausibly" pleads that the Statute fails strict scrutiny.  As this Court has

already determined, the sign posting mandate "is not narrowly drawn to accomplish [the

statute's] ends," or the "least restrictive means to serve those interests."  TRO, ECF 23, at 9.

This Court reasoned:

> Defendants do not cite any evidence that the sign posting requirement furthers its
> stated interests nor do they show it is the least restrictive alternative to serve those
> interests.  See *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1100
> (8th Cir. 2013) (reversing denial of motion for preliminary injunction because
> plaintiff was likely to succeed on the merits of his First Amendment claim because
> restriction not narrowly tailored and government "presented little evidence" that the
> restriction furthered stated interests); *Whitton v. City of Gladstone*, 54 F.3d 1400,
> 1408 (8th Cir. 1995) (restriction not narrowly tailored because government "has not
> presented sufficient evidence" that the Ordinance is the least restrictive means to
> further stated interests and "no evidence that enforcement of these existing
> provisions is insufficient").

TRO, ECF 23, at 9.

Nothing has changed:  Defendants have failed to produce any evidence that its sign posting mandate is "necessary," and have failed to otherwise establish that Plaintiffs' pleading is "implausible."  Instead of providing the "evidence" required to withstand strict scrutiny, the MTD makes assertions that are simply not responsive to the strict scrutiny standard, much less the lower pleading standard governing this MTD.[2]

First, Defendants claim that "the statute gives considerable discretion to the sex offender to choose how the sign appears and is displayed."  MTD at 15.  This supposed "discretion" does not speak to the relevant issue, which is whether a sign posting mandate that categorically applies to all Registrants is narrowly tailored.  Of course, a law that applies in blanket fashion to every person in a group cannot be "narrowly tailored."  *McClendon*, 22 F.4th at 1338.

Second, Defendants note that the sign posting mandate is part of a broader regulatory statutory scheme, but does not explain how this makes the sign posting mandate narrowly tailored.  Indeed, as this Court correctly reasoned, the myriad of other restrictions on Registrants' conduct on Halloween ensures that the sign posting mandate is neither necessary nor the least restrictive means because those restrictions accomplish the same protective goal.  This reasoning is not "preposterous," as Defendants contended in the Eighth Circuit.  Exh. A at 40.  Instead, it is basic First Amendment analysis.  *Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785, 794 (8th Cir. 2015) (strict scrutiny not satisfied where other, content-neutral provisions of act advance purported purpose of speech regulation).

---

[2] It is doubtful that such evidence could be found.  Experts such as the Association for the Treatment of Sexual Abusers (ATSA) confirm that Halloween restrictions are grounded in "myth" and "do not make children safer."  See Exh. B, ATSA, *Halloween and sexual abuse prevention: The mythical "Halloween effect"* (Oct. 4, 2019), at https://blog.atsa.com/2019/10/halloween-and-sexual-abuse-prevention.html

**E.   Defendants' "History and Tradition Analysis" Merely Seeks to Avoid the Effects of Strict Scrutiny**

Defendants next argue that "our nation's history and tradition" do not prohibit sign posting mandates for Registrants on Halloween, despite acknowledging in prior filings that "courts have not yet required an analysis of history and tradition in the First Amendment analysis."  ECF 17, at 22-27.  Defendants' appeal to "history and tradition" is simply an attempt to sidestep the First Amendment analysis that governs compelled speech claims, under which the Missouri sign posting mandate fails.

**F.   A Facial Challenge is Plausibly Asserted in This First Amendment Case Because the Statute Impacts all Registrants Equally**

Finally, Defendants assert that Plaintiff's facial challenge to the Statute is insufficiently pleaded.  Specifically, Defendants assert that a facial challenge is improper because "Sanderson has not pleaded that he will refuse to post a sign, and his petition, despite bringing a facial challenge, relates only to himself and his conduct."  MTD at 18.  Defendants add that "Sanderson faces an even steeper challenge because he has brought a facial challenge under the First Amendment."  MDT at 18.

Respectfully, Defendants misstate the law:  asserting a facial challenge under the First Amendment is not "steeper" than facial challenges based upon other claims.  In fact, the opposite is true.  Despite "the usual rule is that a party may assert only a violation of its own rights,"

> "[litigants] in the First Amendment context . . . *are permitted* to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988), emphasis added.  Accordingly, this Court has held that, "where [] the complaint seeks a declaration that the statute is

13

unconstitutional, '[t]he important inquiry is whether the claim and the relief that would follow . . . reach beyond the particular circumstances' of the plaintiff." *Stock v. Gray*, 2023 WL 2601218, at *6 (W.D. Mo. March 22, 2023) (Kays, J.), quoting *Free the Nipple – Springfield Residents Promoting Equal. v. City of Springfield*, 923 F.3d 508, 509 n.2 (8th Cir. 2019) ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings or disposition in every case involving a constitutional challenge.").[3]

Here, the Court can safely "predict or assume" that the Statute will have effects upon "others not before the court" that are similar to the effect on Plaintiff Sanderson, *Virginia*, 484 U.S. at 392-92, because all Registrants are subject to the same sign posting mandate equally.  In addition, the relief requested by Plaintiff Sanderson "goes beyond" himself and "extends to all Missouri" Registrants in that all of them will benefit from a declaration that the sign posting mandate is unconstitutional.  *See Stock*, 2023 WL 2601218, at *6 (granting statewide preliminary injunction against enforcement of statute against any pharmacist in Missouri based upon single pharmacist's First Amendment claim).

Finally, to survive a motion to dismiss a facial challenge to a statute under the First Amendment, Plaintiff need only "plausibly" plead that "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Missouri Broad. Assn. v. Lacy*, 846 F.3d 295, 300 (8th Cir. 2017), quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008).  Here, it is "plausible" that the sign

---

[3] For these same reasons, Defendants are also incorrect that Plaintiff cannot "assert the rights of third parties" by obtaining a statewide injunction – an argument that has nothing to do with whether Plaintiff's Complaint plausibly pleads a First Amendment compelled speech claim. MTD at 19.

posting mandate of the Statute would fail strict scrutiny in "a substantial number of applications" because the non-speech Halloween restrictions of the Statute are the very reason that the sign posting mandate fails strict scrutiny.  That is, the non-speech restrictions of the Statute are less restrictive means that promote the Statute's purpose to protect the public, rendering the sign posting mandate unnecessary.  *Id.* at 302 (reversing FRCP 12(b)(6) dismissal where "the amended complaint included more than sufficient information to plead the challenged restrictions are more extensive than necessary").  Because every conceivable plaintiff could rely upon this argument, a facial challenge to the sign posting mandate of the Statute is "plausible," and Defendants have failed to demonstrate "beyond a doubt that the plaintiff can prove no facts that would entitle plaintiff to relief."  *Gralike*, 996 F.Supp. at 894.

## V.   <u>CONCLUSION</u>

Given this Court's previous ruling that Plaintiff is likely to prevail on the merits of his compelled speech claim, his pleading of that claim satisfies the standard of "plausible." Defendants MTD should therefore be denied.

Dated:  November 10, 2023                        /s/  *Janice M. Bellucci*
                                                       Janice Madelyn Bellucci #108911 (CA)
                                                       *Admitted Pro Hac Vice*
                                                       Law Office of Janice M. Bellucci
                                                       2110 K Street
                                                       Sacramento, CA 95816
                                                       Telephone: (805) 896-7854
                                                       Email: jmbellucci@aol.com

Dated:  November 10, 2023                        /s/  *Matthew David Fry*
                                                       Matthew David Fry #57845 (MO)
                                                       Attorney for Plaintiff
                                                       Rosenblum, Schwartz, Fry & Johnson
                                                       120 S. Central Ave., Ste. 130
                                                       St. Louis, Missouri 63105
                                                       Telephone: (314) 862-4332
                                                       Email: mfry@rsfjlaw.com