IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THOMAS L. SANDERSON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-01242-JAR |
| | ) |
| ANDREW BAILEY, et al., | ) |
| | ) |
| Defendants. | ) |

**Reply in Support of Motion to Dismiss**

**Introduction**

Sanderson has opposed Attorney General Bailey's motion to dismiss on various grounds, including an argument that Sanderson is not required to plead that he will refuse to post a sign in order to satisfy the injury-in-fact requirement; that Attorney General Bailey's motion should be denied because he has failed to provide "evidence" in support of the motion and because Attorney General Bailey's legal arguments are wrong given that the Court must accept Sanderson's factual allegations as true; and because Sanderson, not Attorney General Bailey, has correctly analyzed the case law. Sanderson is mistaken. He has failed to plead sufficient facts to establish standing. His response misapprehends the parameters of a motion to dismiss. And the factual differences between this case and the cases he relies on means this case should have a different outcome: dismissal.

1

## Argument

I. **Sanderson's admission that his complaint arises from his current probation term dooms his lawsuit.**

In his opposition to the motion to dismiss, Sanderson accuses Attorney General Bailey of making a "frivolous" argument regarding his lack of standing. Doc. 36 at 7. He now rejects any contention that he is raising a pre-enforcement challenge to § 589.426. *Id*. Instead, Sanderson appears to argue that his challenge to the statue arises from his guilty plea and his current status as a Missouri probationer. *Id*. But that dooms his suit under 42 U.S.C. § 1983.

In its order granting a temporary restraining order, this Court observed that Sanderson "cannot collaterally attack his state conviction for violating the Halloween Statute in this Court." Doc. 23 at 4. That is because any such challenges must be brought in federal habeas under 28 U.S.C. § 2254, not under § 1983. *See, e.g., Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). Of course, Sanderson would not likely succeed in a federal habeas action given that he pleaded guilty to violating the statute and given that he failed to pursue any state court remedies. *See, e.g.,* § 2254(b) (exhaustion requirement); *see also Coleman v. Thompson*, 501 U.S. 722, 733 (1991) (procedural default).

Sanderson's contention that his status as a probationer and his recent prosecution confer standing to challenge the *future* enforcement of the statute is plainly wrong. In Missouri, probation is a matter of grace. *Wartenbe v. State*, 583 S.W.3d 115, 125 (Mo. App. 2019); *accord Burns v. United States*, 287 U.S. 216, 223

(1932). If Sanderson believes that his probation status is the source of his injury, he is free to request the circuit court to revoke his probation and impose sentence. § 559.036.2. Sanderson can, likewise, request early release from probation. *Id*.

Sanderson's admission that he is not bringing a pre-enforcement challenge dooms his suit. If Sanderson is not bringing a suit to prevent future enforcement of § 589.426, then the suit and the Court's TRO should be dismissed.

Sanderson does offer an alternative argument: that he can survive a motion to dismiss because, perhaps, his suit is a pre-enforcement challenge, and if so, then there is a history of enforcement. Doc. 36 at 4. Elsewhere, he points out that the Court must accept as true his plausible factual allegations. *Id*. at 3. That too dooms his suit. In his complaint, Sanderson alleges that the Halloween Statute is *not* regularly enforced. Doc. 1 at 2. Admittedly, elsewhere he alleges that the statute is regularly covered in the news media, and he makes a threadbare allegation that the statute is enforced. Doc. 1 at 8. But threadbare allegations provide no weight in a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Sanderson's alternative argument fails for yet another reason: that he has pleaded all that is necessary to establish injury-in-fact because his complaint contains sufficient factual information. Doc. 36 at 5. Sanderson is wrong. First he argues that paragraph 7 of his complaint satisfies the injury-in-fact requirement. That paragraph, in relevant part, states:

> As more fully pleaded below, the Halloween Sign Posting Mandate of

3

> Missouri Revised Statute [S]ection 589.426 violates the First Amendment by forcing Plaintiff Sanderson to "denunciate" himself, and by forcing Plaintiff Sanderson to utter speech that is false, political in nature, and that he does not wish to make. [Citation omitted].

That paragraph is a legal conclusion—e.g. that the statute violates the First Amendment for particular reasons—not an allegation of fact. Legal conclusions do not factor into the Court's analysis under F.R.C.P. 12(b)(6). *Iqbal*, 556 U.S. at 678. Moreover, there has long been a requirement that plaintiffs must plead an intention to engage in some conduct in order to satisfy injury-in-fact. For instance, in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2004), the plaintiffs were required to plead that they would make certain statements in an upcoming election, and that those statements would violate the statute. *Id*. at 161. And in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992), the Supreme Court found the plaintiffs lacked standing because they failed to plead that they had a particular interest in observing animal species that were purportedly threatened. *Id*.

Sanderson is like the plaintiffs in *Lujan* because he, like those plaintiffs, failed to plead a particularized injury that he will suffer. Conversely, the plaintiffs in *Driehaus* pleaded that they would engage in particular conduct, and that they had a belief that a particular result would follow. *Driehaus*, 573 at 161. That is enough to confer standing. *Id*. But Sanderson did not plead that fact.

Confronted with this failure, Sanderson offers yet another argument: he was previously prosecuted for violating the statute, and he believes that he will

4

be prosecuted again. Doc. 36 at 5. But as Sanderson and this Court have observed there are multiple ways to violate the Missouri statue. Doc. 23 at 5 n.4; § 589.426. And Sanderson never pleaded any facts about the particular violation he committed. *See, e.g.,* Doc. 1 at 3 ("Hazelwood Police officers suddenly arrested [Sanderson] for a violation of Section 589.426. The State of Missouri prosecuted [Sanderson] for the same, and [Sanderson] was convicted on April 13, 2023."). In other words, Sanderson has failed to even allege that his 2022 violation was for failing to post a sign. In fact, his complaint alleges facts proving that he violated Missouri law's prohibition on exterior lighting. Doc. 1 at 10 ("on or about October 31, 2022, while his residence was decorated as it had been for the past 22 Halloweens . . . ."); Doc. 1 at 8 ("[t]he displays included numerous stationary and animated or animatronic figures and creatures, *lights*, music, for machines, and other Halloween décor.") (emphasis added). As a result, his post hoc justification for his failure to plead that he will refuse to post the required sign—and therefore that he is at risk of future prosecution *for failing to post the required sign*—is insufficient.

## II. Sanderson misapprehends the parameters of a motion to dismiss under F.R.C.P. 12(b)(6).

Throughout his suggestions in opposition, Sanderson contends that Attorney General Bailey's motion must be denied because of what Sanderson believes are deficiencies in the motion. But these perceived flaws are the result of

5

Sanderson's misapprehension of the parameters of a motion to dismiss. They are not a basis to deny the motion.

For instance, Sanderson faults Attorney General Bailey for failing to "provid[e] the 'evidence' required to withstand strict scrutiny. . . ." Doc. 36 at 12. But a defendant is *prohibited* from offering evidence in a motion to dismiss because of the standard of review. *Iqbal*, 556 U.S. at 679. Sanderson does not and cannot explain why a motion to dismiss should be denied because the defendant fails to produce evidence.

Elsewhere, Sanderson contends that the Court should deny Attorney General Bailey's legal arguments because the standard of review requires the Court to assume as true any well-pleaded allegations. *See, e.g.,* Doc. 36 at 9. As explained below, Attorney General Bailey believes that there are important distinctions between this case and the primary authorities that Sanderson relies on, including *McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022). In response to Attorney General Bailey's arguments on this point, Sanderson expresses his disagreement, and then concludes that the motion should be denied because Attorney General Bailey has not proven that Sanderson cannot prove a set of facts that entitles Sanderson to relief. Doc. 36 at 9. But Sanderson's argument about the well-pleaded allegations misses the mark when invoked against Attorney General Bailey's argument that, as a matter of law, the required sign is not compelled speech. *Compare* Doc. 36 at 8–9 *with* Doc. 27 at 7–14. Attorney General Bailey's argument there does not require the resolution of a factual dispute

6

between the parties. Indeed, assuming the facts in Sanderson's petition are true, Attorney General Bailey prevails because those facts do not rise to the level of a First Amendment violation. *See Johnson v. Precythe*, 954 F.3d 1098, 1102 (8th Cir. 2020). In *Johnson*, the Eighth Circuit affirmed the district court's decision to dismiss the petition under F.R.C.P. 12(b)(6) because the facts, as plead, did not constitute a violation of the Eighth Amendment. *Id.* at 1102. As explained in the motion to dismiss, and further explained below, the same is true here.

### III. Sanderson misunderstands compelled speech case law.

In his response to the Attorney General's motion to dismiss, Sanderson asserts several mistaken contentions of law.

First, Sanderson argues that the Supreme Court's decision in *Rumsfeld v. Forum for Academic and Institutional Rights*, 547 U.S. 47, 62 (2006), "addresses occasions on which speech can be *prohibited* incident to the lawful regulation of conduct." Resp. at 13 (emphasis in original). That argument is simply untrue.

In *Rumsfeld*, the Court considered First Amendment challenges to the Solomon Amendment, which denied federal funding to any institution of higher education that, by policy or practice, either prohibited or, in effect prevented, the military from gaining access to campuses and students in a manner equal to any other employer. *Rumsfeld*, 547 U.S. at 55. In finding that it was not likely that the Solomon Amendment violated the First Amendment, the Court did not simply draw a distinction, as Sanderson posits, between prohibiting speech and compelling speech. *Id.* at 61–62.

Indeed, the Court recognized that the Solomon amendment may require a school to send emails or post notices on behalf of the military to comply with the Solomon Amendment. *Id.* And the challenger in *Rumsfeld*, argued that these emails and notices would be compelled statements of fact. *Id.* In response, the Court stated, "This sort of recruiting assistance, however, is a far cry from the compelled speech in *Barnette* and *Wooley*. The Solomon Amendment, unlike the laws at issue in those cases, does not dictate the content of the speech at all, which is only 'compelled' if, and to the extent, the school provides such speech for other recruiters. There is nothing in this case approaching a Government-mandated pledge or motto that the school must endorse." *Id.* at 62.

To be certain, Missouri's Halloween statute does mandate a specific statement, but its content is far from a "pledge or motto." Instead, Mo. Rev. Stat. § 589.426.1(3) (2016), mandates only a short statement of fact: "No candy or treats at this residence." Like compelling a law school to send scheduling emails for the military if it does so for other employers, mandating a convicted sex offender to post a short statement of fact, designed to prevent that sex offender from making contact with unsupervised children, "is simply not the same as forcing a student to pledge allegiance, or forcing a Jehovah's Witness to display the motto 'Live Free or Die,' and it trivializes the freedom protected in *Barnette* and *Wooley* to suggest that it is." *Rumsfeld*, 547 U.S. at 62.

Second, Sanderson states he is not arguing *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995), was wrongly decided, Resp. at 10 n.1, but is instead

8

arguing that his case is different because *Sindel* "upheld mandates requiring individuals to disclose information ***privately to the Government***." *Id.* at 10 (emphasis added). Sanderson argues, with no citation support, that because he has pled that he must post a statement directed at the public, his case is different "because compelled disclosure to the public is precisely what the compelled speech doctrine exists to prevent." *Id.*

*Sindel* stated, "There is no right to refrain from speaking when 'essential operations of government may require it for the preservation of an orderly society,—as in the case of compulsion to give evidence in court.'" 53 F.3d at 878 (quoting *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 626 (1943) (Murphy, J., concurring). *Sindel* did not, as Sanderson contends, limit its holding to speech made only *to* the government. *Id.* Indeed, *Sindel* cited a concurrence in *Barnette*, as the supporting source for its pronouncement. *Id. Barnette* concerned a resolution compelling teachers and students to salute the Flag and to state a pledge of allegiance, which included a compelled patriotic creed for public consumption. *Barnette*, 319 U.S. at 625–30. At bottom, neither *Sindel* nor *Barnette* stand as support for the distinction drawn by Sanderson that there would be no review of a state's action, if that action privately extracted a compelled statement, as long as the state kept that compelled statement between state agents and the speaker.[1]

---

[1] Nor does, as Sanderson asserts, *United States v. Arnold*, 740 F.3d 1032, 1035 (5th Cir. 2014), support such a distinction. As *Arnold* recognized, the

9

The signposting requirement in Missouri's § 589.426.1(3) is constitutional because as Justice Black and Justice Douglas noted in their *Barnette* concurrence, "No well-ordered society can leave to the individuals an absolute right to make final decisions, unassailable by the State, as to everything they will or will not do. The First Amendment does not go so far." *Id.* at 643 (Black, J. and Douglas, J., concurring).

Third, Sanderson's attempts to minimize the distinctions between his pleading of a controversy in relation to Missouri's § 589.426.1(3) and the case in *McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022), demonstrate the infirmity of his petition. Sanderson argues that any sign posted under § 589.426.1(3) carries the imprimatur of government, but for the reasons explained in the Attorney General's motion, that is incorrect. Indeed, the *McClendon* court appeared to put great weight on its determination that the sheriff in *McClendon* "required the use of private property as a *stationary* billboard for his own ideological message" 22 F.4th at 1337, including assertions that the statements were "a community safety message from Butts County Sheriff Gary Long." *Id.* at 1336. In that way, Sanderson attempts to reach the result of *McClendon* while ignoring the reasoning of *McClendon*.

## Conclusion

This Court should dismiss Sanderson's petition.

---

sexual offender had no right to keep his registry information private. *Id.*

10

Respectfully submitted,

**ANDREW BAILEY**
Attorney General

/s/ *Gregory M. Goodwin*
GREGORY M. GOODWIN
Assistant Attorney General
Missouri Bar #65929

/s/ *Andrew J. Clarke*
ANDREW J. CLARKE
Assistant Attorney General
Missouri Bar #71264
P.O. Box 899
Jefferson City, MO 65102
(573) 751-7017
(573) 751-2096 Fax
gregory.goodwin@ago.mo.gov
andrew.clarke@ago.mo.gov

Attorneys for Attorney General Bailey

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, and any attachment, was electronically filed using the CM/ECF system on November 20, 2023. All counsel of record will receive service by operation of the CM/ECF system.

*/s/ Gregory M. Goodwin*
GREGORY M. GOODWIN
Assistant Attorney General