UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS L. SANDERSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:23CV1242 JAR |
| ANDREW BAILEY,<br>*in his official capacity as Attorney General*<br>*of the State of Missouri, et al.,* | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motions to Dismiss Case. ECF Nos. 27 and 28. Plaintiff has filed his response in opposition to the Motions. The Motions are fully briefed and ready for disposition. For the reasons set forth below, the Court will deny Defendants' Motions.

**Background and Facts**

On October 3, 2023, Plaintiff Thomas L. Sanderson brought this action for declaratory and injunctive relief against Defendants Andrew Bailey, Attorney General of the State of Missouri, and James Hudanick, Chief of Police of the City of Hazelwood, Missouri,[1] alleging that Missouri Revised Statute Section 589.426.1(3), which requires any person required to register as a sexual offender under Sections 589.400 to 589.425 to post a sign at his or her residence on October thirty-first of each year stating, "No candy or treats at this residence," compels him to speak in violation of the First Amendment to the United States Constitution. The Court will refer to this as the "sign posting requirement."

---

[1] The allegations against the individual defendants are brought in his respective official capacity.

On October 11, 2023, Plaintiff moved for a Temporary Restraining Order (TRO), pursuant to Federal Rule of Civil Procedure 65, to prevent Defendants from enforcing the sign posting requirement. Plaintiff requested relief not just for himself, but for all sex offenders that the sign posting requirement applies to in Missouri. Plaintiff did not challenge the other restrictions in the Halloween Statute or request the Court to determine if the Halloween Statute should be retroactively applied to him because he was convicted prior to its effective date. The Court granted Plaintiff's Motion for TRO and combined the preliminary injunction hearing with the trial on the merits, scheduled to commence on June 20, 2024.

Plaintiff's Complaint [ECF No. 1], in pertinent part, alleges the following:[2]

In 2000, Plaintiff and his family moved to the City of Hazelwood, Missouri, which is located in St. Louis County, Missouri. Shortly after moving to Hazelwood, law enforcement officers interviewed Plaintiff regarding allegations of inappropriate sexual touching made by a friend of the family, who was sixteen years old at the time. Plaintiff maintains that he denied the allegations at that time and continues to do so. In 2006, Plaintiff was convicted of an offense requiring his registration as a sex offender with the chief law enforcement official in his county of residence under Missouri law. *See* Mo. Rev. Stat. § 589.400.2

Effective August 28, 2008, the State of Missouri enacted Missouri Revised Statute Section 589.426 (the "Halloween Statute"), which imposes the following restrictions on conduct for any person required to register as a sexual offender under sections 589.400 to 589.425 on October thirty-first (Halloween) of each year:

(1) Avoid all Halloween-related contact with children;

---

[2] Unless otherwise noted, all facts in this section are alleged in Plaintiff's Amended Complaint and accepted as true for purposes of this motion only. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017).

> (2) Remain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies;
>
> (3) Post a sign at his or her residence stating, "No candy or treats at this residence"; and
>
> (4) Leave all outside residential lighting off during the evening hours after 5 p.m.

Mo. Rev. Stat. § 589.426.1.

The criminal penalty imposed for a violation of any of the Statute's provisions is a class A misdemeanor. *Id.* § 589.426.2.

Every year, Plaintiff and his family hosted a big Halloween party at their house with a bonfire and large decorative displays, such as lights, fog machines and music, that typically attracted over 300 guests. When the Halloween Statute took effect, Plaintiff contends that there was some confusion whether the statute applied to him since his conviction was prior to its effective date. At some time prior to October 31, 2008, Plaintiff alleges that he asked a registration official at the St. Louis County Police Department if the Halloween Statute applied to him. The registration official confirmed that the Statute did not apply to Plaintiff because he was convicted prior to its effective date. Once this was confirmed, Plaintiff continued to host his Halloween party, decorate his house, and participate in Halloween traditions.

In October 2012, Hazelwood Department Police Officers talked to Plaintiff at his residence about his Halloween decorations and violating the Halloween Statute. Plaintiff told the officers that he confirmed the restrictions pursuant to the Halloween Statute did not apply to him, and he continued to participate in Halloween traditions without any law enforcement resistance until October 2022.

On October 31, 2022, after receiving complaints about a Halloween party taking place at Plaintiff's residence, Hazelwood Department Police Officers informed Plaintiff that he was in

3

violation of the Halloween Statute for failing to comply with its restrictions for sex offenders. Plaintiff was later charged and pleaded guilty to violating the Halloween Statute. Plaintiff received a suspended imposition of sentence with twelve months unsupervised probation.

Defendants filed the instant motions, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), requesting the Court to dismiss Plaintiff's Complaint.

## Legal Standard

Article III Standing

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. "One element of the case-or-controversy requirement" is that Plaintiff "must establish that [he has] standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Article III standing is a threshold inquiry in every federal case that determines whether the Court has the power to decide the case. *See, e.g., United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003); *Warth v. Seldin,* 422 U.S. 490, 498 (1975).

The "irreducible constitutional minimum" of standing consists of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 332 (2016), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant[s]; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000), quoting *Lujan*, 504 U.S. at 560–561.

Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a

4

pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). This court "accepts as true the complaint's factual allegations and grants all reasonable inferences to the non-moving party." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (citations omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, Plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

**Discussion**

<u>Standing</u>

Defendants first move for dismissal under Rule 12(b)(1), alleging that Plaintiff lacks standing because Plaintiff did not allege in his Complaint that he does not intend to comply with the sign posting requirement, so he cannot plead the necessary injury-in-fact to justify pre-enforcement review of the Halloween Statute. Plaintiff argues in response that he does not seek

5

pre-enforcement review and his prior prosecution for violating the Halloween Statute is sufficient to establish standing.

To establish that he has standing to bring this lawsuit, Plaintiff must show that he suffered an "injury in fact." *See Lujan*, 504 U.S. at 560-61. "Injury-in-fact means an actual or imminent invasion of a concrete and particularized legally protected interest." *Kinder v. Geithner,* 695 F.3d 772, 776 (8th Cir. 2012). When a state or local law imposes compliance burdens on those it regulates or controls, and "compliance is coerced by the threat of enforcement ... the controversy is both immediate and real*." Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 508 (1972). There are two common ways of demonstrating an injury in fact in First Amendment cases. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). First, a plaintiff may allege "an intention to engage in a course of conduct . . . proscribed by a statute" such that the plaintiff risks prosecution or some other penalty, including the loss of a government contract. *Id.* (internal quotation marks omitted) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Second, a plaintiff may allege self-censorship. *Id*. Importantly, these methods are used in cases in which plaintiffs are challenging the constitutionality of a law *before* facing prosecution or otherwise suffering from the adverse consequences of noncompliance. *See 281 Care Comm. v. Arneson,* 638 F.3d 621, 627 (8th Cir. 2011); *Zanders v. Swanson*, 573 F.3d 591, 593–94 (8th Cir. 2009).

Plaintiff's Complaint asserts that he was prosecuted for violating the Halloween Statute, which includes the sign posting requirement, and was placed on probation for the offense. Plaintiff, a convicted sex offender, already sustained an injury because he was prosecuted for violating the Halloween Statute. Thus, Plaintiff has properly alleged an injury in fact based on being prosecuted for his non-compliance with the Halloween Statute, which also establishes the threat of future prosecution. A plaintiff who alleges a threat of prosecution that "is not imaginary

6

or wholly speculative" has standing to challenge the statute. *281 Care Comm.*, 638 F.3d at 630, quoting *Babbitt,* 442 U.S. at 302. Plaintiff clearly satisfies a threat that the Halloween Statute will be enforced against him again, absent a TRO or preliminary injunction, since there is a history of past enforcement. S*ee United Food & Commercial Workers Int'l Union v. IBP, Inc.,* 857 F.2d 422, 427 (8th Cir. 1988) (noting that past experience with a statute is relevant to standing determination). Based on all of the above reasons, the Court finds Plaintiff has standing to bring his claims.[3]

### Failure to State a Claim

*Defendant Hudanick*

Defendant Hudanick argues for dismissal of the allegations against him, alleging that Plaintiff's claims fail to allege facts that support municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In *Monell*, the United States Supreme Court held that local governing bodies "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690–91 (1978). Defendant Hudanick maintains a claim against a municipal official in his official capacity is treated as a claim against the entity itself.

In response, Plaintiff argues his claim is not alleged under *Monell* because the allegation against Defendant Hudanick is for prospective relief, seeking only to enjoin future violations of law, and is better suited to be analyzed under *Ex Parte Young*, 209 U.S. 123 (1908). It is well-

---

[3] The Court notes in its Order granting Plaintiff's TRO request, it found that Plaintiff, and other individuals similarly situated to him, were likely to suffer irreparable harm this year on Halloween absent the issuance of a TRO. Defendants did not challenge standing in their opposition to Plaintiff's TRO request.

7

settled that the Eleventh Amendment establishes a general prohibition of suits in federal court by a citizen of a state against his state or an officer or agency of that state. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). However, there are exceptions to this rule. Relevant here, a suit against a state official may go forward in the limited circumstances identified by the Supreme Court in *Ex Parte Young*. "In *Ex Parte Young*, the Supreme Court recognized [Eleventh Amendment] sovereign immunity does not bar 'certain suits seeking declaratory and injunctive relief against state officers in their individual capacities' based on ongoing violations of federal law." *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131 (8th Cir. 2019) (internal citation omitted) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 269 (1997); *see also 281 Care Comm.*, 638 F.3d at 632. "The *Ex parte Young* doctrine rests on the premise 'that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.' " *Kodiak Oil*, 932 F.3d at 1131 (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)). Whether one is a "state official" depends on whether, in relation to the challenged statute, the person represents the state. *McMillian v. Monroe County*, 520 U.S. 781, 785–86 (1997); *see also Evans v. City of Helena-West Helena*, 912 F.3d 1145, 1146–47 (8th Cir. 2019) (concluding that "the complaint states at least a plausible claim that the [court] clerk was a city official at the time of the alleged wrongdoing"). "In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Id.* (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (alteration in original) (internal quotation omitted)). Here, there is no dispute that the relief Plaintiff seeks is prospective. The only question is whether Plaintiff alleges that Defendant Hudanick is, himself, engaged in an ongoing violation of federal law.

8

Plaintiff argues that Defendant Hudanick is engaged in an ongoing violation of federal law by virtue of the City of Hazelwood's participation in the enforcement mechanism of the Halloween Statute. To be amenable for suit challenging a particular statute, the state officer must have "some connection with the enforcement of the act." *Reprod. Health Servs. v. Nixon*, 428 F.3d 1139, 1145–46 (8th Cir. 2005). The Court turns to Plaintiff's Complaint, which alleges that Defendant Hudanick, sued in his official capacity, "is the Chief of Police of the city of Hazelwood, Missouri, and in that capacity is responsible for the enforcement against Plaintiff Sanderson of the unlawful provision" of the Halloween Statute. ECF No. 1 at ¶ 14. Plaintiff's Complaint further alleges that on October 31, 2022, at least ten City of Hazelwood Police Officers entered his property and told Plaintiff that he violated the Halloween Statute, which he was later prosecuted for and convicted of violating. *Id.* at ¶¶ 28, 29. Defendant Hudanick also joined Defendant Bailey's arguments in opposition to Plaintiff's TRO, arguing in support of the validity and continued enforcement of the Halloween Statute. Here, Plaintiff has demonstrated a sufficient connection between Defendant Hudanick and his enforcement of the Halloween Statute to satisfy this standard for purposes of this motion.

*Compelled Speech*

Defendants both argue that Plaintiff failed to state a claim because the Halloween Statute's sign posting requirement is not compelled speech since it is not related to a political or ideological message, is required to preserve an orderly society, and is speech incidental to conduct of being a sex offender. Plaintiff contends that the sign posting requirement compels him to speak a viewpoint in written words directed to the public that he does not adhere to in violation of the First Amendment, which properly alleges a claim for a compelled speech violation.

9

First Amendment protection "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard,* 430 U.S. 705, 714 (1977); *see also, Hurley v. Irish–American Gay, Lesbian, & Bisexual Grp.,* 515 U.S. 557, 573 (1995) ("[O]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide what not to say") (internal quotation marks omitted). "The right to speak and the right to refrain from speaking are complementary components of the broader concept of individual freedom of mind." *Wooley*, 430 U.S. at 714 (internal quotation marks omitted); *see also, W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."). The compelled speech doctrine applies to ideological speech and purely factual, non-commercial speech. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 797–98 (1988); *Nat'l Inst. of Family and Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372–73 (2018). To establish a compelled speech claim, Plaintiff must demonstrate there was speech to which he objected that was compelled by some governmental action. *Norgren v. Minnesota Dep't of Hum. Servs.,* 96 F.4th 1048, 1057 (8th Cir. 2024) (citing *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015).

Here, Plaintiff alleges in his Complaint that:

- The Halloween Statute's sign posting requirement stating "No candy or treats at this residence" is a provision of Missouri state law mandating convicted sex offenders, like himself, to communicate the Government's viewpoint to the public, in violation of the First Amendment. ECF No.1 at ¶¶ 1, 7, 36;

- The Halloween Statute "invites danger to himself, his family, and his property," and requires Plaintiff to "denunciate himself" and "utter speech that is false, political in nature, and that he does not wish to make." *Id.* at ¶ 7;

- The Halloween Statute requires Plaintiff and others similarly situated "to engage in speech with which they disagree, speech on a politically incendiary topic, speech that is false, speech that they do not wish to make…" *Id.* at ¶ 36;

- Failure to comply with the Halloween Statute is a class A misdemeanor in the State of Missouri. The City of Hazelwood is located in Missouri. *Id*. at ¶¶ 12, 29;

- On November 3, 2022, "Hazelwood Police officers suddenly arrested Plaintiff for a violation of" the Halloween Statute. *Id.* at ¶ 6;

- Plaintiff, a resident of the City of Hazelwood, was prosecuted in 2022 for failing to comply with the Halloween Statute and was convicted on April 13, 2023 and sentenced to 12 months unsupervised probation. *Id*. at ¶¶ 6, 12, 29; and

- Defendant Hudanick, sued in his official capacity, "is the Chief of Police of the city of Hazelwood, Missouri, and in that capacity is responsible for the enforcement against Plaintiff Sanderson of the unlawful provision" of the Halloween Statute. *Id.* at ¶ 14.

Presuming that these facts are true and granting reasonable inferences in Plaintiff's favor, his allegations for his compelled speech claims against Defendants are sufficiently pled at this stage of the proceeding.

*Remaining Arguments*

Defendants next argue that Plaintiff's claims fail because the Halloween Statute's sign posting requirement is not related to a political or ideological message, is required to preserve an orderly society, and is speech incidental to conduct of being a sex offender. Defendants' remaining arguments are improper for purposes of a Rule 12(b)(6) motion as they would require the Court to address the merits. Further, the Court notes that Defendants essentially raised the same arguments here that they did in their opposition to Plaintiff's Motion for a TRO. The Court already addressed these arguments and found Plaintiff was likely to succeed on the merits of his compelled speech challenge in its Order granting Plaintiff's TRO request. The Court also found that the Halloween Statute fails strict scrutiny because it is not narrowly tailored to achieve a compelling government interest, and there are other highly effective alternatives to achieve

11

Defendants' interest in protecting children from sex offenders on Halloween. The Court notes that the standard for granting a TRO is higher than a motion to dismiss. Here, the purpose is to test the sufficiency of Plaintiff's Complaint to make sure it apprises Defendants of the claims that he is bringing against them, not to test the merits as Defendants attempt to do here.

<u>Facial Challenge</u>

Lastly, Defendants argue that Plaintiff's facial challenge to the Halloween Statute is insufficient because Plaintiff has not alleged that he will refuse to post a sign and his claims relates only himself and his conduct.

As the Eighth Circuit has held in the context of another First Amendment case, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings or disposition in every case involving a constitutional challenge." *Free the Nipple – Springfield Residents Promoting Equal. v. City of Springfield*, 923 F.3d 508, 509 n.2 (8th Cir. 2019) (*quoting Citizens United v. FEC*, 558 U.S. 310, 331 (2010)). Where, as here, Plaintiff's Complaint seeks a declaration that a section of the Halloween statute is unconstitutional, "[t]he important inquiry is whether 'the claim and the relief that would follow ... reach beyond the particular circumstances' " of the plaintiff. *Id.* (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)). In this case, it is plain that the claim and relief sought by Plaintiff goes beyond him and extends to other individuals similarly situated to him, so the challenge raised by the Complaint properly alleges a facial challenge. Even if it were not a facial challenge, while "the usual rule is that a party may assert only a violation of its own rights ... in the First Amendment context, litigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Virginia v. Am.*

*Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988) (cleaned up) (allowing two Virginia booksellers to raise the First Amendment claims of Virginia bookbuyers). The exception applies to this case as well. Based on the allegations asserted in Plaintiff's Complaint, the Court can reasonably infer that the Halloween Statute may cause a compelled speech violation to other registered sex offenders in Missouri who are not before the Court because they are subject to the same sign posting requirement as Plaintiff.

### Conclusion

For the reasons stated above, Defendants' Motions to Dismiss Case will be denied. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss Case [ECF Nos. 27 and 28] are **DENIED**.

**IT IS FURTHER ORDERED** that the combined preliminary injunction hearing and trial on the merits is set to commence on **June 20, 2024, at 9:00 A.M. in Courtroom 12N.**

Dated this 14th day of June, 2024.

                                                         _____
                                                         **JOHN A. ROSS**
                                                         **UNITED STATES DISTRICT JUDGE**