# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MISSOURI

# EASTERN DIVISION

|  |  |  |
|---|---|---|
| THOMAS L. SANDERSON,<br>an individual, | ) | Civil Action: |
| | ) | |
| | ) | Case No.  4:23-cv-01242-JAR |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW BAILEY, in his official | ) | |
| capacity as Attorney General of the State | ) | |
| of Missouri; and JAMES HUDANICK, | ) | |
| in his official capacity as Chief of Police | ) | |
| of the city of Hazelwood, Missouri | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF THOMAS SANDERSON'S POST-TRIAL BRIEF

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PLAINTIFF'S POST-TRIAL  BRIEF ................................................................. 1

I.    RELEVANT PROCEDURAL HISTORY AND OUTLINE OF BRIEF ...................... 1

      A.    PLAINTIFF'S CLAIMS AND REQUESTED REMEDIES .......................................... 1

      B.    PRETRIAL AND TRIAL PROCEEDINGS ............................................................... 2

II.   PLAINTIFF'S RESPONSES TO THE COURT'S QUESTIONS
      AT THE CLOSE OF EVIDENCE AT TRIAL .................................................. 2

      A.    COURT'S QUESTION TO PLAINTIFF:  LIABILITY OF CHIEF JAMES HUDANICK
            UNDER SECTION 1983 ...................................................................................... 3

            1.    Chief Hudanick is Liable for His Office's Discretionary
                  Decision to Enforce the Statute ........................................................... 4

                  a.    *The Hazelwood Police Chief has Discretion Over the Statute's
                        Enforcement and the Resulting Deprivation of Constitutional Rights* ..... 5

                  b.    *The Evidence at Trial Confirmed that Plaintiff was Arrested and
                        Prosecuted for Noncompliance with the Sign Posting Mandate* ............ 7

            2.    Plaintiff's Declaratory Relief Claim is Properly Asserted Against
                  Chief Hudanick ................................................................................ 8

      B.    RESPONSE TO COURT'S QUESTION:  HOW DOES THE SIGN POSTING MANDATE
            ADVANCE A COMPELLING STATE INTEREST IN PROTECTING CHILDREN? ..................... 8

            1.    The Sign Posting Mandate is Not the Least Restrictive Means
                  of Protecting Children Because the Remaining Provisions
                  of the Statute Accomplish That Objective ........................................... 9

                  a.    *Missouri's Law Enforcement Witnesses Admit that the
                        Signs are Unnecessary Because they are Redundant* ........................... 10

                  b.    *Missouri's Expert Witnesses Confirmed that the Remaining
                        Provisions of the Statute Would Prevent Grooming Behavior* ............. 10

            2.    "Assisting Law Enforcement" is Not a Compelling State Interest
                  in this Context, and Missouri's Law Enforcement Witnesses
                  Confirmed that the Signs Do Not, in Fact, Assist Them ................................. 11

i

C.    RESPONSE TO COURT'S QUESTION: IS THE SIGN POSTING
MANDATE COMPELLED SPEECH? ............................................................. 12

III.    PLAINTIFF'S ARGUMENT CONCERNING ADDITIONAL
ISSUES RAISED AT TRIAL ........................................................................... 14

A.    PLAINTIFF HAS SATISFIED THE ELEMENTS OF HIS COMPELLED SPEECH CLAIM ............ 14

B.    THE SIGN POSTING MANDATE IS NOT THE LEAST RESTRICTIVE MEANS
OF SATISFYING ANY STATE INTEREST FOR NUMEROUS REASONS .............................. 15

1.    Even if the Signs Prevent Grooming Behavior, they Regulate
Non-grooming Conduct and are Thus Fatally Overbroad ............................. 15

2.    The Lax or Inconsistent Enforcement of the Sign Posting
Mandate Across the State Confirms it is Unnecessary ................................. 16

3.    The Signs are Unnecessary Because the Statute Permits the
Signs to be of De Minimis or Zero Effectiveness ......................................... 17

C.    THE CONFLICTING EVIDENCE REGARDING RE-OFFENSE RATES DOES
NOT SATISFY STRICT SCRUTINY ...................................................................... 17

1.    Missouri's Own Witnesses and Documents Confirm that
"Sex Offenders Have Relatively Low Recidivism" ....................................... 18

2.    Missouri Cannot Satisfy Strict Scrutiny by Reference to Re-offense
Rates Because there is No Evidence that Re-offense Occurs on
Halloween, and the Statute Does Not Apply to the Likeliest Abusers ........... 19

IV.    PLAINTIFF IS ENTITLED TO THE REMEDIES PLEADED
IN THE COMPLAINT ................................................................................... 20

A.    DECLARATORY RELIEF IS UNCONTESTED .................................................... 20

B.    A STATEWIDE INJUNCTION IS PROPER BECAUSE THE SIGN POSTING
MANDATE IS FACIALLY INVALID ACROSS THE STATE .................................. 20

1.    The Authorities Cited in Missouri's Pretrial Briefing are Inapposite ............. 21

2.    Labrador v. Poe is Not a Reasoned U.S. Supreme Court Decision,
Nor Does it Address Injunctions in the First Amendment Context ............... 23

V.    CONCLUSION ............................................................................................. 24

# **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*281 Care Committee v. Arneson*, 638 F.3d 621 (8th Cir. 2011) ..................................................... 8

*Balogh v. Lombardi*, 816 F.3d 536 (8th Cir. 2016) ....................................................................... 21

*Clement v. California Department of Corrections*, 364 F.3d 1148 (9th Cir. 2004) ..................... 22

*Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005) ......................................................................... 5

*Cressman v. Thompson*, 798 F.3d 938 (10th Cir. 2015) ............................................................... 14

*Dakota Rural Action v. Noem*, No. Civ 19-5026, 2019 WL 4546908 (D. S.D. Sept. 18, 2019) .... 4

*Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015) ........................ 21

*Doe v. City of Simi Valley*, 2012 WL 12507598, (C.D. Cal. Oct. 29, 2012) ................................ 14

*Edenfield v. Fane*, 507 U.S. 761 (1993) ....................................................................................... 17

*Ex Parte Young*, 209 U.S. 123 (1908) ............................................................................................ 8

*Free Speech Coalition, Inc. v. Rokita*, __ F. Supp. 4th __,

   2024 WL 322819 (S.D. Ind. June 28, 2024) ...................................................................... 21, 24

*Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525 (8th Cir. 2005) .................................... 8

*Labrador v. Poe*, 144 S. Ct. 921 (2024) .................................................................................. 23, 24

*McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022) .................................................................. 13

*McCullen v. Coakley*, 573 U.S. 464 (2014) ................................................................................... 9

*McGuire v. Marshall*, No. 2:19-CV-174-WKW,

   2024 WL 2401833 (M.D. Ala. May 23, 2024) ...................................................................... 11

*Minn. RFL Republican Farm Labor Caucus v. Freeman*,

   2020 WL 1333154 (D. Minn. March 23, 2020) ...................................................................... 8

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) .................................................... 6

**Table of Authorities, Cont'd.**

*N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927 (W.D. Wis. 2009) ............... 4

*Packingham v. North Carolina*, 582 U.S. 98 (2017) ................... 13

*Pembaur v. Cincinnati*, 475 U.S. 469 (1986) ......................... 4, 5

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019) ................. 20, 21

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) ................ 15

*Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785 (8th Cir. 2015) ........ 9

*United States v. Arnold*, 740 F.3d 1032 (5th Cir. 2014) ................... 13

*Vigue v. Shoar*, 494 F. Supp. 3d 1204 (M.D. Fla 2020) ................... 5

**Statutes**

42 U.S.C. § 1983 ........................................................ 3

Mo. Rev. Stat. § 589.426(1)(3) ......................................... 1

///

///

///

///

///

///

///

///

///

<u>**PLAINTIFF'S POST-TRIAL  BRIEF**</u>

Plaintiff Thomas L. Sanderson respectfully submits this post-trial brief as directed in the Court's order dated June 21, 2024.  ECF No. 58.

**I.    <u>RELEVANT PROCEDURAL HISTORY AND OUTLINE OF BRIEF</u>**

**A.  <u>Plaintiff's Claims and Requested Remedies</u>**

On October 3, 2023, Plaintiff filed a Complaint (ECF No. 1) asserting a First Amendment challenge against the provision of Missouri Revised Statute section 589.426 (hereinafter, the "**Statute**") that requires all persons listed on the sex offender registry to, on October 31 of each year, "Post a sign at his or her residence stating, 'No candy or treats at this residence'."  Mo. Rev. Stat. § 589.426(1)(3).  (Hereinafter, the "**Sign Posting Mandate**.")

The defendants are the Attorney General of Missouri, Andrew Bailey, and the police chief of the City of Hazelwood, Missouri, James Hudanick (collectively, "**Missouri**").  The evidence at trial established that Chief Hudanick's agency enforced the Sign Posting Mandate against Plaintiff in 2022.  (Pltf. Exh. 1 at 0005, 0011, 0013-0014; Pltf. Exh. 2 at ¶2.)  Chief Hudanick also confirmed his intention to continue enforcing all provisions of the Statute in the future, including the Sign Posting Mandate.  In fact, Chief Hudanick personally wrote a letter to that effect, which was sent to all registrants in the City of Hazelwood prior to Halloween 2023. (Plft. Exh. 11 [Letter from Chief Hudanick].)

Plaintiff's Complaint asserts his First Amendment claim under both 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201.  Plaintiff seeks prospective relief only in the form of:  (1) a judgment declaring that the Sign Posting Mandate violates the First Amendment to the U.S. Constitution; and (2) a permanent statewide injunction barring future enforcement of the Sign Posting Mandate.

## B.  **Pretrial and Trial Proceedings**

On October 27, 2023, this Court issued a Temporary Restraining Order (TRO) enjoining enforcement of the Sign Posting Mandate statewide, finding that "Plaintiff has made a clear showing that he is likely to succeed on the merits of his claim that the sign posting requirement, a form of compelled speech, runs afoul of the free speech guarantee of the First Amendment." ECF No. 23, at 12.  The Eighth Circuit denied Missouri's emergency motion to stay the TRO prior to Halloween 2023.  ECF No. 34.  The TRO remains in place.

On June 20, 2024, this Court held a combined hearing on a preliminary injunction and bench trial on the merits.  ECF No. 55 (trial minutes).  The Court directed the parties to file post-trial briefs within 30 days (ECF No. 58), in part to address three specific questions posed by the Court at the close of trial.  In the following pages, Plaintiff will first address the question asked of him by the Court regarding the propriety of asserting a Section 1983 claim against Chief Hudanick.  Plaintiff will then address the Court's remaining two questions, which were posed to Missouri.  Finally, Plaintiff will address other relevant issues raised at trial, including the propriety of a permanent statewide injunction should the Court find for Plaintiff on the merits.

## II.  **PLAINTIFF'S RESPONSES TO THE COURT'S QUESTIONS AT THE CLOSE OF EVIDENCE AT TRIAL**

At the close of evidence at trial, the Court directed three questions to the parties, which are addressed in turn below:

**A)**     **To Plaintiff**: *Whether Chief Hudanick, as a municipal law enforcement officer, can be held liable for violating the Constitution under 42 U.S.C. § 1983 when he merely enforces an unconstitutional state law.*

2

**B)** **To Missouri**: *If the Court finds that the Sign Posting Mandate serves a compelling state interest in protecting children, how does the Sign Posting Mandate advance that interest as required by strict scrutiny, given that:  (i) the other provisions of the Statute prevent Halloween-related contact between registrants and children; and (ii) the signs required by the Statute can be miniscule, or posted in any conceivable location "at" the residence, including inside the residence?*

**C)** **To Missouri**: *Whether the state agrees that the signs required by the Statute are compelled speech.*

### A.  Court's Question to Plaintiff:  Liability of Chief James Hudanick Under Section 1983

In his post-trial brief, Chief Hudanick argues: (1) "There has been no claim pleaded or evidence presented at trial against Hazelwood Police Chief James Hudanick that any of his conduct or policies were wrongful or unconstitutional as applied," and (2) "There was no evidence of specific enforcement of the sign posting requirement as being the catalyst to Plaintiff's arrest."  ECF No. 61 at 1.  As discussed below, neither of these assertions is accurate.

As discussed below, Chief Hudanick is liable under 42 U.S.C. § 1983 ("**Section 1983**") because enforcement of the Statute in Hazelwood and the resulting constitutional violation is, in practice, a function of Chief Hudanick's discretionary decisions and not the mechanical enforcement of Missouri state law.  Furthermore, the uncontradicted documentary evidence confirms that Plaintiff was arrested, referred for prosecution, prosecuted, and convicted for noncompliance with the Sign Posting Mandate.  (See Pltf. Exh. 1 at Hudanick 0005, 0013-0014 [arrest and referral]; Pltf. Exh. 2 at 1 [conviction].)  In the alternative, Chief Hudanick remains a properly named defendant in Plaintiff's separate cause of action for declaratory relief.

3

1. ***Chief Hudanick is Liable for His Office's Discretionary Decision to Enforce the Statute***

Plaintiff acknowledges the uncertainty regarding whether, as a matter of law, local law enforcement can be held liable under Section 1983 merely for enforcing an unconstitutional state law, given that "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986).

Notably, "the Eighth Circuit has not decided under what circumstances a municipality could be liable for enforcing state law." *Dakota Rural Action v. Noem*, No. Civ 19-5026, 2019 WL 4546908, at *4 (D. S.D. Sept. 18, 2019), quoting *Slaven v. Engstrom*, 710 F.3d 772, 781 n.4 (8th Cir. 2013) ("Whether, and if so when, a municipality may be liable under § 1983 for its enforcement of state law has been the subject of extensive debate in the circuits. [Citation]. We need not decide whether a municipality may ever be liable for enforcing state law because, here, there is no evidence or even allegation that Hennepin Court [sic] was enforcing state law[.]").

In cases where municipal liability under Section 1983 is recognized, the determining factor is "whether the municipality enforcing a state law has enough discretion in implementation to make the municipality 'responsible' for any constitutional violation that occurred." *N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 937 (W.D. Wis. 2009). For example, in *Cooper v. Dillon*, the Eleventh Circuit held that a police chief that oversaw the enforcement of an unconstitutional state law was liable because he "was the ultimate policymaker for police procedure in the City of Key West," and his "decision to enforce [the state law] constituted a deprivation of constitutional rights sufficient for § 1983 liability."

4

*Cooper v. Dillon*, 403 F.3d 1208, 1221-22 (11th Cir. 2005). This liability attached even though the police chief "oversaw enforcement of the state statute on only one occasion." *Vigue v. Shoar*, 494 F. Supp. 3d 1204, 1220-1222 (M.D. Fla 2020). See also *ibid*. (local sheriff liable under Section 1983 where he "made the deliberate decision . . . to enforce the statutes").

a. <u>The Hazelwood Police Chief has Discretion Over the Statute's<br>Enforcement and the Resulting Deprivation of Constitutional Rights</u>

Similarly, in this matter, the evidence confirms that successive Chiefs of Police in the City of Hazelwood, including Chief Hudanick, have exercised discretionary authority to enforce, or not to enforce, various provisions of the Statute. The exercise of this discretion constitutes "a deliberate choice to follow a course of action," rendering the Chief of Police "responsible" for the constitutional violation wrought by the Statute's enforcement in the City of Hazelwood. *Pembaur*, 475 U.S. at 483-84.

Specifically, Chief Hudanick testified that his predecessor "was not so keen on doing this [enforcing the Statute]," preferring to leave its enforcement to "a special unit of the St. Louis County Police Department." However, when Chief Hudanick assumed leadership of the Department in 2021 or 2022, he directed his officers to enforce the Statute, albeit in a circumscribed fashion that "focused on the kids and the handing out of candy." Chief Hudanick testified that he gave no specific instruction regarding enforcement of the Sign Posting Mandate at that time, apparently deprioritizing it. At trial, Chief Hudanick confirmed that Plaintiff is the only person ever cited by the Hazelwood Police Department or prosecuted for violating the Statute, indicating that the Hazelwood Police Department has declined to enforce the Statute in the vast majority of cases. (See Pltf. Exh. 10, Hudanick Rog. Resp. Nos. 1, 3, 5-6, 7, 9-10.)

5

Notably, the Hazelwood Police Department's decision to enforce the Statute against Plaintiff – including the Sign Posting Mandate – came after a "tip" from the community.  (Pltf. Exh. 10, Hudanick Rog. Resp. No. 12.)  Absent that tip, it is reasonable to infer that Chief Hudanick's agency would have continued its previous, longstanding practice of overlooking Plaintiff's Halloween display, as well as the absence of the required sign at his residence.

In 2023, after the prosecution of Plaintiff, Chief Hudanick testified that he again changed the Department's policy to ensure enforcement of the entire Statute going forward, including the Sign Posting Mandate.  Chief Hudanick testified that he personally wrote the October 2023 letter that was sent to every registrant in the city advising them of the Statute and of the Hazelwood Police Department's intention to enforce all of its provisions.  (Pltf. Exh. 11.)  Thus, in practice, enforcement of the Statute in the City of Hazelwood is not simply a mechanical application of Missouri state law.  Rather, it is a discretionary decision by the Police Chief that results in the constitutional violation attendant to the Statute's enforcement, which is sufficient to support liability under Section 1983.[1]

---

[1] Notably, Chief Hudanick has never sought dismissal on the grounds that he cannot be liable under Section 1983.  Instead, Chief Hudanick's Motion to Dismiss under F.R.C.P. 12(b)(6) argued that Plaintiff's claims fail to allege facts that support unspecified "municipal liability" under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  ECF No. 28.  Plaintiff opposed dismissal by noting that he did not assert any claim under *Monell*, because *Monell* is limited to "retrospective" relief.  Instead, Plaintiff seeks "prospective" relief under *Ex Parte Young*.  Recognizing this distinction, the Court denied the MTD.  ECF No. 54 at 7-9.  Curiously, at trial, Chief Hudanick moved for Judgment on the Merits under FRCP 52(c) on the grounds that his presence in the case is "superfluous" as his department "rarely enforced" the Statute in the past.  As argued above, however, this discretion is precisely what makes Chief Hudanick's office amenable to suit under Section 1983.

6

b.  <u>The Evidence at Trial Confirmed that Plaintiff was Arrested and</u>

<u>Prosecuted for Noncompliance with the Sign Posting Mandate</u>

Chief Hudanick's alternatively argues that Plaintiff presented "no evidence of specific

enforcement of the sign posting requirement as being the catalyst to Plaintiff's arrest" in 2022

(ECF No. 61 at 1), but that is plainly untrue.  Chief Hudanick never testified that his Department

overlooked Plaintiff's noncompliance with the Sign Posting Mandate when arresting him.  In

fact, the record confirms that Plaintiff was arrested and prosecuted for violating the Sign Posting

Mandate along with the other provisions of the Statute.  The police reports incident to Plaintiff's

arrest twice mention his noncompliance with the Sign Posting Mandate.  (See Pltf. Exh. 1 at

Hudanick 0005 and Hudanick 0013-0017.)  The later reference confirms that Plaintiff was

referred for prosecution on this basis:

> I would like to add that ***I observed no sign*** posted in Sanderson's yard
> informing trick-or-treaters that there is no candy or treats at this residence.  Per
> Missouri State Statu[t]e 589.426 Halloween, restrictions on conduct - registered
> sex offenders are required to have a sign posted in their front yard alerting
> individuals to the statement of "No candy or treats at this residence."
>
> . . .
>
> ***Warrant Application for Halloween, restrictions on conduct (M) to be
> made in the Office of The Saint Louis County Prosecuting Attorney at a later
> time***.

(Pltf. Exh. 1 at Hudanick 0013-0014, emphasis added.)  Plaintiff's plea and resulting Judgment

likewise confirm that his conviction is for "fail to comply w/ Halloween [*sic*], a class A

misdemeanor," a reference to the entire Statute.  (Pltf. Exh. 2 at 1.)  Thus, the evidence confirms,

and no evidence contradicts, that Plaintiff was arrested by Chief Hudanick's agency under the

Sign Posting Mandate.

///

///

7

## 2.  *Plaintiff's Declaratory Relief Claim is Properly Asserted Against Chief Hudanick*

Finally, even if the Hazelwood Police Chief cannot be held liable under Section 1983, he remains a proper defendant in Plaintiff's separate action for declaratory and injunctive relief per the rule in *Ex Parte Young*, 209 U.S. 123 (1908).  "*The Ex Parte Young* doctrine describes an exception to Eleventh Amendment immunity for a state official where the relief sought is prospective and not compensatory."  *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005).  As discussed in the briefing on Defendant Hudanick's MTD, Chief Hudanick is considered a "state official" because he has "some connection with the enforcement of the [challenged] act."  *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). *See also Minn. RFL Republican Farm Labor Caucus v. Freeman*, 2020 WL 1333154, at *3 (D. Minn. March 23, 2020) ("Four Minnesota county attorneys" who had "authority to prosecute violations of the challenged [state] statute" were "state officials" and thus subject to "prospective injunctive relief" under *Ex Parte Young*.).  Here, it is uncontested that Plaintiff seeks only prospective declaratory and injunctive relief, not compensatory relief.  Accordingly, Chief Hudanick is a proper defendant in this action.

## B.  Response to Court's Question:  How Does the Sign Posting Mandate Advance a Compelling State Interest in Protecting Children?

To survive strict scrutiny, Defendant must prove that the Sign Posting Mandate is *necessary* to achieve a compelling state interest, and that the Sign Posting Mandate is the least restrictive means of serving that interest.  TRO, ECF No. 23 at 8 (citing cases).  At trial, the Court inquired how the Sign Posting Mandate could be necessary to serve a compelling state interest in protecting children, given that:  (i) the remaining provisions of the Statute prevent

registrants' Halloween-related contact with children; and (ii) the signs required by the Statute can be miniscule, or posted in any conceivable location "at" the residence, including inside the residence?

1.  ***The Sign Posting Mandate is Not the Least Restrictive Means of Protecting Children Because the Remaining Provisions of the Statute Accomplish That Objective***

Throughout this case, the parties have assumed that the compelling state interest served by the Sign Posting Mandate is the protection of children. Yet, the Sign Posting Mandate cannot be necessary to achieve that interest because, as this Court's TRO explains,

> the other restrictions mandated in the Halloween Statute [*i.e.*, prohibiting all Halloween-related contact with children, requiring registrants to remain indoors, and prohibiting exterior lighting] serve to substantially further the aims of Defendants' stated interests. . . . [T]here are other highly effective alternatives to achieve Defendants' interest in protecting children from sex offenders on Halloween.

TRO, ECF No. 23 at 10-11. This Court's ruling is consistent with similar cases applying strict scrutiny in the First Amendment context. *See, e.g.*, *McCullen v. Coakley*, 573 U.S. 464, 478 (2014) (Massachusetts law creating abortion clinic "buffer zones" not narrowly tailored because the challenged law had a separate provision already prohibiting much of the conduct the state's asserted interest sought to address, as did other "generic criminal statutes"); *Survivors Network of Those Abused by Priests, Inc. v. Joyce*, 779 F.3d 785, 794 (8th Cir. 2015) (provision of act restricting speech for purpose of protecting houses of worship failed strict scrutiny "since a different section of the Act criminalizes obstructing the entrance to a house of worship").

///

///

///

9

a.    <u>Missouri's Law Enforcement Witnesses Admit that the Signs are Unnecessary Because they are Redundant</u>

At trial, Missouri's witnesses effectively admitted that the Halloween signs are not necessary to protect the public because they are redundant to the rest of the Statute's protective measures.  Sergeant Jason Heffernan initially claimed that the signs are "helpful to law enforcement" to ensure compliance with the rest of the Statute, but later conceded that the Statute "has failed us because it doesn't define the size of the sign."  Seargent Heffernan agreed that the signs "could be the size of a postage stamp," or even "displayed indoors."  Similarly, Capt. Danielle Heil opined that signs are "just another added layer of protection for kids."  In other words: a layer on top of the other provisions of the Statute.

b.    <u>Missouri's Expert Witnesses Confirmed that the Remaining Provisions of the Statute Would Prevent Grooming Behavior</u>

Defendant's expert witness, Paul Simpson, Ed.D., confirmed that the central motivation for the Statute (the purported risk to children from registrants on Halloween) is a "myth."  Dr. Simpson then offered an alternative theory that the signs can help prevent "grooming behavior."  Yet, critically, Dr. Simpson agreed that "even if grooming is a concern on Halloween, a registrant's compliance with the provisions of the Missouri statute other than the Sign Posting Mandate would prevent that registrant from initiating grooming behavior at their residence on Halloween."  Dr. Simpson also agreed that his "theory that the signs may deter grooming behavior is premised on the assumption that the registrant would violate the rest of the Missouri statute."  In fact, Dr. Simpson conceded that "even if grooming is a concern on Halloween, a registrant's compliance with the provisions of the Missouri statute other than the sign-posting

mandate would prevent that registrant from initiating grooming behavior at their residence on Halloween."

Finally, Dr. Simpson admitted that his opinion "does not encompass whether the Halloween signs are more or less effective than other legal restrictions intended to deter grooming or abuse," meaning that the signs are not the least restrictive means.

Dr. Simpson's testimony therefore confirmed the basis upon which this Court's TRO, quoted above, that Plaintiff is likely to succeed on the merits.

2. ***"Assisting Law Enforcement" is Not a Compelling State Interest in this Context, and Missouri's Law Enforcement Witnesses Confirmed that the Signs Do Not, in Fact, Assist Them***

Given these admissions by their own witnesses, Missouri's counsel made no attempt to argue that the Sign Posting Mandate is "necessary" to protect children. Instead, during oral argument at trial, counsel offered an alternative compelling state interest that the signs supposedly serve, that of assisting law enforcement to identify the resident as a sex offender. Specifically, Missouri referenced "a district court opinion from the Eleventh Circuit" which considered a state's practice of including alphanumeric codes on driver's licenses to indicate that the holder of that document is a registrant. Missouri's oblique reference was presumably to a recent decision by the Middle District of Alabama in *McGuire v. Marshall*, No. 2:19-CV-174-WKW, 2024 WL 2401833, at *60-*62 (M.D. Ala. May 23, 2024). The District Court in that case concluded, without analysis, that "the state has a compelling interest in enabling law enforcement to readily identify a person as a sex offender [on a driver's license]." *Id*. at 61.

The soundness of this conclusory reasoning (which is on appeal) can be questioned, but in any event, it is not analogous to this case. That is because any benefit to *privately* identifying

11

registrants as such *to law enforcement* on a driver's license does not equate to a compelling interest in having registrants identify themselves as such *on their residences*, in full view of the public.

Furthermore, even if "assisting law enforcement to identify the person as a registrant" constituted a compelling state interest, the question is again whether the signs at issue are *necessary* to serve that interest.  Missouri's own witnesses again confirmed they are not.  First, law enforcement already knows where the registrants in their jurisdictions reside, because the registry itself tells them.  That is how law enforcement officers are able to conduct the visual compliance checks on Halloween about which they testified.  Nor did Missouri's witnesses confirm that the signs truly, in fact, "assist law enforcement."  Sergeant Penny Cole initially asserted that the signs provide "a little bit" of assistance to law enforcement in ensuring compliance with the Statute, since a sign is visible from the street without law enforcement needing to exit their vehicle.  Yet, upon the Court's inquiry, Sergeant Cole confirmed that officers also do not need to exit their vehicles to confirm that the registrant's exterior lights are off, or that the registrant is not handing out candy.  These things can be seen from the street.

In sum, Missouri has not met its burden to demonstrate that the Sign Posting Mandate is necessary to achieve any compelling state interest, because the Sign Posting Mandate is redundant to the remaining provisions of the Statute.

C. **Response to Court's Question: Is the Sign Posting Mandate Compelled Speech?**

Missouri appears to concede the uncontestable fact that requiring the posting of signs at a residence for the purpose of communicating a message to the public constitutes compelled speech.  Instead, at trial, Missouri argued that compelling *registrants' speech* is an "exception"

12

to the compelled speech doctrine, per the Fifth Circuit's ruling in *United States v. Arnold*, 740 F.3d 1032, 1035 (5th Cir. 2014).

As discussed below and in previous briefing, the First Amendment contains no such "exception" for registrants' speech. *Arnold* simply held that a requirement to report information privately, to the government, as part of the sex offender registration process is not compelled speech because it is part of "essential operations of government," akin to "requir[ing] individuals to disclose information [to the government] for tax collection." *Arnold*, 740 F.3d at 1035. By comparison, the Statute at issue in this case does not require the disclosure of information *to the government*, nor does it constitute any aspect of registration or other "operation of government." Rather, the Statute requires that *registrants* display a government mandated sign to the public at their private residences, the purpose of which is to communicate a message *to the public*. As the Eleventh Circuit held, this is "a classic example of compelled speech." *McClendon v. Long*, 22 F.4th 1330, 1337 (11th Cir. 2022). First Amendment rights are not curtailed merely because they are asserted by registrants. *See, e.g.*, *Packingham v. North Carolina*, 582 U.S. 98, 106-108 (2017) (striking down state law prohibiting registrants' access to social media because "It is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences. Even convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives").

In sum, for this and the other reasons set forth in this Court's TRO and Order denying Defendants' Motion to Dismiss, the Sign Posting Mandate compels registrants to speak. ECF No. 23, TRO, at 5-8 (rejecting Missouri's characterization of the signs as non-protected speech); ECF No. 54, Order denying Missouri's MTD at 8-12 (same). See also *Doe v. City of Simi*

13

*Valley*, 2012 WL 12507598, at *12 (C.D. Cal. Oct. 29, 2012). (ruling that Halloween sign-posting mandate does not "incidentally" burden speech because its entire purpose and effect is to "compel[] sex offenders to speak" through that sign).

## III.  PLAINTIFF'S ARGUMENT CONCERNING ADDITIONAL ISSUES RAISED AT TRIAL

Plaintiff also wishes to briefly address the following issues that arose at trial:

A)      It is uncontested that Plaintiff satisfied the elements of his compelled speech claim;

B)      Additional evidence establishes that the Sign Posting Mandate is not necessary to serve a compelling state interest because of its: (i) overbreadth, (ii) lack of enforcement throughout the state, and (iii) inherent ineffectiveness; and

C)      The conflicting evidence regarding registrants' rates of re-offense does not satisfy strict scrutiny because:  (i) there is no evidence that re-offense occurs *in connection with Halloween*, and (ii) Missouri's expert witness admits that the Sign Posting Mandate would not apply to first-time offenders, the population within which abuse is most likely to occur.

### A.  Plaintiff has Satisfied the Elements of his Compelled Speech Claim

"In order to make out a valid compelled-speech claim, a party must establish (1) speech; (2) to which he objects; that is (3) compelled by some government action." *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015).  Missouri does not contest that Plaintiff has proven the elements of his case in chief.  Consequently, the burden shifts to Missouri to prove that the Sign Posting Mandate satisfies strict scrutiny.

///

///

**B.  The Sign Posting Mandate is Not the Least Restrictive Means of Satisfying Any State Interest for Numerous Reasons**

Missouri has not met its burden to establish that the signs are necessary to achieve a compelling government interest.  As argued above, the fact that the remaining provisions of the Statute prevent all Halloween-related contact between registrants and the public is fatal to the Sign Posting Mandate, regardless of the purported government interest.  Separately, evidence at trial confirmed three additional reasons that the Sign Posting Mandate fails strict scrutiny: (i) overbreadth, (ii) lack of enforcement throughout the state, and (iii) inherent ineffectiveness.

**1.  *Even if the Signs Prevent Grooming Behavior, they Regulate Non-grooming Conduct and are Thus Fatally Overbroad***

The Sign Posting Mandate fails strict scrutiny because it is overbroad and thus not narrowly tailored.  "The First Amendment rule [] under the overbreadth doctrine . . . . gives rise to 'a type of facial challenge in the First Amendment context under which a law may be overturned as impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1054 (6th Cir. 2015), quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n. 6 (2008).

At trial, Missouri's expert witness, Paul Simpson, Ed.D., proposed that the signs might deter "grooming behavior" by discouraging an encounter between a registrant and child on Halloween.  However, Dr. Simpson clarified that "grooming behavior" only exists when the intent of the party is sexual; otherwise, the behavior is innocuous.  Dr. Simpson further clarified that "grooming behavior" is "*the first step* in initiating an abuse situation" that occurs *later in*

*time*.  In other words, as Dr. Simpson explained, "grooming implies repeated ongoing points of contact" that would only culminate in abuse, if ever, at some point after Halloween.

Therefore, even if Dr. Simpson's theory was accepted, it is at best a mere rational basis for the Sign Posting Mandate that fails to satisfy strict scrutiny because its benefits are highly speculative, and its reach grossly overbroad.[2]  First, as this Court noted, and as Dr. Simpson admitted, the signs apply to vast amounts of innocuous behavior that is not "grooming behavior" because it is not sexually motivated.  Second, Dr. Simpson admitted that the sign would not be present during the "repeated ongoing points of contact" after Halloween that are necessary for the grooming to result in abuse.  Thus, the signs would not actually prevent abuse, nor would they apply to any abusive conduct.  The Sign Posting Mandate is therefore overbroad even under the rationale proffered by Missouri's expert witness.

## 2.   *The Lax or Inconsistent Enforcement of the Sign Posting Mandate Across the State Confirms it is Unnecessary*

Separately, it should also be noted that Missouri cannot creditably assert that the Sign Posting Mandate is necessary to protect the public because the Sign Posting Mandate – and the Statute as a whole – is inconsistently enforced throughout the state.  It is uncontested that Plaintiff openly hosted  -- without incident – his Halloween displays (without displaying the required sign) for nearly two decades with the full knowledge and permission of the Hazelwood Police Department.  Chief Hudanick admitted that the Statute had never been enforced in

---

[2] Notably, Dr. Simpson's expert declaration, admitted by Missouri as Defendant's trial exhibit CC, opines that "The Sign Posting Mandate Serves **the Legitimate Interests** of the State of Missouri and its Citizens."  (Deft. Exh. CC at 0844.)  This raises the question whether Missouri is even attempting to meet the applicable legal standard, strict scrutiny.  "Legitimate interests" is the language of rational basis review, whereas strict scrutiny requires a *compelling* state interest, among other proof.

Hazelwood Missouri prior to 2022, against Plaintiff or anyone else.  This inconsistent and lax enforcement is hardly consistent with the law's being "necessary."

### 3.  *The Signs are Unnecessary Because the Statute Permits the Signs to be of De Minimis or Zero Effectiveness*

Finally, the Statute is not necessary to protect the public because its requirements are practically meaningless.  For example, as this Court observed, the sign could be the size of a postage stamp, or hung away from any points of ingress, including indoors.  Missouri itself concedes in briefing that the signs can be "small" (ECF No. 17, at 27-28), even characterizing them as "minimally intrusive."  (ECF No. 27 at 6.)   Missouri believes that the signs' potential minimal intrusiveness removes them from the ambit of the First Amendment, but that is untrue, because the First Amendment does not turn on the government's opinion of the signs' significance.  *See, e.g., Edenfield v. Fane*, 507 U.S. 761, 767 (1993) (while "[s]ome [] ideas and information are vital, [and] some of slight worth," "the general rule is that the speaker and the audience, not the government, assess the value of the information presented.")  Rather, the potential minimal intrusiveness of the signs underscores their irrelevance to public safety.

### C.  The Conflicting Evidence Regarding Re-offense Rates Does Not Satisfy Strict Scrutiny

The conflicting evidence presented at trial regarding registrants' rate of re-offense does not satisfy strict scrutiny because the same evidence confirms that the Sign Posting Mandate is not narrowly tailored.  Specifically, the Sign Posting Mandate is overbroad because it applies to persons statistically unlikely to abuse children.  The Sign Posting Mandate is also under-broad and ineffective because it does not apply to the population in which any abuse is likely to occur: first-time offenders who, as such, are not on the registry or subject to the Statute.

### 1. *Missouri's Own Witnesses and Documents Confirm that "Sex Offenders Have Relatively Low Recidivism"*

At trial, two of Missouri's witnesses offered significantly conflicting testimony regarding re-offense rates.  Dr. Simpson claimed – without explanation, context, citation, or identifying the cohort at issue – that "sex offenders" re-offend at a rate of approximately one-third.  Yet, Dr. Simpon's asserted figure was almost immediately contradicted by the testimony of David Oldfield, the Missouri Department of Corrections' Director of Research and Evaluation.  Mr. Oldfield explained that, based upon the most recent research, the total re-offense rates for all registrants with convictions in Missouri state courts is, in his words, "***quite low***":  between 3.5% and 4.0% for the total population.  For those who complete the MOSOP program, it is only 1.8%.  Thus, well over 90% never re-offend.  (See also Deft. Exh. JJ, MDOC's "*Additional Notes on Sex Offender Recidivis*m," dated Feb. 27, 2024 ["Compared to offenders serving other offenses sex offenders have relatively low recidivism."].)

MDOC's figures are consistent with the data provided by Missouri for other offender populations.  (Deft. Exh. DD, ATSA, *Registration and Community Notification of Adults Convicted of a Sexual Crime: Recommendations for Evidence-Based Reform* (2020) at 0576-77 ["Sexual recidivism rates are also significantly lower than the common public perception that almost three-quarters of individuals convicted of sexual crimes will sexually reoffend (Levenson et al., 2007). Contrary to this belief, the U.S. Department of Justice reports a 9-year re-arrest rate for sexual offenses of 7.7% among individuals who committed a sexual offense and were released from prison in 2005 (BJS, 2019). . . . [Yet, in another study,] the recidivism rates of low risk offenders were consistently low (1%-5%) for all time periods."].)

It should also be noted that the Statute applies uniformly to all registrants without regard to their risk of re-offense. Yet, the re-offense data confirms that such broad application lacks narrow tailoring because "Recent research in the field of sexual offense specific recidivism has found that adult males convicted of sexual crimes are less likely to reoffend the longer they desist and are offense-free in the community." (Deft. Exh. DD at 0577.)[3]

### 2. *Missouri Cannot Satisfy Strict Scrutiny by Reference to Re-offense Rates Because there is No Evidence that Re-offense Occurs on Halloween, and the Statute Does Not Apply to the Likeliest Abusers*

Regardless, the resolution of this case does not turn on re-offense rates. To the extent that re-offense occurs, there is no evidence that re-offense occurs in connection with Halloween, such that the Sign Posting Mandate would reduce the risk of such re-offense. This is why ATSA opposes "requir[ing] registrants to post signs in their yards during Halloween," saying "the simple fact is that there are no significant increases in sex crimes on or around Halloween." (Pltf. Exh. 7.) Missouri's expert, Dr. Simpson, agreed with ATSA's statement. As to Missouri's alternative grooming theory, its proponent, Dr. Simpson admitted at trial that he is "not aware of any statistical research establishing a correlation between contact on Halloween and grooming behavior."

///

---

[3] At the close of his testimony, Dr. Simpson expressed unspecified "concerns" about re-offense in Plaintiff Sanderson's particular circumstance, despite never meeting or interviewing Mr. Sanderson, and despite Mr. Sanderson's psychological profile being beyond the scope of Dr. Simpson's expert designation. Regardless, the fact that Plaintiff Sanderson has not committed another sex offense in the 24 years since his only sexual offense was alleged to occur – despite hosting his annual Halloween display nearly every year – should mitigate these concerns, in light of this statistical evidence Missouri has provided.

Finally, the Sign Posting Mandate is grossly under-broad (and therefore ineffective) because it would not apply to the population that is likely to abuse children. Both ATSA and Dr. Simpson agree that "Fully 93% of sexual assaults on children are perpetrated by someone known to, and trusted by, the child and the child's family." (Dft. CC at 0838 [Simpson. Decl.], quoting Pltf. Exh. 7 [ATSA Statement].) In contrast, the Sign Posting Mandate is directed toward trick-or-treating strangers. Further, Dr. Simpson agreed with ATSA's statistical observation that "the majority of sexual crimes reported to law enforcement are actually committed by first-time offenders, not recidivists." (Deft. Exh. DD at 0578.) On this basis, Dr. Simpson conceded that "In the context of the Missouri Statute, these statistics mean that the majority of persons likely to offend against children are not those covered by the Statute, because they are first-time offenders [and not on the registry]." Accordingly, the evidence presented at trial is that the signs achieve practically nothing, and therefore cannot satisfy strict scrutiny.

## IV.   PLAINTIFF IS ENTITLED TO THE REMEDIES PLEADED IN THE COMPLAINT

Plaintiff seeks both a judgment declaring that the Sign Posting Mandate violates the First Amendment, and a permanent statewide injunction, discussed below.

### A.   Declaratory Relief is Uncontested

Missouri does not contest Plaintiff's entitlement to a declaratory judgment should Plaintiff succeed on the merits.

### B.   A Statewide Injunction is Proper Because the Sign Posting Mandate is Facially Invalid Across the State

A permanent statewide injunction is warranted because the Statute is facially invalid and "plainly unconstitutional." *Rodgers v. Bryant*, 942 F.3d 451, 458-59 (8th Cir. 2019). *See also*

*Free Speech Coalition, Inc. v. Rokita*, __ F. Supp. 4th __, 2024 WL 322819, at *18 (S.D. Ind. June 28, 2024) (where party asserts facial overbreadth challenge, "[i]t is quite ordinary in that context to enjoin to the entire statute statewide because in facial challenges the claimed constitutional violation inheres in the terms of the statute, not its application" (citing cases)).

In this matter, the parties have already briefed the propriety of a facial challenge to the Statute in their respective papers on Defendants' Motion to Dismiss.  ECF No. 27 at 18-19 (Defendants' MTD); ECF No. 36 at 13-15 (Oppo. to MTD).  This Court previously ruled that the facial challenge is appropriate.  ECF No. 54, Order, at 12-13.  Based upon the evidence presented at trial, there is no set of facts under which the Sign Posting Mandate could pass constitutional muster because, as explained above, the other provisions the Statute are sufficient to achieve the interest protected by the Statute.  While Missouri argued that Halloween traditions vary across the state, and that the state is a mix of rural, suburban, and urban communities, Missouri has not explained how any of those variables would render the signs constitutional. Accordingly, under Eighth Circuit precedent, a statewide injunction is warranted because it "would cause no injury." *Rodgers*, 942 F.3d at 458-59.  Further, the "public interest is best served by preventing governmental intrusions into the rights protected under the Federal Constitution." *Ibid*.

### 1.   *The Authorities Cited in Missouri's Pretrial Briefing are Inapposite*

In previous briefing in the Eighth Circuit, Missouri cited to the concurring opinion in *Rodgers*, arguing that "this Court's precedents foreclose a statewide injunction. *Balogh* [*v. Lombardi*], 816 F.3d [536,] 543 (8th Cir. 2016); *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958–59 (8th Cir. 2015)."  However, Missouri discussed neither precedent, presumably because they are inapposite.  *Balogh* does not address injunctions, but

21

instead addresses the "fairly traceable" requirement for standing. And *Digital Recognition Network* states that the Attorney General is an improper party when the challenged act "provides for enforcement only through a private actions for damages." 803 F.3d at 958. But here, the challenged statute is a criminal statute, not one that provides a civil right of action.

Missouri has also argued that "The requested relief [a statewide injunction] cannot be entered against General Bailey because any alleged harm is not fairly traceable to General Bailey." (Answer of Defendant Bailey, ECF No. 60 at 8 ¶49.) Presumably, Missouri means to argue that a statewide injunction cannot be entered because the Attorney General has not enforced the Sign Posting Mandate. Yet, Missouri has not explained why that is so. Nor could it.

The Ninth Circuit explains why in *Clement v. California Department of Corrections*, 364 F.3d 1148, 1153 (9th Cir. 2004) (per curiam). In that case, an inmate brought a First Amendment challenge to a single prison's "policy prohibiting inmates from receiving mail containing material downloaded from the internet." *Id*. at 1150. Eight other California prisons (far less than half of the statewide total) had adopted similar policies. *Id*. at 1151. The District Court enjoined the internet-mail policy statewide, at all prisons. *Ibid*. The Ninth Circuit upheld the statewide injunction, reasoning that:

> the state offers no argument that a total internet mail ban [in that one prison] might be constitutional if implemented at a different prison. In such circumstances, it would be inefficient and unnecessary for prisoners in each California state prison to separately challenge the same internet mail policy; it would simply force CDC to face repetitive litigation.

*Id*. at 1153.

Likewise, in this matter, there is no reason why the Sign Posting Mandate would be unconstitutional as applied to Plaintiff, or in the City of Hazelwood, but constitutional as applied to registrants elsewhere in Missouri who are still subject to the remaining provisions of the

Statute that prevent their participation in Halloween.  For the same reason, Plaintiff's entitlement

to a statewide injunction is not contingent upon him joining the well over 100 local law

enforcement agencies in Missouri with jurisdiction to enforce the Sign Posting Mandate, which

would be a waste of judicial and other government resources.  To the contrary, the fact that

numerous agencies can and do enforce the Sign Posting Mandate underscores the need for a

statewide injunction.

### 2. *Labrador v. Poe* is Not a Reasoned U.S. Supreme Court Decision, Nor Does it Address Injunctions in the First Amendment Context

Finally, at trial (and in its Answer filed on June 28, 2024 [see ECF No. 60 at 8]),

Missouri argued – without analysis – that "this Court cannot enter the requested relief of a state-

wide injunction under *Labrador v. Poe*, 144 S. Ct. 921 (2024)."  ECF No. 60 at 8.  This is neither

an accurate statement of the law nor an accurate characterization of *Labrador v. Poe*.

As a preliminary matter, *Labrador v. Poe* is not a reasoned decision at all, but is instead a

3-sentence summary memorandum opinion staying a District Court's preliminary junction of a

state law pending appeal.  While *Labrador v. Poe* does contain concurring opinions that address

the law of injunctions, there is no mention of the First Amendment, and the concurring opinions

therefore do not address the propriety of an injunction in the First Amendment context.  In

addition, the particular concurring opinion to which Missouri presumably refers, by Justice

Gorsuch, addresses a subject that is not at issue in this case, that is, an injunction prohibiting the

enforcement of laws not challenged by the plaintiff who secured the injunction.

Specifically, in *Labrador v. Poe*, the underlying preliminary injunction by the District

Court had prevented enforcement of a multifaceted Idaho law that "regulate[d] *a number of*

*practices* upon a child for the purpose of attempting to alter the . . . child's sex."  *Labrador v.*

*Poe*, 144 S.Ct. at 921 (Gorsuch, J., concurring), emphasis added.  Those practices ranged from

"access to drug treatments" to "the surgical removal of children's genitals."  *Ibid*.  Justice

Gorsuch's concern was that the scope of the injunction covered not only the particular practice

that the Plaintiff sought (drug treatment), but also "purported to bar the enforcement of 'any

provision' of the law against anyone [else]."  *Ibid*.

In Justice Gorsuch's concurring opinion, which two Justices joined, he noted the general

"rule[] of equity known [since] the separation of this country from Great Britain. . . ., [that] a

federal court may not issue an equitable remedy more burdensome to the defendant than

necessary to [redress] the plaintiff's injuries."  *Labrador v. Poe*, 144 S.Ct. at 923 (Gorsuch, J.,

concurring).  Presumably, Missouri means to argue that this Court cannot issue a permanent

injunction "more burdensome to the defendant than necessary to [redress] the plaintiff's

injuries."  Yet, that is not what a permanent injunction in this case would achieve.  That is

because the discrete Sign Posting Mandate at issue in this First Amendment case is not

comparable to the multi-faceted statute at issue in *Labrador v. Poe*.  Specifically, a statewide

injunction against the Sign Posting Mandate would include only the statutory provision to which

Plaintiff is subject, and would simply prevent the enforcement of that facially unconstitutional

provision against any registrant.  Such an injunction is "quite ordinary" in the First Amendment

context.  *Rokita*, __ F. Supp. 4th __, 2024 WL 322819, at *18.

## V.    <u>CONCLUSION</u>

The central issue in this trial is whether Missouri met its burden to establish that the

Statute's requirement that registrants post a sign at their residences on Halloween is necessary to

achieve a compelling state interest.  Missouri did not meet that burden.  In fact, Missouri's

witnesses admitted, expressly or impliedly, that the Sign Posting Mandate is redundant to the remaining protective provisions of the Statute, such that the Sign Posting Mandate is unnecessary to achieve any state interest.  For these reasons, the Sign Posting Mandate should be declared unconstitutional, and its enforcement enjoined statewide.


Respectfully submitted,


Dated:  July 19, 2024

/s/  *Janice M. Bellucci*
Janice Madelyn Bellucci #108911 (CA)
*Admitted Pro Hac Vice*
Law Office of Janice M. Bellucci
2110 K Street
Sacramento, CA 95816
Telephone: (805) 896-7854
Email: jmbellucci@aol.com