**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

THOMAS L. SANDERSON,                    )
                                        )
          Plaintiff,                    )
                                        )
              v.                        )          Case No. 4:23CV1242 JAR
                                        )
ANDREW BAILEY,                          )
*in his official capacity as Attorney General*  )
*of the State of Missouri, et al.,*     )
                                        )
          Defendants.                   )

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

On October 3, 2023, Plaintiff Thomas L. Sanderson brought this action for declaratory and permanent injunctive relief against Defendants Andrew Bailey, Attorney General of the State of Missouri, and James Hudanick, Chief of Police of the City of Hazelwood, Missouri.[1] Plaintiff alleges that Missouri Revised Statute Section 589.426.1(3), which mandates that any person required to register as a sexual offender under Sections 589.400 to 589.425 must post a sign at his or her residence on October thirty-first of each year stating, "No candy or treats at this residence,"[2] constitutes compelled speech in violation of the First Amendment to the United States Constitution. Plaintiff requests a declaratory judgment that the sign posting requirement is unconstitutional. Plaintiff further requests that Defendants be permanently enjoined from enforcing the sign posting requirement against him and all other individuals covered by the statute.

On October 11, 2023, Plaintiff moved for a Temporary Restraining Order ("TRO"),

---

[1] The allegations against the individual defendants are brought in their respective official capacity.

[2] The Court will refer to this as the "sign posting requirement."

pursuant to Federal Rule of Civil Procedure 65, to prevent Defendants from enforcing Section 589.426.1(3) of the statute. The Court granted Plaintiff's Motion for TRO and combined the preliminary injunction hearing with the trial on the merits. ECF Nos. 23 and 35.

On June 20, 2024, the case proceeded as a bench trial before this Court. Plaintiff appeared in person and by counsel. Defendant Bailey appeared by counsel. Defendant Hudanick appeared in person and by counsel. After trial, the parties requested, and the Court agreed to give thirty days to file post-trial briefs, which were timely filed by all sides. ECF Nos. 61, 64, 67. The only issue before the Court is whether the sign posting requirement constitutes compelled speech in violation of the First Amendment.[3] Having considered the arguments and evidence presented at trial, the Court finds that the sign posting requirement is unconstitutional and therefore unenforceable.

## FINDINGS OF FACT

*The Parties*

Plaintiff Thomas L. Sanderson is a resident of the City of Hazelwood in St. Louis County, Missouri. In 2006, Plaintiff was convicted of an offense requiring his registration as a sex offender with the chief law enforcement official in his county of residence under Missouri law and is subject to the sign posting requirement. *See* Mo. Rev. Stat. § 589.400.2.

Defendant Andrew Bailey, Attorney General of the State of Missouri, in his official capacity, is responsible for the investigation, enforcement, and prosecution of violations of laws in the State of Missouri.

Defendant James Hudanick, Chief of Police of the City of Hazelwood, in his official

---

[3] The Court notes that the majority of the testimony and evidence presented by the parties at trial were irrelevant to determining this issue.

capacity, is responsible for the investigation and enforcement of violations of laws in the City of Hazelwood, including the sign posting requirement.

*The Statute*

Effective August 28, 2008, the State of Missouri enacted Missouri Revised Statute Section 589.426 (the "Halloween Statute"), which imposes the following restrictions on conduct for any person required to register as a sexual offender under sections 589.400 to 589.425 on October thirty-first of each year (Halloween):

(1) Avoid all Halloween-related contact with children;

(2) Remain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies;

(3) Post a sign at his or her residence stating, "No candy or treats at this residence;" and

(4) Leave all outside residential lighting off during the evening hours after 5 p.m.

Mo. Rev. Stat. § 589.426.1.

The criminal penalty imposed for a violation of any of the Halloween Statute's provisions is a class A misdemeanor. *Id.* § 589.426.2.

*Plaintiff's Evidence*

Plaintiff and his family moved to Hazelwood in 2000. Shortly thereafter, law enforcement officers interviewed Plaintiff regarding allegations of inappropriate sexual touching made by a friend of the family, who was sixteen years old at the time. Plaintiff was subsequently charged with a sex offense, and in 2006, Plaintiff was convicted of that offense, which required his registration as a sex offender with the chief law enforcement official in his county of residence under Missouri law. *See* Mo. Rev. Stat. § 589.400.2. Plaintiff testified he has been

3

convicted of several other offenses, none of which involved child sexual abuse, including but not limited to domestic assault, assault, driving while intoxicated, and indecent exposure.

Every year since living in Hazelwood, Plaintiff has participated in Halloween traditions on October thirty-first, such as throwing large parties, hosting a bonfire, handing out candy to children outside, decorating his residence, and keeping his lights on. Plaintiff testified that he did not believe at that time the Halloween Statute applied to him since he was convicted prior to its enactment.

*Plaintiff's Arrest for Halloween Statute Violations*

On October 31, 2022, Hazelwood Police Officers testified that they received complaints, including an anonymous tip, about Halloween activity at Plaintiff's residence. Officers testified they were dispatched to Plaintiff's residence and observed that it appeared he was hosting a Halloween party. Officers observed Plaintiff dressed up in a costume and handing out candy to children, and his residence was decorated with Halloween decorations and lights. Officers also observed that he did not have a sign posted at his residence that stated, "No candy or treats at this residence." Officers spoke with Plaintiff's girlfriend and instructed Plaintiff to cease Halloween activity as he was in violation of the Halloween Statute. After receiving further complaints about Plaintiff's residence, Officers testified that they were again dispatched to Plaintiff's residence and observed that he was continuing to participate in Halloween activity. Officers then informed Plaintiff that he was in violation of all restrictions in the Halloween Statute. On November 3, 2022, Plaintiff was arrested for these violations. Plaintiff was subsequently charged and pleaded guilty to violating the Halloween Statute, including the sign posting requirement. Plaintiff

received a suspended imposition of sentence with twelve months unsupervised probation.[4]

*Defendant Hudanick's Testimony*

Defendant Hudanick testified that he is the Chief of Police for the City of Hazelwood and has held that position since December 2021. Defendant Hudanick testified that his predecessor did not strongly enforce the Halloween Statute. However, Defendant Hudanick directed his officers to enforce the Statute, mainly focusing on any interaction with children, such as handing out candy. Defendant Hudanick testified that he gave no specific instruction regarding enforcement of the sign posting requirement at that time, but after the prosecution of Plaintiff in 2023, Defendant Hudanick directed his officers to enforce all sections of the Halloween Statute. He also testified that he sent a letter in October 2023 to all registered sex offenders in his jurisdiction that he intended to enforce all aspects of the Halloween Statute.

*Brittany Cale's Testimony*

The defense called witness Brittany Cale, who was the victim of Plaintiff's 2006 sodomy conviction requiring his registration as a sex offender. The Court limited Cale's testimony to establish the significant impact and trauma child sexual abuse has on a victim.

*Defense Expert Witness*

The defense called expert witness Paul Simpson, Ed.D., who agreed that the sign posting requirement could help prevent sex offenders from having any type of contact with children on Halloween. On cross examination, Dr. Simpson agreed that even without the sign posting requirement, a sex offender's compliance with the other restrictions of the Halloween statute would prevent the offender from having contact with children at their residence on Halloween.

---

[4] The Court assumes the Halloween Statute applies retroactively to Plaintiff since the parties have not raised that issue. Further, it is important to note that Plaintiff cannot collaterally attack his state sentence for violating the Halloween Statute in this Court.

Dr. Simpson also testified that, based on his research, sex offenders re-offend at a rate of approximately one-third.

*Other Relevant Defense Evidence*

Defendants called Sergeant Jason Heffernan and Captain Danielle Heil who testified that the sign posting requirement is helpful to law enforcement to easily identify houses where registered sex offenders reside to ensure compliance with the Halloween Statute restrictions. These witnesses testified that they also have access to where registered sex offenders reside on the sex-offender registry. The sex-offender registry contains each registrant's name, address, photograph, and convicted offense information, and is available on the Missouri State Highway Patrol's website that law enforcement and the public have access to. These witnesses confirmed that the sign posting requirement does not define the size of the sign or the size of the font for the phrase, "No candy or treats at this residence." These witnesses also confirmed that registered sex offenders could display the sign at the back of the residence, or even inside the residence, and still be in compliance with the sign posting requirement.

The defense also submitted testimony and evidence to establish recidivism rates of sex offenders and the risks and dangers these offenders pose to society.

**CONCLUSIONS OF LAW**

Standing

*Article III*

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. "One element of the case-or-controversy requirement" is that Plaintiff "must establish that [he has] standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Article III standing is a threshold inquiry in every federal case that determines whether

the Court has the power to decide the case. *See, e.g., United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003); *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

To establish that he has standing to bring this lawsuit, Plaintiff must show that he suffered an "injury in fact." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2144 (1992). "Injury-in-fact means an actual or imminent invasion of a concrete and particularized legally protected interest." *Kinder v. Geithner*, 695 F.3d 772, 776 (8th Cir. 2012). When a state or local law imposes compliance burdens on those it regulates or controls, and "compliance is coerced by the threat of enforcement . . . the controversy is both immediate and real." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 508 (1972). Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution and laws of the United States. *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982)); *see also, Yassin v. Weyker*, 39 F.4th 1086, 1089 (8th Cir. 2022).

There are two common ways of demonstrating an injury in fact in First Amendment cases. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). First, a plaintiff may allege "an intention to engage in a course of conduct . . . proscribed by a statute" such that the plaintiff risks prosecution or some other penalty. *Id.* (internal quotation marks omitted) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Second, a plaintiff may allege self-censorship. *Id.* Importantly, these methods are used in cases in which plaintiffs are challenging the constitutionality of a law before facing prosecution or otherwise suffering from the adverse consequences of noncompliance. *See, e.g., 281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011); *Zanders v. Swanson*, 573 F.3d 591, 593–94 (8th Cir. 2009).

Persons who violate the Halloween Statute can be prosecuted for committing a class A misdemeanor. *See* Mo. Rev. Stat. § 589.426.2. Defendant Bailey, the Attorney General of the

State of Missouri, has statutory authority in his official capacity to represent the state in both criminal and civil cases. *See* Mo. Rev. Stat. § 56.060.1; § 27.030; § 27.060. At trial, Plaintiff testified he was prosecuted for violating the Halloween Statute, including the sign posting requirement, and was placed on probation for the offense. Defendant Hudanick confirmed that Plaintiff was arrested by Hazelwood Police Officers for violating the Halloween Statute. Defendant Hudanick also testified that, absent a Court Order, he would continue to instruct his officers to enforce the sign posting requirement.

Plaintiff, a convicted sex offender, has proven that he already sustained an injury because he was arrested and prosecuted for violating the Halloween Statute. Thus, Plaintiff has properly alleged an injury in fact and a threat of future prosecution. The prosecution could be initiated by Defendant Hudanick, or by Defendant Bailey, who have the authority to order an investigation or prosecution. A plaintiff who alleges a threat of prosecution that "is not imaginary or wholly speculative" has standing to challenge the statute. *281 Care Comm.*, 638 F.3d at 630 (quoting *Babbitt*, 442 U.S. at 302). Plaintiff clearly satisfies the requirement that the sign posting portion of the Halloween Statute will be enforced against him again, absent declaratory and injunctive relief, since there is a history of past enforcement. *See United Food & Commercial Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 427 (8th Cir. 1988) (noting that past experience with a statute is relevant to standing determination).  The Court thus finds that Plaintiff has standing to bring his claim against Defendants under Article III of the Constitution.[5]

*Eleventh Amendment Immunity*

In general, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*,

---

[5] The evidence of the injury proven by Plaintiff only applies to the sign posting requirement section of the Halloween Statute.

491 U.S. 58, 71 (1989). Simply put, lawsuits against state officials are treated as lawsuits against the State itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Many suits against a State are barred by the State's Eleventh Amendment sovereign immunity. *See Will*, 491 U.S. at 67. However, an exception to Eleventh Amendment sovereign immunity exists pursuant to the *Ex parte Young* doctrine. 209 U.S. 123 (1909). Under *Ex parte Young*,

> individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Id.* at 155–56.

According to the Eighth Circuit, "[t]he *Ex parte Young* doctrine does not apply when the defendant official has neither enforced nor threatened to enforce the statute challenged as unconstitutional." *281 Care Comm.*, 766 F.3d at 797 (quotation omitted). "[A]ny probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." *Id.* (quoting *Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir. 2001)). "Absent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction." *Id.* (quotation omitted).

In *Missouri Protection and Advocacy Servs., Inc., v. Carnahan*, 499 F.3d 803 (8th Cir. 2007), the Eighth Circuit held that the Missouri Secretary of State and Attorney General were the proper defendants in a voting rights case even though local election authorities were primarily responsible for carrying out the alleged unconstitutional activity. In that case, the plaintiffs challenged Missouri's constitutional provision and implementing statute that denied the right to vote to Missouri residents under a court-ordered guardianship due to mental incapacity. *See id.* at

807. Missouri law gave local county clerks and other authorities the broad power to register voters and administer elections. However, under Missouri law, a person can be prosecuted for knowingly attempting to vote when they are ineligible. *See id*. at 807. The Eighth Circuit held that because the Attorney General could prosecute a person under guardianship if they knowingly attempted to vote, he was a proper defendant in that case. *Id*.

The Court finds that Defendant Bailey, in his official capacity as the Attorney General for the State of Missouri, is a proper defendant here since he has enforcement authority to investigate or prosecute violations of the Halloween Statute's sign posting requirement. *See* Mo. Rev. Stat. §§ 56.060.1; 27.030; 27.060; *see also, Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006), *abrogated on other grounds* by *Obergefell v. Hodges*, 576 U.S. 644, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015) ("[W]e agree with the concession implicit in the State's decision not to press this issue—the Governor and the Attorney General have some connection with the enforcement of [the state constitutional amendment] and therefore this suit for equitable relief falls within the exception to the State's Eleventh Amendment immunity established in *Ex parte Young*." (internal quotation omitted)).

The Court also finds that Defendant Hudanick, sued in his official capacity, is a proper defendant because he would enforce, and did enforce, the sign posting requirement of the Halloween Statute in the City of Hazelwood. The evidence at trial established that Defendant Hudanick is the Chief of Police of the City of Hazelwood, and he wrote a letter to all sex offender registrants in his jurisdiction, where Plaintiff resides, of his intent to enforce *all* sections of the Halloween Statute prior to Halloween in 2023. The evidence at trial also established that on October 31, 2022, City of Hazelwood Police Officers informed Plaintiff that he was in violation of the Halloween Statute, including the sign posting requirement, which he was later prosecuted for and pleaded guilty to violating. To be a proper defendant in a suit challenging a

particular statute, the state officer must have "some connection with the enforcement of the act." *Reprod. Health Servs. v. Nixon*, 428 F.3d 1139, 1145–46 (8th Cir. 2005). Here, the Court finds that the evidence has demonstrated a sufficient connection between Defendant Hudanick and his enforcement of the Halloween Statute's sign posting requirement.[6]

Facial Challenge

Plaintiff brings a facial challenge to the constitutionality of the Halloween Statute's sign-posting requirement.[7] The Supreme Court recently reiterated how courts are to address facial challenges. *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024) (Because "facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways," courts ought to "handle constitutional claims case by case, not en masse." (cleaned up)).

The Eighth Circuit also recently addressed facial challenges, citing *NetChoice*, explaining that:

> The first step in a proper facial analysis is to assess the laws' scope, which includes consideration of what activities by what actors do the laws prohibit or regulate. . . . After that assessment is completed, the next step in the process is to determine which of the laws' applications violate the First Amendment. . . . Once the court has made that determination, it then must measure the unconstitutional applications against the remaining provisions.

*GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660, 669-70, (8th Cir. 2024) (citing *NetChoice*, 144 S. Ct. at 2398) (holding that the district court did not perform the necessary inquiry set forth in *NetChoice*).

---

[6] The Court reiterates this connection only applies to the sign posting requirement section of the Halloween Statute.

[7] Plaintiff does not raise an as-applied challenge nor does he challenge the other sections of the Halloween Statute.

The Eighth Circuit emphasized that, for facial challenges, "the question . . . is whether a law's unconstitutional applications are substantial compared to its constitutional ones." *Id.* (citing *NetChoice,* 144 S. Ct. at 2394).

*Step One*

The Court's first step in its facial analysis is to assess the state laws' scope. In other words, "[w]hat activities, by what actors, do the laws prohibit or otherwise regulate?" *NetChoice,* 144 S. Ct. at 2398. The Halloween Statute imposes the following restrictions on conduct for any person required to register as a sexual offender under sections 589.400 to 589.425 ("registered offenders") on October thirty-first of each year:

(1) Avoid all Halloween-related contact with children;

(2) Remain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies;

(3) Post a sign at his or her residence stating, "No candy or treats at this residence"; and

(4) Leave all outside residential lighting off during the evening hours after 5 p.m.

Mo. Rev. Stat. § 589.426.1.

The criminal penalty imposed for a violation of any of the Statute's provisions is a class A misdemeanor. *Id.* § 589.426.2.

The facial challenge here is only to the sign posting requirement of the Halloween Statute in Section 589.426.1(3).[8] Thus, the Court determines that the sign posting requirement applies to registered sex offenders in the State of Missouri and regulates that on a specific date of each

---

[8] The Court finds that the Halloween Statute comprises multiple, alternative versions of the crime, and is therefore "divisible." *Descamps v. United States,* 570 U.S. 254, 262 (2013). The consideration of Section 589.426.1(3) does not affect the validity of other sections of the statute.

year, October thirty-first, sex offenders must post a sign at their residence with specific language stating, "No candy or treats at this residence."

*Step Two*

"The next order of business is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *NetChoice,* 144 S. Ct. at 2388.

The Supremacy Clause of the United States Constitution provides that federal law is "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. "The First Amendment declares in part that 'Congress shall make no law . . . abridging the freedom of speech.'" *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1054 (8th Cir. 2014) (quoting U.S. Const. amend. I). The First Amendment applies to state and local governments by virtue of the Fourteenth Amendment. *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 750 (8th Cir. 2019).

This First Amendment protection "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705 (1977). State actors may not compel a person to utter a message with which the person does not agree. *Johanns v. Livestock Mktg. Ass'n,* 544 U.S. 550, 557 (2005). This protection is implicated when a person "must personally speak the government's message," as well as when a person is "forced to accommodate" a message that interferes with the ability of the speaker to communicate the speaker's own message. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (F.A.I.R.),* 547 U.S. 47, 63 (2006). When a state actor compels speech, that action is subject to strict scrutiny judicial review, which requires the state actor to prove that the action is "narrowly tailored" to serve a "compelling state interest." *Telescope Media*, 936 F.3d at 754 (quoting *Reed v. Town of Gilbert,* 576 U.S. 155 (2015)).

To decide the facial challenge here, the Court "must explore the laws' full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *NetChoice,* 144 S. Ct. at 2388. Two courts in other circuits have addressed similar Halloween sign posting issues for sex offenders, and both have ruled that the signs unconstitutionally compel speech in violation of the First Amendment. A district court in California issued a temporary restraining order enjoining an ordinance that, like the sign posting requirement here, required sex offenders to post a sign on their front doors declaring "No candy or treats at this residence." *Doe v. City of Simi Valley*, 2012 WL 12507598, at *1 (C.D. Cal. Oct. 29, 2012). The District Court in *Doe* found Plaintiffs clearly showed that they were likely to succeed on the merits of their claim that "the sign requirement—a form of compelled speech— runs afoul of the free speech guarantee of the First Amendment." *Id.* at *8.

The Eleventh Circuit held in *McClendon v. Long*, that a local sheriff's department signs that law enforcement placed in the front of registered sex offenders' homes that said "Stop – Warning! NO TRICK-OR-TREAT AT THIS ADDRESS! A COMMUNITY SAFETY MESSAGE FROM BUTTS COUNTY SHERIFF GARY LONG" were a "classic example of compelled speech." 22 F.4th 1330, 1337 (11th Cir. 2022). The *McClendon* Court relied on the Supreme Court's holding in *Wooley*, where the Court invalidated the conviction of a New Hampshire couple who covered the state motto "Live Free or Die" on their license plate, concluding that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." 430 U.S. at 714. "Since *Wooley,* the Supreme Court has reaffirmed the prohibition on compelled speech and refined it to apply to cases in which the government orders certain types of speech or speech about certain topics." *Gralike v. Cook*, 191 F.3d 911, 917 (8th Cir. 1999), *aff'd*, 531 U.S. 510 (2001). *See, e.g., Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 797–98 (1988)

14

(invalidating a requirement that professional fundraisers disclose to potential donors the percentage of charitable contributions collected during the previous twelve months that were actually turned over to the charity); *Hurley v. Irish–American Gay, Lesbian, & Bisexual Grp.,* 515 U.S. 557, 573 (1995) (the "general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact . . . ."); *Pacific Gas & Elec. Co. v. Public Utils. Comm'n,* 475 U.S. 1, 14–16 (1986) ("[T]he State is not free either to restrict appellant's speech to certain topics or views or to force appellant to respond to views that others may hold. . . . [T]he choice to speak includes within it the choice of what not to say.").

The Court finds that Halloween Statute's sign posting requirement, like the State motto on the New Hampshire license plate in *Wooley*, is compelled speech. Plaintiff has proven that the sign posting requirement compels him to speak a viewpoint in written words, directed to the public, that he does not adhere to, in violation of the First Amendment. Applying "the laws' full range of applications," the Court further finds that the sign posting requirement compels the speech of *any* registered offender in Missouri, not just Plaintiff. *See NetChoice,* 144 S. Ct. at 2388. Defendants require the use of private property to reflect their own message "for the express purpose that it be observed and read by the public," thereby depriving registered offenders of their freedom to speak in their own words or to not speak at all. *Wooley*, 430 U.S. at 713; *see also, Hurley,* 515 U.S. at 573 ("[O]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide what not to say") (internal quotation marks omitted). This covers all applicable actors under the sign posting requirement's scope. Thus, the Court finds that the sign posting requirement of the Halloween Statute mandating that registered offenders post a sign that says "No candy or treats at this residence" on Halloween is compelled speech and is unconstitutional as applied to all sex offenders in Missouri. *See Wooley*,

430 U.S. at 717 (When "the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message.").

Application of Strict Scrutiny

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed,* 576 U.S. at 163. As a content-based restriction, the Halloween Statute's sign posting requirement must satisfy strict scrutiny. *See id.* "Content-based [speech] regulations are presumptively invalid." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992). Defendants thus bear the burden of rebutting the presumption of invalidity. *United States v. Playboy Ent. Grp.*, *Inc.,* 529 U.S. 803, 817, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Indeed, "[i]t is rare that a regulation restricting speech because of its content will ever be permissible." *Id.* at 818. Defendants can, nonetheless, rebut the presumption if it is able to show that the ordinance is "narrowly tailored to promote a compelling Government interest," such that the ordinance is the "least restrictive alternative" to serve the government's purpose. *Id.* at 813; *see also, Ashcroft v. ACLU,* 542 U.S. 656, 666 (2004). If restrictions are not narrowly tailored to achieve a compelling interest, they are "unconstitutional restraints on free speech." *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1409 (8th Cir. 1995).

*Compelling State Interest*

It has been recognized that "[s]ex offenders are a serious threat in this Nation." *McKune v. Lile,* 536 U.S. 24, 32 (2002). Statistics show that, when "convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault." *Id.* at 32–33. "[E]very . . . State, has responded to these facts by enacting a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders." *Connecticut Dept. of Public Safety v. Doe,* 538 U.S. 1, 4 (2003).

16

There is no doubt that protecting children is a compelling government interest, as further supported by the evidence adduced at trial. Here, the focus is protecting children on Halloween. "It is common sense … that young 'trick-or-treaters' are indeed vulnerable to child predators on Halloween." *Doe*, 2012 WL 12507598, at *8.  The Court accepts that Defendants have established a compelling interest in restricting *certain* conduct of sexual offenders on Halloween that satisfies the strict scrutiny standard.

*Narrowly Tailored*

The First Amendment requires that content-based speech laws "be narrowly tailored, not that [they] be 'perfectly tailored.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454 (2015) (quoting *Burson v. Freeman*, 504 U.S. 191, 209 (1992)). But when a less restrictive or less burdensome means is available for the government to achieve its goal, "the Government must use it." *Playboy Ent.*, 529 U.S. at 815. Content-based speech laws must be "narrowly drawn" to address the government's compelling interest, and the curtailment of free speech must be "actually necessary to the solution." *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 799, 131 S.Ct. 2729, 180 L.Ed.2d 708 (2011). "Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching on our most precious freedoms." *Riley*, 487 U.S. at 801 (internal quotation marks omitted).

Because the sign posting requirement is a presumptively unconstitutional content-based speech regulation, it is Defendants' burden to prove that the law is narrowly tailored to serve Defendants' compelling governmental interest. *See Reed*, 576 U.S. at 173. Defendants adduced testimony at trial to show that laws restricting conduct for registered sex offenders*, in general*, are part of Missouri's broader statutory scheme to protect children and other vulnerable victims from the acts of sexual offenders. However, Defendants proffered interests as it relates solely to the Halloween Statute's sign posting requirement cannot withstand strict scrutiny because it is

17

not narrowly drawn to accomplish those ends nor is it the least restrictive manner to meet that

end. Defendants did not provide any evidence at trial that sexual offenders are more likely to re-

offend on Halloween as compared to any other day of the year nor do they show it is the least

restrictive alternative to serve its interest in protecting children on Halloween. *See Whitton*, 54

F.3d at 1408 (restriction not narrowly tailored because government "has not presented sufficient

evidence" that the Ordinance is the least restrictive means to further stated interests and "no

evidence that enforcement of these existing provisions is insufficient").

First, a sign stating "No candy or treats at this residence" does not clarify the danger that

the statute serves to mitigate. The sign contains no warning that there is a convicted sex offender

or other dangerous person at that residence. The sign posting requirement does not even dictate

the font size or location of the sign to ensure visibility to children or others. The Halloween

Statute requires only that the registered offender must "[p]ost a sign at his or her residence

stating, 'No candy or treats at this residence.'" Mo. Rev. Stat. § 589.426.1(3). Defense witnesses

conceded that the phrase could be written in the smallest possible font, and a sign placed at the

back door, or even inside the residence, would still be compliant with the Statute.

More significantly, the other restrictions mandated in the Halloween Statute adequately

address all of Defendants' interests. To wit, sex offenders must "[a]void all Halloween-related

contact with children." *See* Mo. Rev. Stat. § 589.426.1(1).  Sex offenders must "[r]emain inside

his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere

for just cause, including but not limited to employment or medical emergencies." *Id.* §

589.426.1(2). Sex offenders must also "[l]eave all outside residential lighting off during the

evening hours after 5 p.m." *Id.* § 589.426.1(4).  These provisions prevent sex offenders from

being in contact with children outside trick-or-treating and also deter children from venturing

onto the properties of sex offenders.

18

Additionally, law enforcement witnesses testified that the sex-offender registry, which contains each registrant's name, address, photograph, and convicted offense information, is available on the Missouri State Highway Patrol's website. This further diminishes the need to require registered sex offenders to disseminate the same information on signs on their private property. The evidence presented has not shown that the sign posting requirement adds any value to protect children from Plaintiff, or other registered sex offenders, on Halloween. Even without the sign posting requirement, Defendants are free to enforce the other sections of the Halloween Statute. Plaintiff can still be charged and prosecuted for keeping his residence's lights on, participating in Halloween activities that involve contact with children such as handing out candy to trick-or-treaters, or leaving his house absent just cause on Halloween. The Court does not discount the importance of the government's interest in protecting children from sex offenders on Halloween, but the evidence fails to show that the sign posting requirement is narrowly tailored to achieve that interest *in the least restrictive manner*. "To this end, the government, even with the purest of motives, may not substitute its judgment as to how best to speak for that of speakers and listener." *Riley,* 487 U.S. at 2675.

Because the sign posting requirement of the Halloween Statute is not narrowly tailored to achieve Defendants' interest in protecting children from sex offenders on Halloween, and there are other effective alternatives to achieve that interest, the Court finds that the sign posting requirement fails strict scrutiny. *See Reed*, 576 U.S. at 173 (invalidating law because Government "has not met its burden to prove that its Sign Code is narrowly tailored to further a compelling government interest").[9] For all of these reasons, Plaintiff is entitled to a declaratory

---

[9] Even assuming that the less stringent form of First Amendment review applies, the Halloween Statute's sign posting requirement still does not pass. Under that standard, a law must further a "substantial governmental interest" that is "unrelated to the suppression of free expression." *NetChoice,* 144 S. Ct. at 2388 (quoting *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673,

judgment that Missouri Revised Statute Section 589.426.1(3) is unconstitutional under the First and Fourteenth Amendments of the United States Constitution. 28 U.S.C. § 2201 (Declaratory Judgment Act).

Permanent Injunctive Relief

"The standard for issuing a preliminary or permanent injunction is essentially the same, except one key difference." *Oglala Sioux Tribe v. C & W Enters., Inc.,* 542 F.3d 224, 229 (8th Cir. 2008). To obtain a permanent injunction, "the moving party [must] show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction." *Id.*; *see also Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999). "If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." *Oglala Sioux Tribe,* 542 F.3d at 229 (citations omitted). Each factor is addressed below.

*Irreparable Harm*

In cases implicating the First Amendment, courts normally assume irreparable injury because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713, 91 (1971)); *see also, Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008). Here, Plaintiff has succeeded on the merits

---

20 L.Ed.2d 672). As the Court explained in detail, many possible interests relating to protecting children from sex offenders can meet that test. But the asserted interest here relates to the suppression of free expression, and it is not valid, let alone substantial. *NetChoice,* 144 S. Ct. at 2388.

of his claim that the sign posting requirement, a form of compelled speech, runs afoul of the free speech guarantee of the First Amendment. Therefore, the Court finds Plaintiff will suffer irreparable harm this year, and every year thereafter, on Halloween absent a permanent injunction.

*Balance of Harms*

The interests of the State in protecting children from sex offenders on Halloween is accomplished by the other sections of the Halloween Statute. Because the Court has determined that the sign posting requirement violates Plaintiff's constitutional rights, this significant harm outweighs any interest Defendants may have in the sign posting requirement and enforcing it. The balance of harms factor weighs in favor of a permanent injunction.

*Public Interest*

The public has a compelling interest in protecting First Amendment rights. *Crow*, 540 F.3d at 762. Defendants have not shown that the Halloween Statute's sign posting requirement has or will increase public safety. The public interest in ensuring safety for children and protecting them from contact with registered sex offenders on Halloween is satisfied by the remaining restrictions in the Halloween Statute. Thus, the Court finds that the public interest factor also weighs in favor of permanent injunctive relief. *See Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (finding that "it is always in the public interest to protect constitutional rights" and "[t]he balance of equities . . . generally favors the constitutionally-protected freedom of expression").

<u>Statewide Injunctive Relief</u>

Lastly, Plaintiff requests the injunction be issued statewide, permanently enjoining the

enforcement of the sign posting requirement.[10]  Because the constitutional violations in this case are not based on unique facts or circumstances to Plaintiff but rather affect all registered offenders under sections 589.400 to 589.425 in the State of Missouri, a statewide permanent injunction is warranted. *Rodgers v. Bryant,* 942 F.3d 451, 458 (8th Cir. 2019) (holding that "injunctive relief should extend statewide because the violation established—the plain unconstitutionality of Arkansas's . . . law—impacts the entire state of Arkansas").

## CONCLUSION

For these reasons, the Court concludes that Plaintiff has met his burden of establishing that declaratory and permanent statewide injunctive relief is warranted. Further, because the Court has found that Missouri Revised Statute Section 589.426.1(3) is unconstitutional, it is therefore unenforceable against not only Plaintiff, but all others subject to this section of the Halloween statute. *See id.*

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Thomas L. Sanderson's Request for Declaratory and Permanent Injunctive Relief [ECF No. 1] is **GRANTED.** Missouri Revised Statute Section 589.426.1(3) is hereby declared **UNCONSTITUTIONAL** under the First and Fourteenth Amendments of the United States Constitution.

**IT IS FURTHER ORDERED** that The State of Missouri, by and through Defendant Andrew Bailey, in his official capacity as the Attorney General, and James Hudanick, in his official capacity of Chief of Police of the City of Hazelwood, Missouri, as well as their officers, agents, employees, and attorneys, are **PERMANENTLY ENJOINED STATEWIDE** from

---

[10] In post-trial briefing, Plaintiff and Defendant Hudanick both address the issue of Hudanick's liability under 42 U.S.C. § 1983. However, Plaintiff's Complaint does not request monetary damages. *See* ECF No. 1 at p. 15.  As such, the Court need not address those arguments.

implementing, applying, or taking any action whatsoever to enforce Missouri Revised Statute Section 589.426.1(3), requiring any person required to register as a sexual offender under sections 589.400 to 589.425 to post a sign at his or her residence stating, "No candy or treats at this residence" on October thirty-first. <u>This Order only relates to the enforcement of Section 589.426.1(3) of the Halloween Statute and does not affect the validity of its other sections.</u>

**IT IS FURTHER ORDERED** that that any motion for costs and fees shall be filed within fourteen (14) days of the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Clarify the Court's Extension of Temporary Restraining Order Through October 31, 2024 [ECF No. 69] is **DENIED AS MOOT.**

A separate judgment in accordance with this Findings of Fact, Conclusions of Law, and Order is entered this same date.

Dated this 2nd day of October, 2024.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**