## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| THOMAS L. SANDERSON, )<br>)<br>  Plaintiff, )<br>)<br>vs. )<br>)<br>CATHERINE HANAWAY, )<br>*in her official capacity as Attorney General* )<br>*of the State of Missouri, et al.*, )<br>)<br>  Defendants. ) | Case No. 4:23-cv-1242-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Thomas Sanderson's motions for attorney fees and bill of costs in this action challenging the constitutionality of a Missouri statute. For the reasons set forth below, the motions will be granted with one modification.

## BACKGROUND

Sanderson filed this case in October 2023 seeking declaratory and injunctive relief against the State of Missouri and the City of Hazelwood to prohibit enforcement of a statute subsection requiring registered sex offenders to post a sign on their premises every Halloween stating, "No candy or treats at this residence." Mo. Rev. Stat. § 589.426.1(3). In his complaint, Sanderson asserted that this sign mandate constituted compelled speech in violation of the First and Fourteenth Amendments. He requested a temporary restraining order for that Halloween and a permanent statewide injunction going forward.

1

After expedited briefing, the Court granted a TRO enjoining enforcement of the statute for Halloween 2023 and later set the case for a bench trial in March 2024. (Doc. 23, 35). Upon issuance of the TRO, the State filed, and the parties fully briefed, a motion to dismiss Hazelwood's police chief as a named defendant. (Doc. 27, 36, 37, 39). The Court denied the motion. (Doc. 54). The State then filed a motion to continue the trial date. (Doc. 44). The parties fully briefed and the Court granted that motion, resetting the trial to June 2024. (Doc. 48, 50, 51).  The bench trial lasted one full day, after which the parties submitted post-trial briefs. (Doc. 55, 64, 67).

In October 2024, the Court entered judgment in Sanderson's favor, declaring the sign mandate unconstitutional and enjoining its enforcement statewide. (Doc. 70, 71). As the prevailing party, Sanderson promptly filed the instant motions for attorney fees and bill of costs. (Doc. 72, 73). These motions were stayed pending Defendants' appeal. (Doc. 80). In January 2026, the Eighth Circuit affirmed the Court's declaratory judgment on the merits but remanded the case for reconsideration of the scope of the injunction in light of the Supreme Court's intervening decision in *Trump v. CASA*, 606 U.S. 831 (2025). *Sanderson v. Hanaway*, 163 F.4th 1101, 1109 (8th Cir. 2026). In *CASA*, the Supreme Court held that "universal" injunctions are not authorized under the Judiciary Act of 1789; rather, injunctions cannot be "broader than necessary to provide complete relief to each plaintiff with standing to sue." *CASA*, 606 U.S. at 862.  Upon receipt of the Eighth Circuit's mandate in April 2026, the Court directed the parties to file memoranda addressing the scope of the injunction in this case. (Doc. 98, 99, 102).

2

By agreement of the parties, the Court enters an amended judgment concurrent herewith. (Doc. 110, 111).

By the instant motions, Sanderson seeks $88,472 in attorney fees, $4,333.86 in non-taxable costs, and $3,648 in taxable costs, for a total award of $96,453.86. Defendants concede that Sanderson is entitled to fees as the prevailing party. They challenge only the amount sought, asking the Court to (1) reduce the billable rates of counsel and staff, (2) exclude any billed time attributable to clerical work, (3) decrease the total number of hours billed, and (4) discount counsel's travel costs.

## LEGAL STANDARDS

The Court's authority to award attorney fees to a prevailing party in a civil rights action under 42 U.S.C. § 1983 is conferred by 42 U.S.C. § 1988(b). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

The party seeking the award must submit evidence supporting the requested hours and rates, making a "good faith effort to exclude … hours that are excessive, redundant, or otherwise unnecessary[.]" *Id*. at 434. "To calculate attorney's fees, courts typically begin by using the lodestar method, which multiplies the number of hours reasonably expended by reasonable hourly rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019). Courts consider several factors in determining a reasonable fee, including the time and labor required to litigate the case, the novelty and difficulty of the questions involved, the skill required to perform the services properly, customary

fees, the results obtained, and awards in similar cases. *See McDonald v. Armontrout*, 860 F.2d 1456, 1459 & n.4 (8th Cir. 1988); *Fernandez v. St. Louis Cty., Missouri*, 538 F. Supp. 3d 888, 905 (E.D. Mo. 2021). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant*, 919 F.3d at 529.

## DISCUSSION

### Hourly Rates

Sanderson requests attorney fees for the work of lead counsel Janice Bellucci at an hourly rate of $475.  Bellucci has practiced law in California for over 40 years. In 2011, she started a law firm specializing in sex offender representation. She has litigated over 100 civil matters on behalf of sex offender registrants. She logged 125.2 hours on this case, for a total of $59,470. Bellucci's paralegal, Carlton Morse, works at an hourly rate of $170.  Morse practiced law in California for four years but is no longer licensed. He logged 143.1 hours on this case, for a total of $24,327.

Sanderson also requests fees for the work of co-counsel Matt Fry at an hourly rate of $850.  Fry has practiced criminal defense in St. Louis for over 20 years and is a principal at Rosenblum, Schwartz, Fry & Johnson. He represented Sanderson in the underlying criminal case in which Sanderson was charged with violating the Halloween sign mandate. Fry logged 5.1 hours assisting Bellucci in preparing the complaint in this case, for a total of $4,335.[1]

---

[1]    Fry's invoice contains a calculation error indicating 5.5 hours for a total of $4,675, but his actual time entries amount to 5.1 hours, yielding a total of $4,335.

Both parties refer to the 2023 billing rates survey published by Missouri Lawyers Media.[2] Though this case was filed in late 2023 and litigated into 2024, it appears that 2024 rates were not published. The 2023 survey comprises data from state and federal court filings reflecting the hourly rates of 169 attorneys and 37 staff persons. From that data, the median (i.e., middle) hourly rate was $450 statewide and $400 in St. Louis. The maximum rate was $1,125 statewide and $690 in St. Louis. The maximum in a St. Louis-area civil rights case was $650. For support staff, the statewide median rate was $150 and the maximum was $340.

Sanderson also cites recent cases in this district where the Court approved rates above these amounts in civil rights lawsuits. *See e.g., Woods v. City of St. Louis*, No. 4:21 CV 462 CDP, 2024 WL 3912429, at *14 (E.D. Mo. July 22, 2024), *aff'd sub nom*, 170 F.4th 1164 (8th Cir. 2026) (approving rates up to $550); *Mom365, Inc. v. Pinto*, No. 4:19-CV-01226 JAR, 2019 WL 6019299, at *2 (E.D. Mo. Nov. 14, 2019) (approving rates up to $565). In a 2019 case involving a successful First Amendment challenge, the Court deemed $575 reasonable. *Fernandez*, 538 F. Supp. 3d at 905. In 2022, this Court approved an hourly rate of $595 for work performed from 2018 to 2021. *Gerling v. Waite*, No. 4:17-CV-02702 JAR, 2022 WL 558083, at *2 (E.D. Mo. Feb. 24, 2022). In that same case, the Court approved a rate of $250 for paralegals, noting that the survey includes staff roles requiring less skill. *Id*., at *3.

---

[2]     Scott Lauck, *Billing Rates 2023*, MISSOURI LAWYERS MEDIA (Nov. 8, 2023); https://molawyersmedia.com/2023/11/08/billing-rates-2023-digital-edition/.

Defendants argue that Sanderson has failed to justify any rate above the 2023 survey median, *i.e.*, $400 for attorneys Bellucci and Fry and $150 for paralegal Morse. To the extent the survey informs the Court's analysis at all despite its miniscule sample size (with only 53 St. Louis partners), the Court considers all the data available, beyond the simple median, which doesn't account for individual lawyers' expertise. The Court also gives weight to the aforementioned cases. Based on Bellucci's considerable experience and Morse's qualifications, along with the overall survey data and the Court's broader knowledge of prevailing rates in this market, the Court finds their stated rates ($475 and $170, respectively) entirely reasonable. By contrast, Fry's rate of $850 is an outlier. Based on the available information and the Court's knowledge of the market, and considering Fry's 20 years of experience and his principal position in a highly reputed criminal defense firm, the Court believes that an hourly rate of $650 is appropriate. The Court will adjust his portion of the award accordingly, i.e., $650 x 5.1 hours = $3,315.

### Clerical Work

Next, Defendants argue that the Court should reduce the award to exclude any time billed for clerical work, specifically (1) Morse's eight hours assisting Bellucci at trial and (2) any clerical work associated with the instant motion. The Court finds no basis for such reductions. From the Court's own observations, Morse's role at trial was typical of any paralegal, notwithstanding the word "clerical" in his time entry. And the Court can discern no improper clerical time in the description of work behind the instant motions for fees.

6

More generally, Defendants ask the Court to consider whether any other entries might include clerical tasks. The Court will not engage in such speculation. Nothing in the time logs signals billed time for purely administrative functions. The Court will not reduce the award on this theory.

**Total Hours**

Third, Defendants ask the Court to adjust counsel's total compensable hours downward because Sanderson's quest for a statewide injunction proved unnecessary given that he acceded to a more limited scope after *Trump v. CASA*.  But the availability of statewide relief was not in question when Sanderson sought it and the Court awarded it. Sanderson avers that he agreed to the amended injunction simply to avoid further litigation. Even viewing his acquiescence as a partial "loss" as Defendants suggest, "[i]f the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win." *Jenkins ex rel. Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (citing *Hensley*, 461 U.S. at 435). Here, Sanderson raised a successful facial challenge to the sign mandate on First Amendment grounds. The parties vigorously litigated this case at every stage, with Defendants' positions and tactics often requiring Sanderson to expend time and resources to respond. The Court finds no basis to discount the total award by virtue of an amended injunction entered by agreement of the parties.

**Travel Costs**

Finally, Defendants ask the Court to reduce the award of costs attributable to Bellucci's airfare from Sacramento to St. Louis for Sanderson's deposition because she could have attended remotely and instead booked a last-minute flight at a high fare. Defendants suggest that Bellucci's delay in selecting a date caused an unnecessary increase in her fare, which she should absorb. In response, Sanderson notes that his deposition was in-person in St. Louis, so Bellucci was needed there, and the last-minute flight was the result of Defendants' late notice and the parties' scheduling conflicts.

Upon review, the record does not support Defendants' objection to this item. (Doc. 105-1). Defendants noticed Sanderson's deposition on February 27, 2024, to take place March 13 or 18. Bellucci responded the next day proposing other dates in March. Further email correspondence ensued. On March 8, Bellucci informed opposing counsel that her client was available March 24. On March 11, counsel sought to confirm March 20. Bellucci replied that day, explaining that Sanderson was not available due to his employment. On March 18, counsel inquired about March 25. The next day, March 19, the matter was scheduled for March 22, hence the last-minute fare.

This record reflects short notice by Defendants and a routine exchange to accommodate multiple schedules, not a lack of diligence on Bellucci's part such that her travel costs should be discounted by half. The Court will not reduce the award on this basis.

8

## CONCLUSION

The Court finds that the expenditure of time, travel costs, and the hourly rates of attorney Bellucci and paralegal Morse are reasonable and appropriate. The Court will enter an award for the full amount requested by the Law Office of Janice M. Bellucci, specifically attorney fees in the amount of $83,797 and costs of $4,333.86. However, the Court finds that attorney Fry's hourly rate should be adjusted downward. The Court will apply a rate of $650 per hour for his 5.1 hours, for a total of $3,315. Defendants do not challenge Sanderson's motions in any other respects.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for bill of costs is **GRANTED**. (Doc. 72). Costs shall be taxed against Defendants and in favor of Plaintiff in the amount of $3,648.

**IT IS FURTHER ORDERED** that Plaintiff's motion for attorney fees and costs is **GRANTED** (Doc. 73). Plaintiff is awarded a total of $91,445.86.

Dated this 29th day of May 2026.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

9